IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY WHITE, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Cause No. 14-cv-01490 - HEA |
| | ) | |
| THOMAS JACKSON, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS MADE BY PLAINTIFFS TRACEY WHITE AND WILLIAM DAVIS AGAINST DEFENDANTS JON BELMAR AND ST. LOUIS COUNTY**

**Preliminary Statement**

The matter is before the Court on the Motion to Dismiss the claims filed by Tracey White and William Davis that were made against St. Louis County Chief of Police Jon Belmar and St. Louis County. This is a Memorandum of Law in Support of that Motion to Dismiss.

**Statement of Facts**

The parentheses below refer to the paragraphs of Plaintiffs' Amended Complaint, and the bold parentheses refer to Paragraphs of the 2nd Amended Complaint for which leave has not yet been granted

Plaintiffs have invoked the supplemental jurisdiction of this Court to hear and decide state law claims in addition to Federal claims (2). Defendant Jon Belmar was the St. Louis County Chief of Police and acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of St. Louis County, Missouri, and the St. Louis County Police Department; pursuant to his authority as the Chief of Police (14). Defendant Justin Cosma was a City of Ferguson police officer acting under color of law for the City of Ferguson and City of

Ferguson police department (15). Defendant St. Louis County maintained a police department which operates under, and administers a set of law enforcement policies, practices and customs involving the hiring, training and supervision of its officers. *These policies,* practices and customs *include training in the use of force and on the street encounters with civilians as well as the basis for an arrest."* (16), (emphasis added).

John Doe police officers are believed to have been St. Louis County and/or Ferguson Police Department. (18).

On August 9, 2014 Ferguson City police officer Darren Wilson, and Michael Brown, Jr, a teenaged African American, "encountered one another" (19). **(20)** "A violent confrontation ensued, and Michael Brown, Jr, who was unarmed, was shot to death by Darren Wilson, who is Caucasian" (19)**(20)**. A "public outcry" turned into protests which led to "*civil unrest in the streets* of Ferguson, Missouri" (22) **(23)** emphasis added).

On August 13, 2014 plaintiffs walked to a McDonald's on W. Florissant, after attending a rally in Ferguson **(27)**. Several John Doe police officers and defendant Officer Cosma, wearing military type gear including helmets and carrying rifles approached the door at McDonalds and ordered plaintiff Tracey White to get out, which occurred while her son William Davis was in the restroom (27) **(28)**. She did not do what the police ordered but tried to explain why **(28)**. When her son left the restroom, White observed her son being "accosted" by John Doe police officers and Defendant Cosma; she expressed her concern, and then was advised she was being arrested because she would not shut up (28) **(29)**; she was thrown to the ground and handcuffed (28) **(29)** and then William Davis also was arrested when he came to his mother after Ms. White summoned her son to come to her to retrieve an iPad (28) **(29)**. White and Davis were

transported to St. Louis County police department in Clayton for processing and held for five hours on the charge of "failure to disperse" (29) **(30)**.

*Causes of Action claimed by Tracey White and William Davis*

*(A) False Arrest (Supplemental state claim)*

Defendant Cosma arrested and detained and/or assisted in the arrest and detention of plaintiff on the charge of "failure to disperse" without probable cause (30) **(31)**. .

(B) *Intentional Infliction of Emotional Distress (Supplemental state claim).*

Defendant Cosma and Defendant John Doe police officers did subject plaintiff to the humiliation of being thrown to the ground and being arrested in front of her (then) minor son and the added humiliation of seeing her son taken into custody (32) **(33).** Neither Ferguson nor the St. Louis County Police Department have taken action against the officers involved in the arrest of these plaintiffs (32 **(33)**. As a direct result both plaintiffs suffered psychological harm including fright, shame, mortification and humiliation and embarrassment (33) **(34)**.

(C) *Negligent Supervision (Supplemental state claim).*

Defendant Cosma and Defendant John Doe police officers were acting under the direction, rules, regulations, policies and procedures of the City of Ferguson and St. Louis County (34 **(35)**. The prayer for relief is against Ferguson and St. Louis County only.

(D) *Assault and Battery (Supplemental state claim).*

Defendant Cosma and Defendant John Doe Police Officers willfully assaulted and handcuffed White and Davis without just cause or basis (37).

(E) *42 U.S.C. 1983 (Federal claim filed against Cosma and John Doe police officers).*

Defendant Cosma and Defendant John Doe police officers deprived plaintiffs of their Constitutional Rights by assaulting them and placing them under unlawful arrest (39).

(F) *42 U.S. C. 1983 (Federal claim of failure to train, supervise and discipline).*

During the period of August 11-13, 2014 the defendants who arrested plaintiffs White and Davis were acting under the direction and control and pursuant to the practices and customs of Defendants City of Ferguson and St. Louis County and implemented by Belmar and Thomas (42) **(43)**, who failed to "*properly* "train, supervise, control, direct, monitor and discipline officers from their respective departments who were patrolling the streets of Ferguson. (43) **(44).**

**Statement of Law**

*Standard of Review*

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). F R. C.P. 8(a) requires a short and plain statement of the facts showing that the pleader is entitled to relief. *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). A Complaint must contain more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Iqbal* at 555. When ruling on a motion to dismiss, a court must liberally construe the complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys. Inc.,* 592 F. 3d 83, 562 (8th Cir. 2010). At the same time, if a claim fails to allege one of the elements necessary for recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F. 3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678, *Bell Atlantic v. Twombly,* 550 U. S. 544, 555 (2007). Although courts must accept the factual allegations as true, they are not bound to take as true a legal conclusion

couched as a factual allegation. *Twombly*, 550 at 555; *Iqbal*, 556 U. S. 677-78. (Also see *Sandy v. Schiro*, 39 S. W. 3d 853, 855 (Mo. App. 2001, Mere conclusions of the pleader not supported by factual allegations are disregarded). Where the allegations show on the face of the Complaint there is some insuperable bar to relief, dismissal under Rule 12 (b) (6) is appropriate. *Benton v. Merrill Lynch & Co.*, 524 F. 3d 866, 870 (8th Cir. 2008).

1. *Plaintiffs have not stated a claim against Chief of Police Jon Belmar on the state tort claims of False Arrest, Intentional Infliction of Emotional Distress and Assault and Battery because under Missouri tort law, the doctrine of Respondeat Superior does not apply as to police chiefs and other public officials*

Under Missouri law police chiefs are not responsible for the acts of their subordinates unless the chief has directed such acts to be done or has personally cooperated in the offense. *Linkogel v. Baker Protective Services*, 626 S. W. 2d 380, 385 (Mo. App. E.D. 1981); *Jordan v. Kelly*, 223 F. Supp. 731, 737 (4) (W. D. Mo 1963); *Jackson v.* Wilson, 581 S. W. 2d 39 (Mo. App. 1979); City *of St. Louis v. Nicholas,* 374 S. W. 2d 547 (Mo. App. 1964); The doctrine of respondeat superior is not applicable to hold a public official vicariously liable for the acts or omissions of subordinate employees. *Jackson v. Wilson* 581 S. W. 2d at 46, *Rennie v. Belleview School District*, 521 S. W. 2d 423, 425 (Mo Banc 1975

2. *Additionally, Plaintiffs White and Davis have not stated a claim against St. Louis County Chief of Police Jon Belmar for the state tort claim of False Arrest because plaintiffs alleged that a Ferguson police officer arrested them*

Plaintiffs alleged that Belmar is the chief of police of St. Louis County (14), and that Justin Cosma was a city of Ferguson police officer acting under color of laws of the City of Ferguson and its police department (15) and then in the False Arrest claim (A) plaintiffs White and Davis allege that defendant Cosma, of the Ferguson police department wrongfully arrested plaintiffs for failure to disperse (30).

3. *Additionally, the Public Duty Doctrine protects Chief Belmar from state tort civil liability because the duty of a police chief is owed to the general public, not to particular individuals.*

Under state law, the public duty doctrine protects a public officer from civil liability for his or her negligence. *Johnny Briscoe v. Margaret Walsh et al,* (Mo App. E. D. No. 100909, decided October 14, 2014), citing *Benson v. Kansas City Bd of Police Com'rs*, 366 S. W. 3d 120, 124 (Mo. App. W. D. 2012). The public duty doctrine recognizes that a public officer owes a duty to the public, and not to a particular individual. *Id.* A supervising police officer's duty to supervise officers in his command is a duty owed to the general public. *Southers v. City of Farmington*, 263 S. W. 3d 303, 621 (Mo 2008). Likewise the public duty doctrine applies to claims filed against the Chief. *Id.* The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual. *Id* at 611; *Beaver v. Gooney*, 825 S. W. 2d 870, 872 (Mo. App. 1992).

4. *Additionally Official Immunity protects Chief Belmar from liability in tort because Missouri considers supervisory conduct to be discretionary, and public officials are protected under the Official Immunity Doctrine for discretionary conduct.*

Official Immunity is a judicially created doctrine in Missouri that protects public employees from liability for alleged acts of negligence committed during the course of their duties for the performance of discretionary acts. *Southers v. City of Farmington*, 263 S. W. 3d 603, 610 (Mo. banc 2008); *Davis v. Lambert–St. Louis Int'l Airport,* 193 S.W.3d 760, 763 (Mo. banc 2006). The goal of official immunity is to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability. . *Davis* 193 S.W.3d at 765; *Southers*, 263 S.W.3d at 611. In *Southers,* the court held that official immunity applied to claims for negligent supervision because the defendants' "conduct at issue involves highly discretionary supervisory and policy decisions that the doctrine is intended to

shield." *Id. at* 621. Additionally, in *State ex rel. St. Louis State Hosp. v. Dowd,* 908 S.W.2d 738, 741 (Mo.Ct.App.1995), overruled on other grounds by *Cain v. Mo. Highways and Transp. Comm'n,* 239 S.W.3d 590 (Mo. banc 2007), the court found that supervisory conduct was discretionary and covered by official immunity.

5. *Additionally, Plaintiffs White and Davis have not stated a claim against* St. Louis County *on any state tort claim because governmental agencies such as* St. Louis County *have immunity in tort for the operation of a police department.*

Under Missouri law, Section 537.600 R.S. Mo et seq, governmental entities are immune from tort liability with two exceptions, negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course and scope of their employment (537.600.1 (1) ) and claims based on injuries caused by dangerous conditions of the public entity's property. (537.600.1 (2) *Phelps v. City of Kansas City,* 371 S.W.3d 909, 912 (Mo.Ct.App. 2012); *Rodgers v. City of North Kansas City,* 340 S.W.3d 154, 158 (Mo.Ct.App. 2011). Counties are included in the political subdivisions that enjoy sovereign immunity. *Wood v. County of Jackson*, 463 S. W. 2nd 834 (Mo. 1971). Sovereign Immunity is not an affirmative defense, and the plaintiff must plead with specificity facts giving rise to an exception to sovereign immunity to avoid application. *Richardson v. City of St. Louis*, 293 S. W. 3d 133, 136 (Mo. Ct. App. 2009).

Also see *Fantasma v. Kansas City Board of Police Commissioners*, 913 S. W. 2d 388, 398 (Mo. App. 1996); *Best v. Schoemehl* 652 S. W. 2d 740 (Mo. App. 1983); *R.C. v. Southwestern Bell Telephone et al*, 759 S. W. 2d 617 (Mo. App. 1988); *Carmelo v. Miller*, 569 S. W. 2d 365 (Mo. App. 1978); *State ex rel. Bd. of Trustees of City of N. Kansas City Memorial Hospital v. Russell*, 843 S. W. 2d, 353, 358 (Mo. 1992); *Okerkramer v. City of Ellisville*, 60 S.

W. 2d 294, 295-296 (Mo. App. E. D. 1983) holding that the operation of a police department is a governmental function under Missouri law for which there is immunity in tort.

6. *Additionally Plaintiffs White and Davis have not stated a claim for false arrest upon which relief can be granted against anyone*

Police officers simply need to show probable cause to make a warrantless arrest. *Duncan v. Storie*, 869 F. 2d 1100, 1102 (8th Cir. 1989) The question is not whether there was probable cause and exigent circumstances but rather whether the police could reasonably have thought so. *Anderson v. Creighton,* 483 U. S. 635, 641 (1987). Here plaintiffs have alleged that there was public outcry turned into protests which led to *civil unrest in the streets* of Ferguson, Missouri and then while they were at a McDonalds in Ferguson police officer Cosma ordered them to get out but plaintiffs did not obey the police command and then plaintiffs were arrested for failure to disperse. Under Section 574.060, R.S. MO. a person commits the crime of refusal to disperse if, being present at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene. If someone is at the scene of a riot and knows of the command to disperse or to break it up and still refuses to depart from the scene, that person is guilty of the crime. See e.g. *State v Mast, 713* S. W. 2d 601, 605-606 (Mo. App. E. D. 1986). Plaintiffs have unwittingly pled that there was civil unrest in the streets of Ferguson, and they were in Ferguson at a McDonalds's and were given the command to leave but that they did not leave after which they were charged with a class B misdemeanor of failure to disperse.

7. *Additionally Plaintiffs White and Davis have not stated a claim for negligent supervision upon which relief can be granted against St. Louis County (or Ferguson) (the only two defendants against whom relief is sought for this separate tort).*

Negligent Supervision is a seldom used tort. *Missouri Practice, Volume 34, Personal Injury and Torts Handbook,* Dierker and Mehan, section 34.2 indicates Negligent Supervision normally involves the specific relationship that the defendant has with a third party, such as grandparent to

grandchild, and/or teacher to a student, or a school to a student but in cases where there is no special relationship a duty must still be found, and the duty is a narrow one. What is required is "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis for the duty of care." *Hill ex rel Hill v. Herbert Hoover Boys Club*, 990 S. W. 2d 19, 22 (Mo. App. E. D. 1999) (coach had no duty to supervise minors on opposite team).

The duty, if there is a duty, is to the person who is being supervised. What must be pled and then later proven is a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm, a breach of that duty, and a proximate cause between the breach and the resulting injury, and actual damages to the plaintiff's person or property. *Cook v. Smith*, 33 S. W. 3d 548, 553 (Mo. App. 2000) citing Hoover's *Dairy Inc. v. Mid-America Dairymen, Incl. Special Products Inc.*, 700 S.W. 2d 426, 431 (Mo. 1985). Plaintiffs have not pled those elements (but even if they had St. Louis County would be immune in tort under state law).

**8.** *Additionally Plaintiffs White and Davis have not stated a claim for the tort of intentional infliction of emotional distress upon which relief can be granted.*

The elements of the action are: the defendant's conduct was extreme and outrageous; the conduct was intentional or done recklessly; the conduct causes severe emotional distress that results in bodily harm to the plaintiff; the conduct must have been intended only to cause extreme emotional distress to the victim; and the conduct must have been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, such as to be regarded as atrocious and utterly intolerable in a civilized society. *Gibson v. Brewer*, 952 S. W. 2d 239, 249 Mo. 1997); *Central Missouri Elec. Co-op v. Balke*, 119 S. W. 3d 627, 636 (Mo. App. W. D. 2003). The U. S. District Court gave an excellent discussion of IIED in *Dunham v. City of O'Fallon, Mo.*, 945 F. Supp. 1256, 1262 (E.D. Mo. 1996) and stated: "Missouri case law

reveals very few factual scenarios sufficient to support a claim for intentional infliction of emotional distress." Rarely is a defendant's conduct sufficiently extreme and outrageous to warrant recovery. See *Gibson v. Hummel*, 688 S. w. 2d 4, 8 (Mo App. E. D. 1985).

In an IIED case, the defendant's conduct must have been intended *only* to cause extreme emotional distress to the victim. Where the conduct was intended to invade other legally protected interests of the plaintiff or to cause bodily harm, a claim for intentional infliction of emotional distress will not lie. *Sansonetti v. City of St. Joseph*, 976 S. W. 2d 572, 580 (Mo. App. 1998).

In addition, in order to state a claim, plaintiffs must allege that they are suffering severe emotional distress that is medically diagnosable, medically significant, and serious enough to require some medical attention. *Greco v. Robinson*, 747 S. W. 2d 730, 735 (Mo. App. E. D. 1988). For example, evidence of nausea and loss of sleep by plaintiff was not enough in *Rooney v. National Super Markets, Inc.*, 668 S. W. 2d 649 (Mo. App. E. D. 1984). Failure to plead that the emotional distress was medically diagnosable and medically significant is fatal. *Bockover v. Stemmerman*, 708 S. W. 2d 179 (Mo. App. 1986) abrogated on other grounds by *Roth v. La Societe Anonyme turbomea France,* 120 S. W. 3d 764 (Mo. App. 2003).

By alleging that during the course of being handcuffed White was thrown to the ground and then she observed the added humiliation of watching her son taken into custody, simply does not state a claim for Intentional Infliction of Emotional Distress.

9. *Additionally plaintiff White and Davis have not stated a claim against police officers for Assault and Battery because they have not alleged that more force was used than was reasonably necessary to effectuate their arrests.*

Plaintiff White allege that she observed her son being "accosted" by John Doe officers and Ferguson Officer Cosma (28) **(29).** The Merriam Webster definition of "accost" is to approach and speak in a challenging or aggressive manner. Plaintiff White goes on to allege that after she was advised she was being arrested, she was "thrown to the ground and handcuffed." (28) **(29).** Even though a very slight degree of force may state a claim against a person who is not a police officer, (See e.g. the discussion in *Lacy v .Gray,* 2013WL 3766567 (4:13 CV 370, U.S. Dist. Ct. E.D. Mo, July 16, 2013), this does not state a claim against a police officer. Rather it must be alleged that there was more force than was reasonably necessary to effectuate the arrest. *Neal v. Helbling*, 726 S.W. 2d 483, 487 (Mo App. 1987).

**10.** *Plaintiffs have not stated a claim upon which relief can be granted under 42 U. S. C. 1983 against Chief Jon Belmar in his individual capacity.*

In the Section 1983 context, supervisory liability is limited. *Boyd v. Knox*, 47 F. 3d 966, 968 (8th Cir. 1995). Liability attaches only when the supervisor is personally involved in the constitutional violation, or his inaction constitutes deliberate indifference to the misconduct. *Id.* A supervisor is not liable merely because subordinates allegedly violated someone's constitutional rights. *City of Canton v. Harris, supra* at 385; *Otey v. Marshall*, 121 F. 3d 802, 806 (8th Cir. 194). There is no liability where the police chief was not actually involved and did not consent to the misconduct allegedly caused by others. *Taken Alive v. Litzau*, 551 F. 2d 196, 200 (8th Cir. 1977); *Rogers v. Rulo*, 712 F. 2d 363 366 (8th Cir. 1983). The doctrine of respondeat superior is inapplicable in actions based upon allegations of civil rights violations. *DeShields v. U. S. Parole Commission*, 593 F. 2d 354, 356 (8th Cir. 1979)

When alleging facts plaintiffs allege that there had been training in the use of force as well as training regarding the basis for an arrest (16) but then later while attempting to state a claim under 42 U.S.C. 1983 plaintiffs argue that officers were not "properly" trained,

supervised or controlled (43) **(44)**. Plaintiffs don't allege facts to explain anything to support their argument. Simple negligence in training, supervising, and controlling officers is insufficient to support imposition of liability under Section 1983. *Hayes v. Jefferson County, Kentucky*, 668 F. 2d 869 (6th Cir. 1982). There must be deliberate indifference. *City of Canton v. Harris, (supra)*. To establish deliberate indifference, a plaintiff must allege that the supervisor had notice that inadequate training procedures and supervision likely would violate a plaintiff's constitutional rights. *Livers v. Schenck*, 700 F. 3d 340, 355-356 (8th Cir. 2012).

11. *Plaintiffs have not adequately sued Chief Jon Belmar in his individual capacity and therefore this should only be considered to be a suit against his employer.*

It is stated above that plaintiffs have not stated a claim against Chief Belmar in his individual capacity. In addition, plaintiffs have not even properly pled that Belmar is being sued in his individual capacity. It is conceded that in the style of the case the plaintiffs named Jon Belmar "individually, and in his official capacity as St. Louis County, Missouri Chief of Police." However nowhere in the pleading is it ever alleged that Jon Belmar is sued in his individual capacity. Damage actions against government officials are subject to heightened standards of pleading to allow them to prepare a response. *Brown v. Frey*, 889 F. 2d 159, 170 (8th Cir. 1989). Also see *Freeman v. Ferguson*, 911 F. 2d 52, 57 n. 5 (8th Cir. 1990). In order to sue a public official in his individual capacity, a plaintiff must expressly and unambiguously state so in the pleading, otherwise it will be construed that the defendant is sued only in his official capacity. *Johnson v. Outboard Marine Corp.*, 172 F. 3rd 531, 535 (8th Cir. 1999); *Egerdahl v. Hibbing Community College*, 72 F. 3d 615, 619 (8th Cir. 1995). A suit against a public official in his official capacity is merely a suit against his governmental entity employer. *Will v. Michigan Dep't of State Police*, 491 U. S. 58, 71 (1989); *Kentucky v.* Graham, 473 U.S. 159, 166 (1985);

*Brandon v.* Holt, 469 U. S. 464 (1985). Also see *Nix v. Norman*, 879 F. 2d 29, 33 (8th Cir. 1989).

**12.** *Plaintiffs have not stated a claim upon which relief can be granted under 42 U.S. C. 1983 against St. Louis County because plaintiffs have alleged as an allegation of fact that St. Louis County trained officers in the use of force as well as the basis for an arrest, and then later argues that there was improper training; and because a governmental agency cannot be held liable on a theory of respondeant superior.*

The Constitutional violation is alleged to be the arrests of plaintiffs White and Davis (42) **(43)**. (But see discussion above that police did not even violate state law much less the 4th Amendment). Later it is argued that the Constitutional violation occurred because St. Louis County failed to *properly* train, supervise, monitor and discipline. A governmental agency cannot be held liable solely on a theory of vicarious liability or respondeat superior. *City of Canton v. Harris*, 489 U. S. 378, 385 (1989); *Monell v. Dep't of Social Services*, 436 U. S. 658, 694-95 (1978). *Monell* established restrictive circumstances for recovery for recovery against governmental entities when it rejected respondeat superior, requiring that an act in question implements or executes an official policy of law or reflects a custom which amounts to de facto policy. To prove policy or custom plaintiff must demonstrate "the existence of a continuing, widespread, persistent pattern of unconstitutional conduct, as well as tacit authorization and causation. *Kinman v. Omaha School District*, 94 F. 3d 463 (8th Cir. 1996) citing Jane *Doe v. Special School District of St. Louis County*, 901 F. 2d 642 (8th Cir. 1990). The custom, policy, or deliberate conduct must be the moving force behind the injury alleged. *Board of Police Commissioners of Bryan County v. Brown*, 117 S. Ct. 1382 (1997); *Moyle v. Anderson*, 571 F. 3d 814, 817 (8th Cir. 2009); *Luckert v. Dodge County*, 684 F. 3d 808, 820 (8th Cir. 2012). Moreover plaintiff must show that the policy itself was

unconstitutional. *Luckert, Id* quoting *Patzner v. Burkett*, 779 F. 2d 1363, 1367 (8th Cir. 1985).

Failure to investigate, censor or sanction police officers for their alleged actions standing alone does not state a cause of action under 42 U.S. C. 1983 *Green v. Rahn*, 572 F. Supp. 1517 (E.D. Mo 1983).

Inadequacy of training is actionable only where it amounts to deliberate indifference. It must be obvious that it will result in a constitutional violation. *City of Canton v. Harris*, supra. Simple negligence in training, supervising, and controlling officers is insufficient to support imposition of liability under Section 1983. *Hayes v. Jefferson County, Kentucky*, 668 F. 2d 869 (6th Cir. 1982). To establish deliberate indifference, a plaintiff must allege that the supervisor had notice that inadequate training procedures and supervision likely would violate a plaintiff's constitutional rights. *Livers v. Schenck*, 700 F. 3d 340, 355-356 (8th Cir. 2012)

There are very limited circumstances in which a local government's failure to train certain employees may rise to the level of an official government policy for purposes of § 1983. the U. S. Supreme Court stated in *Connick v. Thompson*, ____U.S.____, 131 S. Ct. 1350, 1359, 1360 (2011) that a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train; that a policy of "inadequate training" is far more nebulous and a good deal further removed from the constitutional violation than was the policy in *Monell*; and that to satisfy the statutte a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference" to the rights of persons with whom the untrained employees come into contact; and only then can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under Section 1983.

**Conclusion**

St. Louis County Police Chief Jon Belmar's and St. Louis County's Motion to Dismiss the claims made against them by Tracey White and William Davis should be sustained.

Respectfully Submitted

PATRICIA REDINGTON
COUNTY COUNSELOR

Michael E. Hughes #23360MO
Associate County Counselor
Mhughes2@stlouisco.com
Priscilla F. Gunn #29729MO
Assistant County Counselor
Pgunn@stlouisco.com
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042
(314) 615-3732 (fax)

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served electronically via this Court's Electronic Filing System to all counsel of record.

Michael E. Hughes