IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACEY WHITE, et al. ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | Cause No. 14-cv-01490 - HEA |
| ) | |
| THOMAS JACKSON, et al. ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS MADE BY PLAINTIFF DEWAYNE MATTHEWS AGAINST DEFENDANTS JON BELMAR AND ST. LOUIS COUNTY

**Preliminary Statement**

The matter is before the Court on the Motion to Dismiss the claims made by plaintiff DeWayne A. Matthews against St. Louis County Chief of Police Jon Belmar and St. Louis County. This Memorandum of Law is in Support of that Motion to Dismiss.

**Statement of Facts**

The parentheses below refer to the paragraphs of Plaintiffs' Amended Complaint, and the bold parentheses refer to Paragraphs of the 2nd Amended Complaint for which leave has not yet been granted

Plaintiff has invoked the supplemental jurisdiction of this Court to hear and decide state law claims in addition to Federal claims (2). Defendant Jon Belmar was the St. Louis County Chief of Police and acted under color of the laws, statutes, ordinances, regulations, policies, customs and usages of St. Louis County, Missouri, and the St. Louis County Police Department; pursuant to his authority as the Chief of Police (14). Defendant St. Louis County maintained a police department which operates under, and administers a set of law enforcement policies,

1

practices and customs involving the hiring, training and supervision of its officers. *These policies,* practices and customs *include training in the use of force and on the street encounters with civilians as well as the basis for an arrest."* (16), (emphasis added).

John Doe police officers are believed to have been St. Louis County and/or Ferguson Police Department police officers. (18).

On August 9, 2014 Ferguson City police officer Darren Wilson, and Michael Brown, Jr, a teenaged African American, "encountered one another" (19). **(20)** "A violent confrontation ensued, and Michael Brown, Jr, who was unarmed, was shot to death by Darren Wilson, who is Caucasian" (19)**(20)**. A "public outcry" turned into protests which led to *"civil unrest in the streets* of Ferguson, Missouri" (22) **(23)** emphasis added).

On August 13, 2014 because of the civil disturbance in Ferguson, plaintiff was going to his mother's house in Ferguson to make sure that she was all right (47) **(48)**. After getting off a bus, he noticed that his mother's street was blocked off and so he proceeded to the corner of W. Florissant and Highmont (48) **(49)**. There he was confronted by eight John Doe police officers who had weapons trained on him, plaintiff raised his arms in the air but was shot multiple times with rubber bullets 49) **(50)**. Plaintiff fell into a creek or sewer, John Doe officers pounced on him, slammed his face into concrete, pushed his head underwater, with the result that plaintiff thought he would drown. (50) **(51)**. After this John Doe officers sprayed plaintiff with OC spray (50) **(51)**. Plaintiff then was arrested for failure to disperse (51) **(52)**. He was transported to Christian Hospital Northwest for treatment and the next day was released from the hospital without being released to jail (52) **(53)**

*Causes of Action claimed by Dewayne Matthews*

*(A) False Arrest (Supplemental state claim)*

2

There was no probable cause for the charge of failure to disperse (43) **(54)** and he has suffered mental anguish and embarrassment (53) **(54)**.

(B) *Intentional Infliction of Emotional Distress (Supplemental state claim).*

John Doe police officers subjected plaintiff to vicious acts of violence for no lawful reason, and then Ferguson and St. Louis County took no action against any officer involved in the assault, battery and arrest of plaintiff (55) **(56)**. As a result plaintiff suffered psychological harm and mental anguish (56) **(57)**.

(C) *Negligent Supervision (Supplemental state claim).*

John Doe police officers were under the direction and control of the City of Ferguson and St. Louis County (58) **(590** who failed to train, control and monitor the John Doe police officer (58) **(59)** and as a result plaintiff suffered "severe bodily injuries" (the injuries are not otherwise specified) and mental anguish (59) **(60)** The prayer for relief is against Ferguson and St. Louis County only.

(D) *Assault and Battery (Supplemental state claim).*

John Doe police officers "without proper grounds" subjected plaintiff to "unwarranted" physical violence" by the beating, near drowning and rubber bullets without just cause or basis (60) **(61)**.

(E) *42 U.S.C. 1983 (Federal claim filed against John Doe police officers).*

John Doe police officers deprived plaintiff of his 4th Amendment Constitutional Rights by assaulting him and placing him under unlawful arrest (39). The prayer for relief is against the John Doe police officers.

(F) *42 U.S.C. 1983 (Federal claim of failure to train, supervise and discipline).*

During the period of August 11-13, 2014 the John Doe police officers who were responsible for the arrest and beating of plaintiff Matthews were acting under the direction and control, practices and customs of Defendants City of Ferguson and St. Louis County and implemented by Belmar, the County Chief of Police and Thomas the Ferguson Chief of Police (66) **(67)** who failed to "properly" train, supervise, control, direct, monitor and discipline officers from their respective departments who were patrolling the streets of Ferguson August 11-13, 2014.

## Statement of Law

*Standard of Review*

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint. *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). F R. C.P. 8(a) requires a short and plain statement of the facts showing that the pleader is entitled to relief. *Id.* To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544, 570 (2007). A Complaint must contain more than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Iqbal* at 555. When ruling on a motion to dismiss, a court must liberally construe the complaint in favor of the plaintiff. *Huggins v. FedEx Ground Package Sys. Inc.*, 592 F. 3d 83, 562 (8th Cir. 2010). At the same time, if a claim fails to allege one of the elements necessary for recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F. 3d 346, 355 (8th Cir. 2011). Threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678, *Bell Atlantic v. Twombly*, 550 U. S. 544, 555 (2007). Although courts

must accept the factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 at 555; *Iqbal*, 556 U. S. 677-78. (Also see *Sandy v. Schiro*, 39 S. W. 3d 853, 855 (Mo. App. 2001, Mere conclusions of the pleader not supported by factual allegations are disregarded). Where the allegations show on the face of the Complaint there is some insuperable bar to relief, dismissal under Rule 12 (b) (6) is appropriate. *Benton v. Merrill Lynch & Co.*, 524 F. 3d 866, 870 (8th Cir. 2008).

1. *Plaintiff Dwayne Matthews has not stated a claim against Chief of Police Jon Belmar on the state tort claims of False Arrest, Intentional Infliction of Emotional Distress and Assault and Battery because under Missouri tort law, the doctrine of Respondeat Superior does not apply to police chiefs and other public officials*

Under Missouri law police chiefs are not responsible for the acts of their subordinates unless the chief has directed such acts to be done or has personally cooperated in the offense. *Linkogel v. Baker Protective Services*, 626 S. W. 2d 380, 385 (Mo. App. E.D. 1981); *Jordan v. Kelly*, 223 F. Supp. 731, 737 (4) (W. D. Mo 1963); *Jackson v. Wilson*, 581 S. W. 2d 39 (Mo. App. 1979); *City of St. Louis v. Nicholas*, 374 S. W. 2d 547 (Mo. App. 1964); The doctrine of respondeat superior is not applicable to hold a public official vicariously liable for the acts or omissions of subordinate employees. *Jackson v. Wilson* 581 S. W. 2d at 46, *Rennie v. Belleview School District*, 521 S. W. 2d 423, 425 (Mo Banc 1975

2. *Additionally, the Public Duty Doctrine protects Chief Belmar from state tort civil liability because the duty of a police chief is owed to the general public, not to particular individuals.*

Under state law, the public duty doctrine protects a public officer from civil liability for his or her negligence. *Johnny Briscoe v. Margaret Walsh et al,* (Mo App. E. D. No. 100909, decided October 14, 2014), citing *Benson v. Kansas City Bd of Police Com'rs*, 366 S. W. 3d 120, 124 (Mo. App. W. D. 2012). The public duty doctrine recognizes that a public officer owes a duty to the public, and not to a particular individual. *Id.* A supervising police officer's duty to

supervise officers in his command is a duty owed to the general public. *Southers v. City of Farmington*, 263 S. W. 3d 303, 621 (Mo 2008). Likewise the public duty doctrine applies to claims filed against the Chief. *Id.* The public duty doctrine states that a public employee is not civilly liable for the breach of a duty owed to the general public, rather than a particular individual. *Id* at 611; *Beaver v. Gooney*, 825 S. W. 2d 870, 872 (Mo. App. 1992).

3. *Additionally Official Immunity protects Chief Belmar from liability in tort because Missouri considers supervisory conduct to be discretionary, and public officials are protected under the Official Immunity Doctrine for discretionary conduct.*

Official Immunity is a judicially created doctrine in Missouri that protects public employees from liability for alleged acts of negligence committed during the course of their duties for the performance of discretionary acts. *Southers v. City of Farmington*, 263 S. W. 3d 603, 610 (Mo. banc 2008); *Davis v. Lambert–St. Louis Int'l Airport*, 193 S.W.3d 760, 763 (Mo. banc 2006). The goal of official immunity is to permit public employees to make judgments affecting public safety and welfare without concerns about possible personal liability. . *Davis* 193 S.W.3d at 765; *Southers*, 263 S.W.3d at 611. In *Southers,* the court held that official immunity applied to claims for negligent supervision because the defendants' "conduct at issue involves highly discretionary supervisory and policy decisions that the doctrine is intended to shield." *Id. at* 621. Additionally, in *State ex rel. St. Louis State Hosp. v. Dowd,* 908 S.W.2d 738, 741 (Mo.Ct.App.1995), overruled on other grounds by *Cain v. Mo. Highways and Transp. Comm'n,* 239 S.W.3d 590 (Mo. banc 2007), the court found that supervisory conduct was discretionary and covered by official immunity.

4. *Additionally, Plaintiff Matthews has not stated a claim upon which relief can be granted against* St. Louis County *on any state claim because governmental agencies such as* St. Louis County *have immunity in tort for the operation of a police department.*

6

Under Missouri law Section 537.600 R.S. Mo. et seq. governmental entities are immune from tort liability with two exceptions, negligent acts or omissions by public employees arising out of the operation of motor vehicles within the course and scope of their employment 537.600.1 (1), and claims based on injuries caused by dangerous conditions of the public entity's property. 537.600.1 (2); *Phelps v. City of Kansas City*, 371 S.W.3d 909, 912 (Mo.Ct.App. 2012); *Rodgers v. City of North Kansas City*, 340 S.W.3d 154, 158 (Mo.Ct.App. 2011). Counties are included in the political subdivisions that enjoy sovereign immunity. *Wood v. County of Jackson*, 463 S. W. 2nd 834 (Mo. 1971). Sovereign Immunity is not an affirmative defense, and the plaintiff must plead with specificity facts giving rise to an exception to sovereign immunity to avoid application. *Richardson v. City of St. Louis*, 293 S. W. 3d 133, 136 (Mo. Ct. App. 2009).

Also see *Fantasma v. Kansas City Board of Police Commissioners*, 913 S. W. 2d 388, 398 (Mo. App. 1996); *Best v. Schoemehl* 652 S. W. 2d 740 (Mo. App. 1983); *R.C. v. Southwestern Bell Telephone et al*, 759 S. W. 2d 617 (Mo. App. 1988); *Carmelo v. Miller*, 569 S. W. 2d 365 (Mo. App. 1978); *State ex rel. Bd. of Trustees of City of N. Kansas City Memorial Hospital v. Russell*, 843 S. W. 2d, 353, 358 (Mo. 1992); *Okerkramer v. City of Ellisville*, 60 S. W. 2d 294, 295-296 (Mo. App. E. D. 1983) holding that the operation of a police department is a governmental function under Missouri law for which there is immunity in tort.

5. *Additionally Plaintiff Matthews has not stated a claim for negligent supervision against St. Louis County (or Ferguson) (the only two defendants against whom relief is sought for this separate tort).*

Negligent Supervision is a seldom used tort. *Missouri Practice, Volume 34, Personal Injury and Torts Handbook*, Dierker and Mehan, section 34.2 indicates Negligent Supervision normally involves the specific relationship that the defendant has with a third party, such as grandparent to

grandchild, and/or teacher to a student, or a school to a student but in cases where there is no special relationship a duty must still be found, and the duty is a narrow one. What is required is "the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis for the duty of care." *Hill ex rel Hill v. Herbert Hoover Boys Club*, 990 S. W. 2d 19, 22 (Mo. App. E. D. 1999) (coach had no duty to supervise minors on opposite team).

The duty, if there is a duty, is to the person who is being supervised. What must be pled and then later proven is a legal duty on the part of the defendant to use ordinary care to protect the plaintiff against unreasonable risks of harm, a breach of that duty, and a proximate cause between the breach and the resulting injury, and actual damages to the plaintiff's person or property. *Cook v. Smith*, 33 S. W. 3d 548, 553 (Mo. App. 2000) citing Hoover's *Dairy Inc. v. Mid-America Dairymen, Incl. Special Products Inc.*, 700 S.W. 2d 426, 431 (Mo. 1985). Plaintiff have not pled those elements (but of course even if he had St. Louis County is immune in tort).

### 6. *Additionally Plaintiff Matthews has not stated a claim for the tort of intentional infliction of emotional distress.*

The elements of the action of IIED are: the defendant's conduct was extreme and outrageous; the conduct was intentional or done recklessly; the conduct causes severe emotional distress that results in bodily harm to the plaintiff; the conduct must have been intended only to cause extreme emotional distress to the victim; and the conduct must have been so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, such as to be regarded as atrocious and utterly intolerable in a civilized society. *Gibson v. Brewer*, 952 S. W. 2d 239, 249 Mo. 1997); *Central Missouri Elec. Co-op v. Balke*, 119 S. W. 3d 627, 636 (Mo. App. W. D. 2003). The U. S. District Court gave an excellent discussion of IIED in *Dunham v. City of O'Fallon, Mo.*, 945 F. Supp. 1256, 1262 (E.D. Mo. 1996) and stated: "Missouri case law reveals very few factual scenarios sufficient to support a claim for intentional infliction of

emotional distress." In an IIED case, the defendant's conduct must have been intended *only* to cause extreme emotional distress to the victim. Where the conduct was intended to invade other legally protected interests of the plaintiff or to cause bodily harm, a claim for intentional infliction of emotional distress will not lie. *Sansonetti v. City of St. Joseph*, 976 S. W. 2d 572, 580 (Mo. App. 1998).

In addition, in order to state a claim, plaintiff must allege that he is suffering severe emotional distress that is medically diagnosable, medically significant, and serious enough to require some medical attention. *Greco v. Robinson*, 747 S. W. 2d 730, 735 (Mo. App. E. D. 1988). For example, evidence of nausea and loss of sleep by plaintiff was not enough in *Rooney v. National Super Markets, Inc.*, 668 S. W. 2d 649 (Mo. App. E. D. 1984). Failure to plead that the emotional distress was medically diagnosable and medically significant is fatal. *Bockover v. Stemmerman*, 708 S. W. 2d 179 (Mo. App. 1986) abrogated on other grounds by *Roth v. La Societe Anonyme turbomea France*, 120 S. W. 3d 764 (Mo. App. 2003).

7. *Plaintiff Matthews has not stated a claim upon which relief can be granted under 42 U. S. C. 1983 against Chief Jon Belmar in his individual capacity.*

In the Section 1983 context, supervisory liability is limited. *Boyd v. Knox*, 47 F. 3d 966, 968 (8th Cir. 1995). Liability attaches only when the supervisor is personally involved in the constitutional violation, or his inaction constitutes deliberate indifference to the misconduct. *Id.* A supervisor is not liable merely because subordinates allegedly violated someone's constitutional rights. *City of Canton v. Harris, supra* at 385; *Otey v. Marshall*, 121 F. 3d 802, 806 (8th Cir. 194). There is no liability where the police chief was not actually involved and did not consent to the misconduct allegedly caused by others. *Taken Alive v. Litzau*, 551 F. 2d 196, 200 (8th Cir. 1977); *Rogers v. Rulo*, 712 F. 2d 363 366 (8th Cir. 1983). The doctrine of

respondeat superior is inapplicable in actions based upon allegations of civil rights violations. *DeShields v. U. S. Parole Commission*, 593 F. 2d 354, 356 (8th Cir. 1979)

Plaintiff alleges that there had been training in the use of force as well as training regarding the basis for an arrest (16) but then later when attempting to state a claim under 42 U.S.C. 1983 plaintiff argues that officers were not "properly" trained, supervised or controlled (67) **(68)**. Plaintiff does not allege facts to explain anything to support his argument. Simple negligence in training, supervising, and controlling officers is insufficient to support imposition of liability under Section 1983. *Hayes v. Jefferson County, Kentucky*, 668 F. 2d 869 (6th Cir. 1982). There must be deliberate indifference. *City of Canton v. Harris, (supra)*. To establish deliberate indifference, a plaintiff must allege that the supervisor had notice that inadequate training procedures and supervision likely would violate a plaintiff's constitutional rights. *Livers v. Schenck*, 700 F. 3d 340, 355-356 (8th Cir. 2012).

8. *Plaintiff has not adequately sued Chief Jon Belmar in his individual capacity and therefore this should only be considered to be a suit against his employer.*

It is stated above that plaintiff has not stated a claim against Chief Belmar in his individual capacity. In addition, plaintiff has not properly pled that Belmar is being sued in his individual capacity. It is conceded that in the style of the case plaintiff named Jon Belmar "individually, and in his official capacity as St. Louis County, Missouri Chief of Police." However nowhere in the pleading is it ever alleged that Jon Belmar is sued in his individual capacity. Damage actions against government officials are subject to heightened standards of pleading to allow them to prepare a response. *Brown v. Frey*, 889 F. 2d 159, 170 (8th Cir. 1989). Also see *Freeman v. Ferguson*, 911 F. 2d 52, 57 n. 5 (8th Cir. 1990). In order to sue a public official in his individual capacity, a plaintiff must expressly and unambiguously state so in the pleading, otherwise it will be construed that the defendant is sued only in his official capacity.

*Johnson v. Outboard Marine Corp.*, 172 F. 3rd 531, 535 (8th Cir. 1999); *Egerdahl v. Hibbing Community College*, 72 F. 3d 615, 619 (8th Cir. 1995). A suit against a public official in his official capacity is merely a suit against his governmental entity employer. *Will v. Michigan Dep't of State Police*, 491 U. S. 58, 71 (1989); *Kentucky v.* Graham, 473 U.S. 159, 166 (1985); *Brandon v.* Holt, 469 U. S. 464 (1985). Also see *Nix v. Norman*, 879 F. 2d 29, 33 (8th Cir. 1989).

9. *Plaintiff Matthews has not stated a claim under 42 U.S. C. 1983 against St. Louis County because plaintiff has alleged as an allegation of fact that St. Louis County trained officers in the use of force as well as the basis for an arrest, but then later in an attempt to state a claim argue that there was "improper" training; and because a governmental agency cannot be held liable on a theory of respondeant superior.*

The Constitutional violation is alleged to be the arrest and beating of Matthews (66) **(67)** Then it is alleged that the Constitutional violation occurred because St. Louis County failed to properly train, supervise, monitor and discipline. (67) **(68)**. A governmental agency cannot be held liable solely on a theory of vicarious liability or respondeat superior. *City of Canton v. Harris*, 489 U. S. 378, 385 (1989); *Monell v. Dep't of Social Services*, 436 U. S. 658, 694-95 (1978). *Monell* established restrictive circumstances for recovery for recovery against governmental entities when it rejected respondeat superior, requiring that an act in question implements or executes an official policy of law or reflects a custom which amounts to de facto policy. To prove policy or custom plaintiff must demonstrate "the existence of a continuing, widespread, persistent pattern of unconstitutional conduct, as well as tacit authorization and causation. *Kinman v. Omaha School District*, 94 F. 3d 463 (8th Cir. 1996) citing Jane *Doe v. Special School District of St. Louis County*, 901 F. 2d 642 (8th Cir. 1990). The custom, policy, or deliberate conduct must be the moving force behind the injury alleged. *Board of Police Commissioners of Bryan County v. Brown*, 117 S. Ct. 1382 (1997);

11

*Moyle v. Anderson*, 571 F. 3d 814, 817 (8th Cir. 2009); *Luckert v. Dodge County*, 684 F. 3d 808, 820 (8th Cir. 2012). Moreover plaintiff must show that the policy itself was unconstitutional. *Luckert, Id* quoting *Patzner v. Burkett*, 779 F. 2d 1363, 1367 (8th Cir. 1985).

Failure to investigate, censor or sanction police officers for their alleged actions standing alone does not state a cause of action under 42 U.S. C. 1983 *Green v. Rahn*, 572 F. Supp. 1517 (E.D. Mo 1983).

Inadequacy of training is actionable only where it amounts to deliberate indifference. It must be obvious that it will result in a constitutional violation. *City of Canton v. Harris*, supra. Simple negligence in training, supervising, and controlling officers is insufficient to support imposition of liability under Section 1983. *Hayes v. Jefferson County, Kentucky*, 668 F. 2d 869 (6th Cir. 1982). To establish deliberate indifference, a plaintiff must allege that the supervisor had notice that inadequate training procedures and supervision likely would violate a plaintiff's constitutional rights. *Livers v. Schenck*, 700 F. 3d 340, 355-356 (8th Cir. 2012)

There are very limited circumstances in which a local government's failure to train certain employees may rise to the level of an official government policy for purposes of § 1983. As the U. S. Supreme Court stated in *Connick v. Thompson*, ___U.S.___, 131 S. Ct. 1350, 1359, 1360 (2011) that a municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train; that a policy of "inadequate training" is far more nebulous and a good deal further removed from the constitutional violation than was the policy in *Monell*; and that to satisfy the statute a municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference" to the rights of persons with whom the

untrained employees come into contact; and only then can such a shortcoming be properly thought of as a city "policy or custom" that is actionable under Section 1983.

**Conclusion**

St. Louis County Police Chief Jon Belmar's and St. Louis County's motion to dismiss the claims made against them by Dwayne Matthews should be sustained.

Respectfully Submitted

PATRICIA REDINGTON
COUNTY COUNSELOR

*/s/ Michael E. Hughes/*
Michael E. Hughes #23360MO
Associate County Counsel
Mhughes2@stlouisco.com
Priscilla F. Gunn #29729MO
Assistant County Counselor
Pgunn@stlouisco.com
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042
(314) 615-3732 (fax)

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing was served electronically via this Court's Electronic Filing System to all counsel of record.

*/s/ Michael E. Hughes/*
Michael E. Hughes