# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TRACEY WHITE et. al., | * |
| Plaintiffs, | * |
| vs. | * Case No. 4:14-cv-01490 (HEA) |
| | * |
| THOMAS JACKSON, et. al., | * |
| Defendants. | * |
| | * |

**PLAINTIFF NATHAN BURNS'MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO THE MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT FILED BY DEFENDANTS JON BELMAR AND ST. LOUIS COUNTY**

Comes now plaintiff Nathan Burns, by and through counsel, and hereby submits his opposition to the motion to dismiss his second amended complaint filed by defendants Jon Belmar and St. Louis County. In support of their motion, the defendants seek to dismiss several illusory claims allegedly being pursued by the plaintiffs, contend that plaintiffs have not sufficiently pled a claim of negligent supervision, that 42 U.S.C. § 1983 does not provide a basis for respondeat superior liability, and that these plaintiffs' have generally failed to sufficiently any basis for recovery in their second amended complaint. As will be shown below, however, the defendants' motion is entirely without merit.

## I. Statement Of Relevant Facts

On August 9, 2014, Officer Darren Wilson of the City of Ferguson Police Department shot and killed Michael Brown, Jr., a teenaged African American, during a violent confrontation in Ferguson, Mo. Mr. Brown, by all accounts, was unarmed at the time. Although the fact that an unarmed African American was shot and killed by a Caucasian police officer is not an unusual event

in the United States, the Michael Brown, Jr. shooting was somewhat unique in that it occurred between 12:00 p.m. and 1:00 p.m. in the afternoon, and there were several independent eyewitnesses. As a result of the number of eyewitnesses, technology and the internet, the circumstances surrounding the death of Michael Brown, Jr. went viral and millions of people became aware of the questionable shooting shortly after it happened.

The Ferguson community was particularly outraged by what appeared to be an excessive use of force in the Michael Brown, Jr. shooting. The unarmed Michael Brown, Jr. was shot multiple times by Officer Wilson, including at least one shot to the head. A public outcry about the shooting death of Michael Brown, Jr. by Officer Wilson turned into protests, which subsequently led to civil unrest in the streets of Ferguson, Missouri. In response, the police departments of the City of Ferguson and St. Louis County took up arms and, in militaristic displays of force and weaponry, engaged U.S. Citizens as if they were war combatants.

In doing so during the period of August 11-13, 2014, wanton and excessive force, under color of law, was used which deprived plaintiffs of rights secured under the Constitution and laws of the United States and the State of Missouri. In addition, arrests were made without probable cause in actual in defiance of the Constitution and laws of the United States and the State of Missouri. While these outrageous acts of misuse of authority and abuse of police powers were taking place, the people responsible for the training, supervision and monitoring of the officers engaging in the conduct at issue stood idly by and took no action to stop these lawless acts even though they were taking place openly and were being broadcast to the public at large by numerous news organizations.

The plaintiffs in this action were all victims of the atrocities committed by defendants during the period of August 11-13, 2014. It is against the backdrop of these facts that defendants St. Louis

County and Belmar have moved to dismiss certain aspects of plaintiffs' second amended complaint.

## II. Argument

### A. Standard of Review

Pursuant to F.R.C.P. 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted only if it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). While the Court cautioned that the holding does not require a heightened fact pleading of specifics, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. This standard, however, simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim. *Id*. at 556.

Courts must liberally construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *Id*. at 555; see also *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (stating that in a motion to dismiss, courts accept as true all factual allegations in the complaint); *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008) (explaining that courts should liberally construe the complaint in the light most favorable to the plaintiff). Further a court should not dismiss the complaint simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations. *Twombly*, 550 U.S. at 556. Unless the allegations of the complaint show that there is some insuperable bar to relief, dismissal under Rule 12(b)(6) is inappropriate. *Benton v. Merrill Lynch & Co*., 524 F.3d 866, 870 (8th Cir.

2008).

### B. The Plaintiffs Have Not Alleged A State Tort Claim Against Chief Jon Belmar For False Arrest, Intentional Infliction Of Emotional Distress, Or Assault And Battery

For reasons that are not clear, defendant Belmar appears to take issue with non-existent claims that he attributes to the plaintiffs. At no place in plaintiffs' one-hundred sixty-three (163) paragraph second amended complaint is it stated, suggested, or implied that the plaintiffs' are seeking to hold Chief Belmar liable for false arrest, intentional infliction of emotional distress or assault and battery, either directly or vicariously. In fact, the only basis that the plaintiffs set forth alleging liability on the part of defendant Belmar is in those paragraphs headed "Failure to Train, Supervise and Discipline 42 U.S.C. 1983." Inasmuch as the plaintiffs are not seeking to recover for any State tort claims against defendant Belmar, the motion of defendants Belmar and and St. Louis County should be denied as moot in this regard.

### C. Defendant St. Louis County Enjoys No Immunity In This Case

There is no question that the conduct alleged in this action by the plaintiffs constitutes what would be considered governmental functions. *Gregg v. City Kansas City*, 272 S.W. 3d 353, 358 (Mo. App. W.D. 2008). (sovereign immunity attaches to the operation and maintenance of a police force). §71.185 R.S. Mo. provides in relevant part as follows:

> Any municipality engaged in the exercise of governmental functions may carry liability insurance and pay the premiums therefor to insure such municipality and their employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmental functions, and shall be liable as in other cases of torts for property damage and personal injuries including death suffered by third persons while the municipality is engaged in the exercise of the governmental functions to the extent of the insurance so carried.

There is also no real question that St. Louis County has purchased insurance policies that would address, at least to some extent, the claims alleged herein, as alleged in plaintiffs' second amended complaint at ¶19. Notably, a municipality has sovereign immunity from actions at common law tort in all but four cases: (1) where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (§537.600.1(1)); (2) where the injury is caused by the dangerous condition of the municipality's property (§537.600.1(2)); (3) where the injury is caused by the municipality performing a proprietary function as opposed to a governmental function (*State ex rel. Board of Trustees of the City of North Kansas City Memorial Hospital v. Russell*, 843 S.W.2d 353, 358 (Mo. en banc 1993)); and (4) to the extent the municipality has procured insurance, thereby waiving sovereign immunity up to but not beyond the policy limit and only for acts covered by the policy (§537.610). *Bennartz v. City of Columbia*, 300 S.W. 3d 251, 259 (Mo. App. W.D. 2009).

Thus, the sole issue here is whether or not the plaintiffs actually "pled" an exception to sovereign immunity. To be sure, there appears to be a conflict procedurally, in terms of the contents of a complaint. On the one hand:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. [citations omitted].

*Erickson v. Pardus*, 551 U.S. 89, 93 (2007), while on the other, State Courts in Missouri

> have routinely held that sovereign immunity is not an affirmative defense and that the plaintiff bears the burden of pleading with specificity facts giving rise to an exception to sovereign immunity when suing a public entity.

*Richardson v. City of St. Louis*, 293 S.W. 3d 133, 137 (Mo. App. E.D. 2009).

Without litigating which procedural law should apply in this federal court action, the plaintiffs submit that ¶19 of their Second Amended Complaint wherein it is alleged in relevant part:

> Defendants have waived sovereign immunity by establishing some type of insurance coverage for the claims at issue pursuant to Mo. Rev. Stat. § 71.185. Plaintiffs further contend that the City of Ferguson, as a Charter Member of the St. Louis Area Trust, has purchased insurance policies that would address, at least to some extent, the claims alleged herein.

more than sufficiently alleges a basis for exception four (4) as set forth above. (the procurement of insurance covering the act(s) alleged in the complaint). Conspicuously, the defendants have not suggested otherwise.

At this stage of the litigation, the Court is obligated to accept as true all of the factual allegations contained in plaintiffs' second amended complaint, and review the second amended complaint to determine whether its allegations show that the pleader is entitled to relief. The plaintiffs need not provide specific facts in support of their allegations at this point. *Schaaf, supra.*, at 517 F. 3d 549. The plaintiffs have alleged that an insurance policy has been purchased, and that the policy purchased would address at least some of the plaintiffs' claims. The issue is not whether the complaint could be more detailed, the issue is does the complaint set forth sufficient facts, and all reasonable inferences that can be deduced therefrom, that would entitle them to relief. Clearly, it does with respect to the issue of St. Louis County's alleged immunity.

**D.    The Plaintiffs Have Sufficiently Pled A Claim For Negligent Supervision**

Whether negligent supervision is a seldom used or often used tort is beside the point. Under Missouri law, it has been held that negligent supervision implicates the duty of a master to control conduct of a servant:

> A master is under the duty to exercise reasonable care so to control his servant while

> acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
>
> (a) the servant
>
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control.

*Gibson v. Brewer*, 952 S.W. 2d 239, 249 (Mo. banc 1997). The definition of negligent supervision in the RESTATEMENT OF AGENCY, is as follows:

> A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:
>
> (a) in giving improper or ambiguous orders o[r] in failing to make proper regulations; or
>
> (b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
>
> (c) in the supervision of the activity; or
>
> (d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

RESTATEMENT (SECOND) OF AGENCY § 213 (1958).

Somewhat surprisingly, the defendants seem to suggest that the duty owed in the context of a negligent supervision case is only to the person being supervised. That position is plainly non-sensical and in direct conflict with *Gibson v. Brewer, supra*. Indeed, Missouri Courts have clearly

held that police departments can be held liable for negligent supervision.

> As noted earlier, the evidence established a duty running to the operators of the theatre to protect them from the abuses of the police. This is because the risks created by the failure to supervise directly threatened the operators' business. We also think that given the known harassment, a reasonably foreseeable risk of damage to plaintiff's building and property was also shown. Although damage to the operators' business may have been the most obvious risk, it is clear that damage to the building housing that business was also a reasonably foreseeable risk so as to be encompassed within the scope of the duty to properly supervise the police department. While there may have been no prior indication that the damage would be accomplished by arson, there was a prior indication that damage to the building could occur. "If the result is foreseeable, the manner in which it is brought about need not be, and is immaterial." Prosser & Keeton, Torts § 44, at 317 (5th ed. 1984). Therefore, we find the first element satisfied.
>
> Having noted earlier that no corrective measures were taken, the second element has been satisfied. The duty to properly supervise the department was breached.

*St. John Bank & Trust Co. v. St. John*, 679 S.W. 2d 399, 403 (Mo. App. 1984).

> In support of their claim for negligent supervision, the plaintiffs allege the following:
>
> 35. During the period of August 11-13, 2014, Defendant Cosma and Defendant John Doe police officers were acting under the direction and control, and pursuant to the rules, regulations, policies and procedures, of Defendants City of Ferguson and St. Louis County.
>
> 36. Defendants City of Ferguson and St. Louis county acted negligently, carelessly and recklessly-by failing to properly train, supervise, control, direct and monitor Defendant Cosma and Defendant John Doe police officers.
>
> 37. As a direct and proximate result of the acts and omissions of Defendants City of Ferguson and St. Louis County, Plaintiffs White and Davis were wrongfully and unlawfully, arrested, detained and humiliated. As a result, Plaintiffs White and Davis have suffered physical assault, embarrassment, and mental anguish.

Clearly, they have more than sufficiently pled a claim for negligent supervision under the requirements of F.R.C.P. 8(a). *Ashcroft, supra.*, 556 U.S. 678.

> The defendants also claim that St. Louis County is immune in tort under state law. Mot.

Mem. at 6. Although they do not spell out the basis for this alleged immunity, the plaintiffs note that they have alleged in the second amended complaint, ¶ 19, that St. Louis County has purchased insurance to address the claims asserted herein, pursuant to §71.185 R.S. Mo., and as such:

> Although the operation and supervision of a police department are acts involving discretion of public officials, they constitute the exercise of a governmental function, the immunity for which is waived by the purchase of insurance.

*St. John, supra*., at 401.

### E. Plaintiff Burns Has Sufficiently Pled Intentional Infliction Of Emotional Distress

The thrust of the defendants' argument here is what the plaintiffs must prove at trial or provide sufficient evidence of at the summary judgment stage. What is before the Court at this point, however, is a motion to dismiss the plaintiffs' complaint. As noted above, a plaintiff, at this point is only required to plead facts, that if taken as true, state a claim for relief that is plausible on its face. *Ashcroft, supra*. In support of his claim for intentional infliction of emotional distress, plaintiff Burns basically alleges that several officers attacked him after he placed his hands in the air and then behind his back in order to demonstrate that he was submitting to being handcuffed; dousing him with a mace like substance; violently grabbing his hair; throwing him to the ground; slamming his head into the ground; sticking their fingers in his ear; pretending to search his genital area with mace soaked hands to cause unnecessary pain; and threatening his life. All while he was handcuffed.

Plaintiff Burns was subsequently advised that he was being arrested on the bogus charge of failure to disperse, taken into custody and held, in clothes that were drenched in the mace like substance, for approximately 24 hours. The absence of probable cause, which the defendant officers knew did not exist, exhibits malice in and of itself. A reasonable juror could conclude that the defendants' further acts of beating him and intentionally engaging in sadistic behavior for the sole

purpose of inflicting pain, is intolerable conduct in a civilized society.

Plaintiff Burns further alleges that he "suffered discomfort, distress, loss of liberty and has suffered, and will continue to suffer, psychological harm and mental anguish including fright, shame, mortification, humiliation and embarrassment." ¶ 136. According to the defendants, a plaintiff must also allege and prove the medical treatment that they received as a result of the incident. Mot. Mem. at 10. While it may be true that a plaintiff has an obligation to present evidence to that effect at the summary judgment and/or trial stage

> a plaintiff will be permitted to recover for emotional distress provided: (1) the defendant should have realized that his conduct involved an unreasonable risk of causing the distress; and (2) the emotional distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant. Former decisions holding to the contrary are no longer to be followed.

*Bass v. Nooney Co.*, 646 S.W. 2d 765, 772-73 (Mo. en banc 1983), no such requirement exists at the pleading stage. *Ashcroft, supra*.

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. [citations omitted].

The plaintiff need not provide specific facts in support of their allegations at this point. *Schaaf, supra*.

### F. Plaintiffs Have Stated A Plausible Claim Against Defendant Belmar

The basis for defendant Belmar's potential liability, as is that of defendant Jackson is clearly spelled out in a Standard Federal Jury Instruction that reads as follows:

> If you find that the conduct of the subordinate (or supervised person) denied the plaintiff a right guaranteed by federal law, you must consider whether the supervisor (or supervisory official) caused that conduct. If the supervisor did cause the conduct, then he is liable under section 1983 for the denial of plaintiff's

constitutional right.

The standards for assessing whether the supervisor proximately caused plaintiff's constitutional injury are different from the standards for assessing the subordinate's liability. If the subordinate denied plaintiff a constitutional right, a supervisor is not liable for such a denial simply because of the supervisory relationship.

But there are circumstances under which you may find that the supervisor has caused plaintiff's injury, and thus is liable for the illegal conduct of the subordinate. Two such circumstances exist. First, if you find that the supervisor has done something affirmative to cause the injury to the plaintiff—for example, by directing the subordinate to do the acts in question—you should find that the supervisor caused the injury. Second, if you find that the supervisor failed to carry out his duty to oversee the subordinate, knowing that his failure to do so probably would cause a deprivation of the plaintiff's rights by the subordinate, you should find that the supervisor caused the injury. A finding of either circumstance is enough to establish that the supervisor caused the injury. I will explain each of these in detail.

To find that the supervisor did something affirmative to cause injury to the plaintiff, you must find by a preponderance of the evidence that the supervisor was personally involved in the conduct that caused plaintiff's injury. Personal involvement does not mean only that the defendant supervisor directly, with his own hands, deprived plaintiff of his rights. The law recognizes that the supervisor can act through others, setting in motion a series of acts by subordinates that the supervisor knows, or reasonably should know, would cause the subordinates to inflict the constitutional injury. Thus, plaintiff meets his burden of proof as to the personal involvement of the supervisor in the subordinate's conduct if he proves by a preponderance of the evidence that the deprivation of his right took place at the supervisor's direction, or with the supervisor's knowledge, acquiescence or consent. The supervisor may give his consent expressly or his consent may be implied because of his knowledge of or acquiescence in the subordinate's unconstitutional conduct.

In the absence of personal involvement, you may still find that the supervisor caused the injury to the plaintiff if you find that he failed to carry out his duty to oversee the subordinate. To make such a finding, you must conclude by a preponderance of the evidence that the supervisor had a duty to oversee the subordinate, that he grossly disregarded that duty, and that a reasonable person in the supervisor's position would have known that his dereliction of duty probably would cause a deprivation of rights.

Instruction 87-80, Modern Federal Jury Instructions, Sand, Seifert, Reiss, Batterman.

Furthermore, the 8th Circuit has instructed that a cause of action predicated on a supervisor's

failure to supervise or control his subordinates may be maintained if a defendant demonstrated deliberate indifference or tacit authorization of the offensive acts. Similarly, supervisory liability for a pervasive and unreasonable risk of harm from a specified source based on deliberate indifference or tacit authorization is actionable. *White v. Holmes*, 21 F.3d 277, 280 (8th Cir. 1994). In addition, a supervisor who knows about the conduct at issue and facilitates it, approves it, condones it, or turns a blind eye for fear of what [he] might see may also be held liable. *Ripson v. Alles*, 21 F.3d 805, 809 (8th Cir. 1994).

In their second amended complaint, the plaintiffs allege the following as to the liability of defendant Belmar:

> 43. During the period of August 11-13, 2014, Defendants that were responsible for the arrest of Plaintiffs White and Davis were acting under the direction and control, and pursuant to the practices and customs of Defendants City of Ferguson and St. Louis County and implemented by Defendants Belmar and Thomas.
>
> 44. Defendants acted negligently, carelessly, recklessly and with deliberate indifference to Plaintiffs by failing to properly train, supervise, control, direct, monitor and discipline Defendant officers from their respective departments who were patrolling the streets of Ferguson, Missouri during the period of August 11-13, 2014.
>
> 45. As a direct and proximate result of the acts and omissions of Defendants City of Ferguson, St. Louis County, Belmar and Thomas, Plaintiffs White and Davis were unlawfully arrested, seized and otherwise deprived of their rights under the Fourth Amendment to the U.S. Constitution.

The plaintiffs have specifically pled that defendant Belmar acted with deliberate indifference and that he failed to properly train, supervise, control, direct, monitor and/or discipline those under his control who were responsible for the constitutional deprivations inflicted upon the plaintiffs. Accordingly, plaintiffs have more than adequately set forth a claim for relief pursuant to 42 U.S.C. § 1983 as to defendant Belmar, in his individual capacity.

### G. The Plaintiffs Specifically Indicated That Defendant Belmar Was Being Sued In Both his Individual and Official Capacities

In a strange twist, the defendants claim that plaintiffs have not "stated a claim against Chief Belmar in his individual capacity." Mot. Mem. at 12. What makes this representation odd, is the fact that in their next three (3) sentences, the defendants assert:

> In addition, plaintiffs have not even properly pled that Belmar is being sued in his individual capacity. It is conceded that in the style of the case the plaintiffs named Jon Belmar "individually, and in his official capacity as St. Louis County, Missouri Chief of Police." However, nowhere in the pleading is it ever alleged that Jon Belmar is sued in his individual capacity.

*Id*. The defendants' position is bewildering. Pursuant to F.R.C.P. 7(a) only the following pleadings are allowed:

(1) a complaint;

(2) an answer to a complaint;

(3) an answer to a counterclaim designated as a counterclaim;

(4) an answer to a crossclaim;

(5) a third-party complaint;

(6) an answer to a third-party complaint; and

(7) if the court orders one, a reply to an answer.

The plaintiffs state unequivocally and unambiguously, in their initial pleading, which is their complaint, that defendant Belmar was named a defendant in this action individually, and in his official capacity. The defendants fail to explain what it is that they deem improper about the way that plaintiffs sued defendant Belmar in his individual capacity, and they certainly do not identify any

authorities that support their novel theory, nor do they even suggest that they had no knowledge that plaintiffs were seeking liability against defendant Belmar his individual capacity. In actuality, the defendants' position is nothing more than paper filling rhetoric that is devoid of even arguable merit.

### H. Plaintiffs' Have Sufficiently Pled A Cause Of Action With Respect To Defendant St. Louis County

A claim against a county is actionable where a constitutional violation has been committed pursuant to an official custom, policy, or practice. *Johnson v. Blaukat*, 453 F.3d 1108, 1114 (8th Cir. 2006) (citing *Monell v. Dep't. of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). The custom, policy, or practice must be "the 'moving force' behind the violation." *Patzner v. Burkett*, 779 F.2d 1363, 1367 (8th Cir. 1985) (quoting Monell, 436 U.S. at 694). "Moreover, the plaintiff must show not only that a policy or custom existed, and that it was causally related to the plaintiff's injury, but that the policy itself was unconstitutional." *Id*. at 1367 (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 326, (1981).

The plaintiffs have not alleged any basis for liability on the part of St. Louis County based upon respondeat superior or vicarious liability, they have alleged that St. Louis County had customs, policies and/or practices in place regarding the training, supervision, control, monitoring and disciplining of its officers that exhibited deliberate indifference to the care and safety of the citizens in the County and which specifically led to injuries suffered by the plaintiffs. At this stage of this litigation, that is all that the plaintiffs are required to do. Contrary to what appears to be the position of the defendants, the plaintiffs need not provide specific facts in support of their allegations at this point. *Schaaf, supra*., 517 F.3d 549, and they undoubtedly are not required to prove their case at this stage of the litigation. As plaintiffs have reiterated consistently

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [citations omitted].

*Ashcroft, supra*., 556 U.S. 678. They have more than met this requirement in asserting their basis for liability with respect to defendant St. Louis County.

Wherefore for the reasons stated herein and in the record of this proceeding the plaintiff Burns respectfully requests that the motion of defendants St. Louis County and Jon Belmar be summarily denied.

Respectfully submitted,

By /s/ Gregory L. Lattimer
Gregory L. Lattimer [371926DC]
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Tel. (202) 434-4513
Fax: (866) 764-6442
Lattlaw@aol.com

Malik Z. Shabazz [458434DC]
Black Lawyers for Justice
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Tel: (202) 434-4528
Fax: (202) 248-4478
attorney.shabazz@yahoo.com

Reginald A. Greene[308674GA]
Greene Legal Group LLC
One Georgia Center, Suite 605
600 West Peachtree Street, N.W.
Atlanta, Georgia 30308
Tel. (404) 574-4308
Fax: (404) 574-4312
rgreene@greenelegalgroup.com
Counsel for the Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing filed electronically with the Clerk of the Court was served electronically via the Court's electronic filing system on this 5th day of January, 2015 upon:

Peter J. Dunne, Esq.
Robert T. Plunkert, Esq.
Pitzer Snodgrass, P.C.
100 South Fourth Street
Suite 400
St. Louis Missouri 63102-1821
Attorneys for Defendants City of Ferguson, Chief Thomas and Officer Cosma

Michael E. Hughes, Esq.
Associate County Counselor
Priscilla F. Gunn, Esq.
Assistant County Counselor
41 S. Central
Ninth Floor
Clayton, MO 63105
Attorneys for St. Louis County and Chief Belmar

/s/ Gregory L. Lattimer