IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACEY WHITE, et al. | ) |
| Plaintiffs | ) |
| v. | ) Cause No. 14-cv-01490 - HEA |
| THOMAS JACKSON, et al. | ) |
| Defendants. | ) |

## REPLY TO KERRY WHITE AND KIA AND SANDY BOWERS' OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS JON BELMAR AND ST. LOUIS COUNTY

### Preliminary Statement

Defendants Jon Belmar and St. Louis County filed a Motion to Dismiss the claims filed by Kerry White and Kia and Sandy Bowers. Along with that Motion, a Memorandum of law was filed. Kerry White, Kia Bowers and Sandy Bowers then filed a Response in Opposition to that separate motion. This Memorandum of Law is a reply to that response.

### Reply to Statement of Facts

Kerry White, Kia Bowers and Sandy Bowers do not dispute the specific Statement of Facts that was presented by Jon Belmar and St. Louis County, wherein Belmar and County cited paragraphs from plaintiffs' 2nd Amended Complaint. Instead of addressing facts specific to them on August 12th, 2014 that occurred on Lorna Street, K. White, Bowers and Bowers spoke generally about events from August 11th to 13th, and then often substitute argument for fact by saying, for example, there was "wanton and excessive force under color of law which deprived plaintiffs of rights." Those plaintiffs also added things not applicable to the Motion to Dismiss such as "lawless acts.....were being broadcast to the public at large by numerous news

1

organizations." Interestingly K. White, Bowers and Bowers mentioned that protests led to "civil unrest in the streets of Ferguson, Missouri...... during the period of August 11-13, 2014," including August 12th when plaintiffs were arrested for failure to disperse.

It is respectfully submitted that defendants' Statement of Facts with citations to the paragraphs of the 2nd Amended Complaint is accurately stated.

**Reply to Statement of Law**

Reply to State claims against Jon Belmar

In his motion to dismiss state claims defendant Belmar invoked defenses applicable to a someone in the position of chief of police, namely that the doctrine of respondeat superior would not apply, that Chief Belmar has official immunity, and is protected by the public duty doctrine. It may have been ambiguous whether or not plaintiffs K. White, Kai Bowers and Sandy Bowers were attempting to state common law claims against Chief Belmar but these defenses were raised because in Count C (Assault and battery) Kerry White demanded judgment against "defendants jointly and severally;" and in Count A (false arrest) Kai and Sandy Bowers demanded judgment against "defendants jointly and severally," and in Count C (assault and battery) Kai and Sandy Bowers demanded judgment against "defendants jointly and severally;" and so presumably the word "defendants" included Chief Belmar. Further in paragraphs 87 and 161 those plaintiffs alleged that the officers who arrested those plaintiffs were acting pursuant to the practices and customs of St. Louis County as implemented by Chief Belmar. Maybe it was overly cautious to raise the defenses applicable to the Chief of police but the ambiguity of the pleadings seemed to make it necessary; but if there was ambiguity, it has now certainly been cleared up by the statement on page 4 of plaintiffs' Response that those plaintiffs are not seeking to recover for any State tort claims against defendant Belmar. Therefore the state law claims against Belmar should

2

be dismissed because his defenses are valid and/or because K. White, Bowers and Bowers have informed the Court that they are not seeking to recover for any state law claims against Chief Belmar.

State claim of assault and battery

Plaintiffs Kerry White, Kia Bowers and Sandy Bowers have not responded to the issue that they have not stated a state law claim of assault and battery against any police officers, apparently believing that as long as they don't attempt to state a claim against the chief of police who may be the chief of police of the John Does who they wish to sue for assault and battery, then they can delay addressing the Missouri law that police do not commit the common law actions of assault or battery by placing handcuffs on someone who is arrested. (See the discussion of *Lacy v .Gray,* 2013WL 3766567 (4:13 CV 370, July 16, 2013), and see *Neal v. Helbling,* 726 S.W. 2d 483, 487 (Mo App. 1987). But the problem with not responding to this is that these plaintiffs still allege that St. Louis County does not have immunity as the employer of t John Doe officers who allegedly committed an assault and battery by handcuffing them during an arrest. So if there is no assault and battery to begin with, it should not be even necessary to consider whether the employer of the John Does could have liability. Count C is the assault and battery count, alleging John Doe officers willfully assaulted, battered and handcuffed plaintiff, and then in the next count, Count D, plaintiffs allege that this "excessive force" was a 4th Amendment violation, and then in Count E, filed against St. Louis County, Chief Belmar and others it is alleged that force (involved in the handcuffing) was implemented because of a failure to train supervise and discipline, alleging that St. Louis County and Chief Belmar should be liable under 42 U. S. C. 1983 for the actions of John Does officers. So the claims are interconnected. If there is not an underlying claim for assault and battery, which there isn't, then

3

there is no common law claim against the employer of the John Doe Officers and there is no Federal Civil Rights claim against the employer or against the Chief. Because plaintiffs K. White, Bowers and Bowers did not respond, and because *Neal v. Helbling*, 726 S. W. 2d 483, 487 (Mo. App. 1987) and Lacey *v. Gray*, 2013 WL37667 (U. S. District Ct., E. D. Mo, 2013) explain the law applicable to handcuffing, it is respectfully suggested that the motion to dismiss the assault and battery claims should be sustained.

Reply to the issue of immunity of St. Louis County under state law.

St. Louis County cited in its Memorandum a state statute as well as 10 cases that demonstrate that St. Louis County enjoys governmental immunity for the state law claims. Plaintiffs did not dispute these particular cases or the statute.

Plaintiffs have attempted to find some way to avoid sovereign immunity dismissal of St. Louis County. After filing a complaint and an amended complaint, the plaintiffs filed a 2nd Amended Complaint that contains a new paragraph 19, which states that "Upon information and belief, Defendants (two different entities) have waived sovereign immunity by establishing some type of insurance coverage for the claim at issue pursuant to Mo. Rev. Stat. 71.185." One noticeable problem with plaintiffs' allegation is that Section 71.185 specifically refers to a municipality, not to a County or other subdivision of the state, and so St. Louis County could not have possibly waived sovereign immunity pursuant to that particular statute. Plaintiffs cite *Gregg v. City of Kansas City*, 272 S. W. 3d 353 (Mo. App. W. D. 2008) but that decision states at pages 359-360 that the plaintiff bears the burden of demonstrating the existence of the insurance and that it covered his particular claim; and further states that finding a *municipality* (emphasis added) liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating his claims fall within an exception to

4

sovereign immunity. Note that plaintiffs do <u>not</u> plead with specificity any facts pertaining to St. Louis County that may possibly demonstrate that their claims fall within an exception, even while the plaintiffs attempt to plead some type of specificity only as to the municipality, the city of Ferguson, where plaintiffs allege in paragraph 19 of the 2nd Amended Complaint that the City of Ferguson as a Charter Member of the St. Louis Area Insurance Trust has purchased insurance policies that would address to some extent the claims of the plaintiffs.

It should not go without notice that St. Louis County and Jon Belmar are represented by the County Counselor's office of St. Louis County. The question might become whether it should be necessary to require St. Louis County to file a separate Motion for Summary Judgment denying that sovereign immunity has been waived; when the plaintiffs have not pled specificity but instead vaguely alleged that on "information and belief" defendants purchased insurance and then at page 6 of their Response those plaintiffs instruct the Court that it is obligated to accept as true all of the factual allegations in the second amended complaint. However to survive a motion to dismiss the claim must be facially plausible, which means that there must be a reasonable inference that the defendant is liable, Cole *v. Homier Dist. Co. Inc.*, 599 F. 3d 856, 861 (8th Cir. 2010). It is respectfully submitted that unless the Court grants plaintiffs a 4th try, so that they can file a 3rd Amended Complaint, there presently is no reasonable plausible inference that St. Louis County could be liable on any state claim.

<u>Reply to state common law claim of negligent supervision</u>

Defendants County and Belmar still maintain that *Missouri Practice, Volume 34* and the cases cited in their Memorandum of Law correctly state that this separate tort (as opposed to an ordinary negligence tort where liability of an entity is sought based upon respondeat superior because of the acts of an agent or employee) usually involves a special relationship where a duty

of supervision is owed, and that examples of such special relationships are those that may exist between a grandparent to a grandchild or that may exist between a teacher to a student; but that plaintiffs have not pled that a special relationship existed with a duty owed to them.

Plaintiffs did cite a case with a slightly different sort of relationship called *Gibson v. Brewer*, 952 S. W. 2d 239 (Mo. banc 1997), a case where the plaintiff child spent the night in a church rectory and allegedly was sexually fondled. Concerning the claim of Negligent Failure to Supervise Clergy, the Missouri Supreme Court stated at p. 247 that among the elements of such negligent supervision is when the servant of the master is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or using a chattel of the master. It is astonishing to suggest that this wording or anything about the *Gibson* case has any applicability to plaintiffs Kerry White, Kia Bowers and Sandy Bowers being arrested for failure to disperse when they were on a street called Lorna during civil unrest in the streets.

Next the plaintiffs cite *St. John Bank & Trust Co. v. City of St. John*, 679 S. W. 2d 399 (Mo. App. E. D. 1984), a case decided by the appellate court as a simple negligence or simple failure to use ordinary care case, not as a tort called negligent supervision The court in St. *John Bank & Trust Co.,* recognized at the outset, that the City of St. John conceded that it had purchased insurance specifically waiving sovereign immunity for negligence, and then noted that what was alleged was the same as an act done negligently, and that any error in the verdict director that referred to the word supervise was harmless. The Court did not discuss the elements of a separate tort called "negligent supervision."

Reply to the claim that Plaintiffs have not stated a claim upon which relief can be granted under 42 U. S. C. 1983 against Chief Jon Belmar, and have not even properly pled a claim in Belmar's individual capacity.

6

Plaintiffs Kerry White and Kia Bowers and Sandy Bowers did not respond. It is respectfully submitted that there is no dispute that any and all claims filed against Jon Belmar under 42 U.S. C. 1983 should be dismissed.

If K. White, Kia and Sandy Bowers hope to incorporate what was said by other plaintiffs in other Responses, then Chief Belmar likewise wishes to incorporate what he said in his Reply to other plaintiffs' responses such as his Reply to Antwan Harris and his Reply to Dewayne Matthews.

Reply to Plaintiffs claims under 42 U.S. C. 1983 against St. Louis County

Kerry White and Kia Bowers and Sandy Bowers did not file a response in opposition to the Motion to Dismiss the claims filed against St. Louis County pursuant under 42 U.S.C. 1983. It is respectfully submitted that the cases cited by defendant St. Louis County are not disputed and plaintiffs have not stated a claim for the reasons set forth in County's Memorandum of Law

If K. White, Kia and Sandy Bowers hope to incorporate what was said by other plaintiffs in other Responses, then Chief Belmar likewise wishes to incorporate what he said in his Reply to other plaintiffs' responses such as his Reply to Antwan Harris and his Reply to Dewayne Matthews.

**Conclusion**

For all of the reasons stated in the initial Memorandum of Law in Support of their Motion to Dismiss, and for the reasons further explained herein, St. Louis County Police Chief Jon Belmar's and St. Louis County's Motion to Dismiss the claims filed against them by Kerry White and Sandy and Kai Bowers should be sustained.

Respectfully Submitted

PETER J. KRANE
COUNTY COUNSELOR

/s/ Michael E. Hughes
Michael E. Hughes #23360MO
Associate County Counselor
Mhughes2@stlouisco.com
Priscilla F. Gunn #29729MO
Assistant County Counselor
Pgunn@stlouisco.com
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042
(314) 615-3732 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served electronically via this Court's Electronic Filing System to all counsel of record.

s/s Michael E. Hughes
Michael E. Hughes