IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

TRACEY WHITE, et al.        )
                            )
    Plaintiffs              )
                            )
v.                          )   Cause No. 14-cv-01490 - HEA
                            )
THOMAS JACKSON, et al.      )
                            )
    Defendants.             )

## REPLY TO NATHAN BURNS' OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS JON BELMAR AND ST. LOUIS COUNTY

### Preliminary Statement

Defendants Jon Belmar and St. Louis County filed a Motion to Dismiss the claims filed by Nathan Burns. A Memorandum of law was filed along with that motion. This is a reply memorandum to the response filed by Nathan Burns.

### Reply to Statement of Facts

Nathan Burns did not dispute the specific Statement of Facts presented by Jon Belmar and St. Louis County, wherein Belmar and County cited paragraphs from plaintiffs' 2nd Amended Complaint. Instead of addressing the facts specific to him on the night of August 11th, 2014 at his unspecified street, there was tear gas, then a chaotic situation, then he tried to walk away but was grabbed, handcuffed, maced and searched, , Burns spoke in general terms about t events from August 11th to 13th, 2014, and often substituted argument for fact by saying, for example, on page 2 that there was "wanton and excessive force under color of law which deprived plaintiffs of rights," and also added things not applicable to the Motion to Dismiss such as the comment on page 2 that " lawless acts…..were being broadcast to the public at large by numerous news organizations." Burns conceded on page 2 that there was "civil unrest in the

1

streets of Ferguson, Missouri" which included the night that he was arrested for failure to disperse.

It is respectfully submitted that defendants' Statement of Facts with citations to the paragraphs of the 2nd Amended Complaint should be accepted by the Court.

**Reply to Statement of Law**

Reply to issue of State claims against Jon Belmar

In his motion to dismiss state claims, Chief Belmar invoked state law defenses applicable to his position, namely that the doctrine of respondeat superior would not apply, that Chief Belmar has official immunity, and that Chief Belmar is protected by the public duty doctrine. These defenses were raised because in Nathan Burns prayer for relief in Count A (False Arrest) he demanded relief against "Defendant officers, jointly and severally," and in Count B (Intentional Infliction of Emotional Distress) plaintiff Burns demanded judgment against "defendants jointly and severally" and in Count D, (Assault and Battery) Burns demanded judgment against "defendants, jointly and severally." Presumably the word "defendants" included defendant Jon Belmar, and although it was ambiguous, the words "Defendant officers" could have included the Chief. In addition Burns alleged in paragraph 18 that John Doe officers were acting pursuant to the practices and customs of St. Louis County as implemented by Chief Belmar; and so it could be assumed that Burns was attempting to state a claim against the Chief. Maybe it was overly cautious to raise these state law defenses applicable to the chief, but the ambiguity of Nathan Burns' pleadings seemed to make it necessary; but if an ambiguity existed, it has now certainly been cleared up by the statement on page 4 of Nathan Burns' Response that plaintiffs, (including Burns) "are not seeking to recover for any state tort claims against defendant Belmar." So that matter is settled. The state law claims against Belmar should be

2

dismissed because his defenses are valid and/or because plaintiff Burns has informed the Court that he is not seeking to recover on state law claims against Belmar.

Reply to the issue of immunity of St. Louis County under state law.

St. Louis County cited in its Memorandum a state statute as well as 10 cases that demonstrate that St. Louis County enjoys governmental immunity for the state law claims. Nathan Burns in his Response, did not dispute these particular cases or the statute, but still attempted to avoid governmental immunity of state law claims, as explained below.

After filing a complaint and an amended complaint, Nathan Burns and the other plaintiffs filed a 2nd Amended Complaint that contains a new paragraph 19, which broadly states that "Upon information and belief, Defendants (separate entities) have waived sovereign immunity by establishing some type of insurance coverage for the claim at issue pursuant to Mo. Rev. Stat. 71.185." One obvious problem with Burns' citation is that Section 71.185 R.S. Mo. specifically refers to a municipality, not to a County or the state, and so St. Louis County could not possibly have waived sovereign immunity pursuant to Section 71.185. Burns cited *Gregg v. City of Kansas City*, 272 S. W. 3d 353 (Mo. App. W. D. 2008) but that decision states at pages 359-360 that the plaintiff bears the burden of demonstrating the existence of the insurance and also that the insurance covered his particular claim; and further states that finding a municipality liable for torts is the exception to the general rule of sovereign immunity, and a plaintiff must plead with specificity facts demonstrating that his claims fall within an exception to sovereign immunity. Note that Burns and the other plaintiffs did not plead with specificity any facts pertaining to St. Louis County that may possibly demonstrate that plaintiffs' claims against the County fall within an exception, even while an attempt was made to plead some type of specificity only as to the municipality, the city of Ferguson, where it was alleged in paragraph 19

3

of the 2nd Amended Complaint that the City of Ferguson, as a Charter Member of the St. Louis Area Insurance Trust, has purchased insurance policies that would address to some extent the claims of the plaintiffs.

It should not go without notice that St. Louis County and Jon Belmar are represented by the County Counselor's office of St. Louis County. The question might become whether it should actually be necessary to require St. Louis County to file a separate Motion for Summary Judgment denying that sovereign immunity has been waived by the purchase of insurance when Burns and the other plaintiffs have not pled specificity but instead vaguely alleged or argued on "information and belief" that defendants (separate governmental entities) purchased insurance, after which Burns attempts to instruct the Court at page 6 of his Response, that "the Court is obligated to accept as true all of the factual allegations in the second amended complaint." However to survive a motion to dismiss, plaintiff's claim must be facially plausible, which means that there must be a reasonable inference that the defendant is liable, *Cole v. Homier Dist. Co. Inc.*, 599 F. 3d 856, 861 (8th Cir. 2010). It is respectfully submitted that unless the Court grants Burans and the other plaintiffs a 4th try, so that a 3rd Amended Complaint could be filed, there presently is no reasonably plausible inference that St. Louis County does not have immunity on the state common law claims.

Reply to response of issue concerning a separate state tort of Negligent Supervision

Defendant St. Louis County still maintains that Missouri *Practice, Volume 34* and the cases cited in the Memorandum of Law correctly state that this separate independent tort (as opposed to an ordinary negligence tort where liability of an entity is sought based upon pass through respondeat superior acts of an agent or employee) usually involves a special relationship where a duty of supervision is owed. The County still maintains that examples of such special

4

relationships are those discussed in *Missouri Practice Volume 34*, such as a relationship of a grandparent to a grandchild, or of a teacher to a student. County still maintains that Burns has not pled a special relationship existed with a duty owed to him.

Nathan Burns cited a case with a slightly different sort of relationship but still a relationship of sorts called *Gibson v. Brewer*, 952 S. W. 2d 239 (Mo. banc 1997), a case where a child spent the night in a church rectory and allegedly was sexually fondled. Concerning the different claim of "Negligent Failure to Supervise Clergy," the Missouri Supreme Court stated at p. 247 that among the elements of such negligent supervision is when the servant of the master is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or using a chattel of the master. It is astonishing to suggest that this wording or anything concerning the *Gibson* case has any applicability to Nathan Burns who during civil unrest in the streets of Ferguson, was tear gassed along with other people after which he was arrested, searched and released after 24 hours.

Next Burns cited *St. John Bank & Trust Co. v. City of St. John*, 679 S. W. 2d 399 (Mo. App. E. D. 1984). In fact this case was decided by the appellate court as a simple negligence or simple failure to use ordinary care case, not as a separate tort called "negligent supervision." The court in St. *John Bank & Trust Co* recognized at the outset, that the City of St. John conceded that it had purchased insurance specifically waiving sovereign immunity for negligence, and then noted that what was alleged was the same as an act done negligently, and that any error in the verdict director that referred to the word supervise was harmless. The Court did not discuss the elements of a separate tort called "negligent supervision."

The conclusion should remain that Nathan Burns did not state a claim for the separate tort of "negligent supervision" against St. Louis County, and even if he could file a 3rd amended

5

complaint to attempt to plead the necessary elements of that separate tort, St. Louis County has immunity for state claims.

Reply whether a claim was stated for the tort of Intentional infliction of emotional distress

In St. Louis County's and Belmar's Memorandum of Law eight cases were cited explaining why Nathan Burns did not state a claim for the separate tort called intentional infliction of emotional distress. Seven of the cases cited were Missouri cases and one was a U.S. District Court case that gave a very good discussion explaining there are very few factual scenarios that would support a claim for intentional infliction of emotional distress. In his Reply, Burns ignored these eight cases, but instead cited *Bass v. Nooney Co.* 646 S. W. 2d 765 (Mo. 1983), a case that did not involve the tort of intentional infliction of emotional distress, but rather was a simple negligence case where the issue was whether damages for emotional distress could be obtained in this negligence case even though there was no concurrent physical injury. In other words, the one case that plaintiff Burns relies on to support a claim of intentional infliction of emotional distress, was not an action for intentional infliction of emotional distress. Further, Burns discusses at page 9 of his Response that there was "absence of probable cause" and "malice" which may be elements of other causes of actions but are not elements of the tort of intentional infliction of emotional distress.

Burns did not address issues raised in defendants' memorandum of law such as to state a claim, the defendant's conduct must have been intended to *only* cause extreme emotional distress, which is fatal if not pled, and that he failed to plead that his emotional distress was medically diagnosable and medically significant, which failure to plead is fatal. Instead Harris generically claimed in paragraph 136 of the 2nd Amended Complaint that he suffered "discomfort

6

and distress" and "psychological harm and mental anguish including fright, shame, mortification, humiliation and embarrassment" and "indignity and disgrace."

The conclusion remains valid, that Nathan Burns did not state a Missouri common law claim of intentional infliction of emotional distress. .

Reply to response to issue whether 42 U.S. C. 1983 claim has been stated against Belmar

In his response, Nathan Burns did not directly address any of the six 8th Circuit cases, or the one 6th Circuit case or the U.S. Supreme Court case cited by Belmar in defendants' Memorandum of Law. All of these cases remain valid and demonstrate, as explained in Defendant's memorandum, how and why Harris did not state a claim against the Chief of Police when he claimed that during civil unrest in the streets he was with a group that was tear gassed and then in the chaos he was arrested, handcuffed, searched and held in jail for 24 hours Burns did however cite two 8th Circuit cases which are discussed below.

*White v. Holmes*, 21 F. 3d 277 (8th Cir. 1994) involved an altercation at a prison library. The 8th Circuit reversed the denial of a motion for summary judgment and remanded with instructions to dismiss. While so doing the Court noted (at 280) that a supervisor is not vicariously liable for an employee's unconstitutional activity and that there must be tacit authorization of unconstitutional acts or deliberate indifference to the fact that unconstitutional acts are being performed.

*Ripson v. Alles*, 21 F. 3d 805 (8th Cir. 1994) likewise reversed the denial of summary judgment, holding (at 809) that for a supervisor to be liable for the acts of a subordinate, something more must be shown than merely the existence of the supervisor-subordinate relationship (internal citation omitted). In addition, mere negligence in failing to detect and prevent a subordinate's conduct is not enough. The supervisor must know about the conduct,

7

facilitate it, approve it, condone it, or turn a blind eye for fear of what he might see. (Internal citation omitted).

The conclusion remains that Nathan Burns simply did not state a claim under 42 U. S. C. 1983 against St. Louis County police Chief Jon Belmar.

Reply to response to issue of whether Belmar was adequately sued in individual capacity.

In his Motion to Dismiss, as just discussed, a defense was raised that no claim under 42 U. S. C. 1983 was stated against Belmar, after which the motion to dismiss also raised the issue that Harris had not even properly sued Belmar in his individual capacity because Burns and the other plaintiffs only indicated in the *style* of the case that Belmar was being sued in his individual capacity, but Burns had not pled in any paragraph of the 2nd Amended Complaint that Belmar was being sued in his individual capacity. Belmar then cited cases saying that damage actions against government officials are subject to heightened standards of pleading, and a plaintiff must expressly and unambiguously plead that someone is sued in his/her individual capacity. Burns refers to this as "bewildering" but at the same time does not deny that he did not plead in any paragraph of the 2nd Amended Complaint that Belmar was being sued in his individual capacity. Perhaps Belmar, who is being sued for a lot of money, is being overly technical. That won't be denied. But whether or not someone states a claim should be determined by what is pled in the paragraphs of the complaint, not by the names listed in the style of the case. It would be understandable if the Court does not rule on this technicality, but even without the technicality, Burns has not stated a claim against Belmar.

Reply to Response to issue of a claim under 42 U.S. C. 1983 against St. Louis County

In paragraph 16 of the 2nd Amended complaint Burns alleged as a *fact* that Defendant St. Louis County maintained a police department which operates under and administers a set of law

8

enforcement policies, practices, and customs involving the hiring, training and supervision of its officers. Burns further alleged in paragraph 16 as a *fact* that these policies, practices and customs include training in the use of force as well as on-the-street encounters with civilians as well as the basis for an arrest. Then in paragraph 145 Burns *argued* that St. Louis County failed to *properly* train, supervise, control, direct, monitor and discipline officers (emphasis added).

Defendant St. Louis County moved to dismiss saying these allegations do not state a claim under 42 U.S. C. because, as indicated in the numerous cases cited, governmental agencies cannot be held liable on a theory of vicarious liability; that if plaintiff is going on policy or custom, there must exist a continuing widespread persistent pattern of unconstitutional conduct as well as tacit authorization and causation, the custom, policy or deliberate conduct must be the moving force; the policy itself must be unconstitutional; failure to investigate or censor a police officer does not state a claim; inadequacy of training does not state a claim but rather it must amount to deliberate indifference to training that is obviously bad; and also a failure to train allegation is nebulous at best. (See cases cited in support in the Memorandum of Law. None of the cases cited by defendant were disputed by Burns).

The response of Burns at p. 14 was that "the plaintiffs need not provide specific facts in support of their allegations at this point" citing *Schaaf v. Residential Funding Corp.*, 517 F. 3d 544, 549 (8th Cir. 2008). But that is not what *Schaaf* held. In fact *Schaaf* held that the complaint must include sufficient factual information. But the 2nd Amended Complaints does not contain factual allegations, (examples might be that there was no training at all, or that the training given to police officers was different from and obviously less than the training in other cities or counties, or that there was a widespread pattern of falsely arresting persons for failure to disperse that had been going on for years). Again, Burns alleged in paragraph 16 that training had been

9

given in the use of force and on the street encounters and other areas, and then later in paragraph 145 makes the conclusory statement that County and Belmar failed to "*properly* train, supervise, control, direct, monitor and discipline officers, without any facts demonstrating that all of the training, disciplining and so was not done "properly." The law remains that threadbare recitals of a cause of action, supported by mere conclusory statements do not suffice. *Iqbal*, 556 U.S. at 678, *Bell Atlantic v. Twombly*, 550 U. S. 544, 555 (2007). Although courts must accept the factual allegations as true, they are not bound to take as true a legal conclusion couched as a factual allegation. *Twombly*, 550 at 555; *Iqbal*, 556 U. S. 677-78.

The initial conclusion that no claim under 42 U.S. C. 1983 has been stated against St. Louis County remains valid.

**Conclusion**

For all of the reasons stated in the initial Memorandum of Law, and further explained in this Reply, St. Louis County Police Chief Jon Belmar's and St. Louis County's Motion to Dismiss the claims filed against them by Nathan Burns should be sustained.

Respectfully Submitted

PETER J. KRANE
COUNTY COUNSELOR

/s/ Michael E. Hughes
Michael E. Hughes #23360MO
Associate County Counselor
Mhughes2@stlouisco.com
Priscilla F. Gunn #29729MO
Assistant County Counselor
Pgunn@stlouisco.com
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042
(314) 615-3732 (fax)

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served electronically via this Court's Electronic Filing System to all counsel of record.

                                                      _s/s Michael E. Hughes_