# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

TRACEY WHITE, et al.,      )
          )
      Plaintiffs,      )
          )
      v.      )      No. 4:14CV1490 HEA
          )
THOMAS JACKSON, et al.,      )
          )
          )
      Defendants.      )

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on the St. Louis County Defendants' six separate Motions to Dismiss, which were joined by the Ferguson Defendants [Doc. Nos. 42–47]; the Ferguson Defendants' Motion to Dismiss [Doc. No. 50]; and the St. Louis County Defendants' Motion to Sever, which was joined by the Ferguson Defendants [Doc. No. 35]. Plaintiffs oppose these Motions. For the reasons set forth below, the St. Louis County Defendants' Motions to Dismiss will be granted in part and denied in part, the Ferguson Defendants' Motions to Dismiss will be denied, and the Motion to Sever will be denied.

## Facts and Background[1]

Michael Brown, Jr. was shot and killed by a police officer on August 9, 2014, in the City of Ferguson, Missouri. In the hours and days that followed, large crowds gathered in Ferguson to protest Brown's death. The pleadings assert the protests "subsequently led to civil unrest in the streets of Ferguson, Missouri when [officers from the City of Ferguson and St. Louis County Police Departments] took up arms and, in militaristic displays of force and weaponry, engaged U.S. Citizens as if they were war combatants." [Doc. No. 41 at ¶ 23].

---

[1] The recitation of facts is taken from Plaintiffs' Second Amended Complaint and are taken as true for the purposes of this motion. Such recitation in no way relieves any party from the necessary proof thereof in later proceedings.

Plaintiffs are individuals who claim to have suffered violations of various rights between August 11 and August 13, 2014 in Ferguson. Named as Defendants are the City of Ferguson; Thomas Jackson (the City of Ferguson Chief of Police); Justin Cosma (a City of Ferguson police officer) (collectively the "Ferguson Defendants"); St. Louis County; Jon Belmar (the St. Louis County Chief of Police) (collectively the "St. Louis County Defendants"); and John Does (police officers from the City of Ferguson and St. Louis County police departments).

Plaintiffs initiated this action on August 28, 2014, and filed their Second Amended Complaint on December 2, 2014. Plaintiffs bring federal claims under 42 U.S.C. § 1983 for deprivation of their civil rights and for failure to train, supervise, and discipline. Plaintiffs bring state law claims for false arrest, assault and battery, intentional infliction of emotional distress, and negligent supervision.

## Standard

A complaint must set out a "short and plain statement of [a plaintiff's] claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To test the legal sufficiency of a complaint, a defendant may file a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In other words, a plaintiff must plead facts from which the court can draw a "reasonable inference" of liability. *Iqbal*, 556 U.S. at 678. The complaint need not contain "detailed factual allegations" but must contain more than mere "labels and conclusions, and a formulaic recitation of the elements" or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555, 557. An "unadorned, the-defendant-unlawfully-harmed-me accusation" will not suffice. *Iqbal*, 556 U.S. at 678. "While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations," *id.* at 679, which "raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555.

Under *Twombly* and *Iqbal*, "[a] plaintiff . . . must plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S. Ct. 346, 347 (2014). If the plaintiff "inform[s] the [defendant] of the factual basis for [her] complaint, [she] [is] required to do no more to stave off threshold dismissal for want of an adequate statement of [her] claim." *Id.*

In evaluating a motion to dismiss, the court can "choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Turning to any "well-pleaded factual allegations," the court should "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* The court may only consider the initial pleadings. *Brooks v. Midwest Heart Grp.*, 655 F.3d 796, 799 (8th Cir. 2011).

## Discussion

Defendants contend that Plaintiffs failed to state claims for § 1983 violations against Defendants Belmar, Jackson, St. Louis County and the City of Ferguson. As to Plaintiffs' state law claims, Defendants argue that all Plaintiffs failed to adequately allege an exception to sovereign immunity, and failed to state claims for negligent supervision and intentional infliction of emotional distress. Further, Defendants assert that certain Plaintiffs failed to state claims for assault and battery and false arrest. As discussed below, the Court finds that Plaintiffs stated substantively plausible § 1983 claims; that Plaintiffs adequately alleged an exception to sovereign immunity; that Plaintiffs failed to state claims for intentional infliction of emotional distress; that Plaintiffs failed to state claims for negligent supervision; and that Plaintiff Davis failed to state a clam for assault and battery. Further, the Court will deny the Motion to Sever.

## A.    Section 1983 Claims

Defendants argue that Plaintiffs have failed to state § 1983 claims against Defendants Belmar, Jackson, St. Louis County, and Ferguson. The Court disagrees.

### 1.     Belmar and Jackson

Plaintiffs set forth claims under 42 U.S.C. § 1983 against Defendants Belmar and Jackson in their individual and official capacities for their failure to properly train, supervise, control, direct, monitor and discipline officers in their respective departments.[2]

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *Cook v. City of Bella Villa*, 582 F.3d 840, 848–49 (8th Cir. 2009) (citation omitted). It is well established that for municipalities, or supervisory defendants sued in their individual capacities, respondeat superior or vicarious liability will not attach under § 1983. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Livers v. Shenck*, 700 F.3d 340, 355 (8th Cir. 2012). Rather, a supervisory defendant— sued in his individual capacity—may be liable under § 1983 "if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the

---

[2] The St. Louis County Defendants argue that Plaintiffs failed to sue Defendant Belmar in his individual capacity because, although they identified him as being sued in his individual capacity in the caption of the Second Amended Complaint, they did not do so in the actual text of the Second Amended Complaint. "[I]n order to sue a public official in his or her individual capacity, a plaintiff must expressly and unambiguously state so in the pleadings, otherwise, it will be assumed that the defendant is sued only in his or her official capacity." *Alexander v. Hedback*, 718 F.3d 762, 766 n.4 (8th Cir. 2013) (citing *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999)). Given that "section 1983 liability exposes public servants to civil liability and damages, . . . only an express statement that they are being sued in their individual capacity will suffice to give proper notice to defendants." *Johnson*, 172 F.3d at 535 (citing *Nix v. Norman*, 879 F.2d 429, 431 (8th Cir. 1989), and *Egerdahl v. Hibbing Comm. Coll.*, 72 F.3d 615, 619–20 (8th Cir. 1995)). Plaintiffs' indication in the caption of the Second Amended Complaint that Defendants Belmar, Jackson, and Cosma were being sued in their individual and official capacities was clearly sufficient under Eighth Circuit law to give them proper notice. *See Jackson v. Crews*, 873 F.2d 1105, 1107 (8th Cir. 1989) ("We caution future § 1983 litigants . . . that it would be much better for them to clearly indicate both the parties being sued and their capacity *in the caption*.") (emphasis added). Accordingly, the Court rejects the St. Louis County Defendants' argument.

violation." *Brockinton v. City of Sherwood*, 503 F.3d 667, 673 (8th Cir. 2007) (citing *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994)).[3]

The Eighth Circuit recognizes the following elements for supervisory liability under § 1983 for failure to train or supervise: (1) notice of a pattern of unconstitutional acts committed by subordinates; (2) deliberate indifference to or tacit authorization of those acts; (3) failure to take sufficient remedial action; and (4) proximate cause of the plaintiff's injury. *Livers*, 700 F.3d at 355. "In order to show deliberate indifference or tacit authorization, [the plaintiff] must allege and ultimately prove [the supervisory defendant] 'had notice that the training procedures and supervision were inadequate and likely to result in a constitutional violation.'" *Id.* at 355–56 (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1078 (8th Cir. 1996)).

Plaintiffs' factual allegations against Defendants Jackson and Belmar are sufficient to state a substantively plausible claim through which the Court can draw a reasonable inference of liability. Plaintiffs allege that the John Doe police officers were "acting under the direction and control, and pursuant to the practices and customs of Defendants City of Ferguson and St. Louis County *implemented by Defendants Belmar and [Jackson]*," when they "took up arms and, in militaristic displays of force and weaponry, engaged U.S. Citizens as if they were war combatants." [Doc. No. 41 at ¶¶ 23, 43] [emphasis added]. In this regard, Plaintiffs allege various instances of being subjected to "wanton and excessive force," as well as being arrested without probable cause in violation of their Fourth Amendment rights. Plaintiffs' specific factual allegations during this period range from being shot with rubber bullets, to being physically assaulted, to being sprayed with mace. Given the temporal relation of these individual allegations (August 11–13, 2013), as well as the alleged shared objective of the officers—namely,

---

[3] Plaintiff's claims against Defendants Belmar and Jackson in their official capacities constitute claims against St. Louis County and the City of Ferguson, respectively. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Alexander*, 718 F.3d at 766 (citing *Johnson*, 172 F.3d at 535).

responding to protests and civil unrest following Michael Brown's death—Plaintiffs have plausibly alleged that Defendants Belmar and Jackson knew or should have known of the pattern of unconstitutional acts committed by the John Doe officers and were deliberately indifferent to, or tacitly authorized those acts, which resulted in Plaintiffs suffering various injuries. *Livers*, 700 F.3d at 355.

Accordingly, Defendants' Motions to Dismiss the § 1983 claims against Defendants Belmar and Jackson are denied.

### 2.      St. Louis County and the City of Ferguson

Plaintiffs allege that Defendants St. Louis County and the City of Ferguson had customs, policies, and practices in place regarding the training, supervision, control, monitoring and disciplining of their officers that exhibited deliberate indifference to the care and safety of citizens, which led to Plaintiffs' injuries.

"A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 694 (1978). A local government may be liable for failure to train its employees when that failure can be shown to be deliberate indifference to the rights of others. *Yellow Horse v. Pennington County*, 225 F.3d 923, 928 (8th Cir. 2000).

Deliberate indifference in the context of claims for failure to train and supervise is a stringent standard of fault, requiring proof that a governmental entity disregarded a known or obvious consequence of its actions. *Board of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997). When governmental policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the governmental entity may be deemed deliberately indifferent if the

policymakers choose to retain that program. *Brown*, 520 U.S. at 407. The governmental entity's "policy of inaction" in light of notice that its program will cause constitutional violations "is the functional equivalent of a decision by the [governmental entity] itself to violate the Constitution." *Canton*, 489 U.S. at 395. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 131 S.Ct. 1350, 1360 (2011).

"Liability may be established through proof that the alleged misconduct was so pervasive among the non-policy making employees of the [entity] as to constitute a 'custom or usage' with the force of law." *McGautha v. Jackson Cnty., Mo., Collections Dep't*, 36 F.3d 53, 56 (8th Cir. 1994) (quoting *Monell*, 436 U.S. at 690–91). An allegation of an isolated incident of police misconduct generally "cannot, as a matter of law, establish a municipal policy or custom creating liability under § 1983." *Ulrich v. Pope County*, 715 F.3d 1054, 1061 (8th Cir. 2013) (citing *Wedemeier v. City of Ballwin*, 931 F.2d 24, 26 (8th Cir. 1991)). Rather, "[t]o establish a claim for 'custom' liability, [Plaintiffs] must demonstrate: (1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (citing *Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013)).

Based on the reasoning and factual allegations discussed above with regard to Plaintiffs' § 1983 claims against Defendants Belmar and Jackson, the Court finds that Plaintiffs—through their allegations of a pervasive pattern of civil rights violations during the days in question—

have stated a substantively plausible claim through which the Court can draw a reasonable

inference of liability as to St. Louis County and the City of Ferguson. Accordingly, Defendants'

Motions to Dismiss the § 1983 claims against these Defendants are denied.[4]

**B.      State Law Claims**

**1.        Sovereign Immunity**

Defendants argue that Plaintiffs failed to allege an exception to the sovereign

immunity afforded to Defendants St. Louis County and the City of Ferguson under

Missouri law. The Court disagrees.

Under section 537.600 of the Missouri Revised Statutes, public entities enjoy

sovereign immunity from actions sounding in tort. *Gregg v. City of Kansas City*, 272

S.W.3d 353, 358 (Mo. Ct. App. 2008).[5] "Municipalities and other public entities,

however, can waive their sovereign immunity for governmental functions to the extent

that they are covered by liability insurance." *Southers v. City of Farmington*, 263 S.W.3d

603, 609 (Mo. banc 2008). Liability insurance can be purchased pursuant to section

---

[4] The Court will also deny the Ferguson Defendants' request that the Court strike or dismiss the last two words of the sentence "The City of Ferguson is liable directly and vicariously," from paragraph seventeen of the general "Parties" section of the Second Amended Complaint. The Ferguson Defendants correctly note that a local government may not be held vicariously liable under § 1983. *See Canton*, 489 U.S. at 385. Plaintiffs do not object to this point of law, and assert in their Reply that "any alleged vicarious liability on the part of the City of Ferguson . . . was only pled with respect to Plaintiffs' common law claims[.]" [Doc. No. 52 at 8]. The counts in which Plaintiffs allege § 1983 violations assert neither vicarious liability, nor respondeat superior. Accordingly, the Ferguson Defendants' request is moot.

[5] However, public entities do not enjoy sovereign immunity against tort claims "where a plaintiff's injury arises from a public employee's negligent operation of a motor vehicle in the course of his employment (section 537.600.1(1))" or "where the injury is caused by the dangerous condition of the [public entity's] property (section 537.600.1(2))." *Bennartz v. City of Columbia*, 300 S.W.3d 251, 259 (Mo. Ct. App. 2009) (citing *State ex rel. Bd. of Trustees of the City of North Kansas City Mem'l Hosp.*, 843 S.W.2d 353, 358 (Mo. banc 1993)). Further, "Missouri municipalities are not provided immunity for propriety functions—those performed for the benefit or profit of the municipality as a corporate entity—but are immune for governmental functions—those performed for the common good." *Southers*, 263 S.W.3d at 609 (citing *Jungerman v. City of Raytown*, 925 S.W.2d 202, 204 (Mo. banc 1996)). The proprietary/governmental distinction does not apply to the sovereign immunity of the State or its political subdivisions, which enjoy sovereign immunity even if acting in a proprietary function. *Wyman v. Mo. Dep't of Mental Health*, 376 S.W.3d 16, 20 n.4 (Mo. Ct. App. 2012) (citing *Southers*, 263 S.W.3d at 609); *Gregg*, 272 S.W.3d at 362.

537.610,[6] which pertains to political subdivisions of the state, or section 71.185,[7] which pertains to municipalities. *Id.* "The waiver of sovereign immunity is only to the extent of the insurance coverage." *Southers*, 263 S.W.3d at 609 n.6 (citing sections 71.185.2 and 537.610.1). However, "'[a] public entity does not waive its sovereign immunity by maintaining an insurance policy where that policy includes a provision stating that the policy is not meant to constitute a waiver of sovereign immunity.'" *Brooks v. City of Sugar Creek*, 340 S.W.3d 201, 208 (Mo. App. Ct. 2011) (quoting *Langley v. Curators of Univ. of Mo.*, 73 S.W.3d 808, 811 (Mo. App. W.D. 2002) (citing *State ex rel. Bd. of Trustees v. Russell*, 843 S.W.2d 353, 360 (Mo. banc 1992))

In Plaintiffs' Second Amended Complaint, it is alleged that "Defendants have waived sovereign immunity by establishing some type of insurance coverage for the claim[s] at issue pursuant to Mo. Rev. Stat. § 71.185," and that "the City of Ferguson, as a Charter Member of the St. Louis Area Insurance Trust, has purchased insurance policies that would address, at least to some extent, the claims alleged herein." [Doc. No. 41 at ¶ 19]. The St. Louis County Defendants contend these allegations are insufficient to allege that St. Louis County has waived sovereign immunity because only a municipality can waive its sovereign immunity pursuant to section 71.185.

---

[6] Section 537.610 states, in pertinent part, that any political subdivision of Missouri "may purchase liability insurance for tort claims, made against the state or the political subdivision . . . . Sovereign immunity for the state of Missouri and its political subdivisions is waived only to the maximum amount of and only for the purposes covered by such policy of insurance purchased pursuant to the provisions of this section and in such amount and for such purposes provided in any self-insurance plan duly adopted by the governing body of any political subdivision of the state."

[7] Section 71.185 states, in pertinent part: "Any municipality engaged in the exercise of governmental functions may carry liability insurance and pay the premiums therefor to insure such municipality and their employees against claims or causes of action for property damage or personal injuries, including death, caused while in the exercise of the governmental functions, and shall be liable as in other cases of torts for property damage and personal injuries including death suffered by third persons while the municipality is engaged in the exercise of the governmental functions to the extent of the insurance so carried."

While there is authority that appears to suggest that a municipality can waive sovereign immunity by purchasing liability insurance under *either* section 71.185 *or* 537.610,[8] it is clear from the plain language of section 71.185, and Missouri case law, that only a municipality—and not a political subdivision of the state, such as St. Louis County—can waive sovereign immunity by purchasing liability insurance under section 71.185. *Gregg*, 272 S.W.3d at 359 (citing *Brennan By and Through Brennan v. Curators of the Univ. of Mo.*, 942 S.W.2d 432, 436 (Mo. Ct. App. 1997)); *Spotts v. Kansas City*, 728 S.W.2d 242, 246–47 (Mo. Ct. App. 1987); *see also St. Louis County v. Watson*, 311 S.W.3d 886, 888 (Mo. Ct. App. 2010). However, for present purposes, it is a distinction without a difference. As one Missouri court noted, in explaining why it could rely on cases analyzing an alleged section 71.185 waiver for its analysis of an alleged section 537.610 waiver:

> Despite differences in language and the fact that § 71.185 applies to municipalities and § 537.610 applies to political subdivisions of the State, the purchase of liability insurance may function as a waiver of sovereign immunity under either statute. Therefore, we find §§ 71.185 and 537.610 to be sufficiently analogous that we may rely on the above-cited cases referring to § 71.185 in making our determination here.

*Brennan*, 942 S.W.2d at 436 (citing *Russell*, 843 S.W.2d at 360); *see also Gregg*, 272 S.W.3d at 359 (citing *Brennan*, 942 S.W.2d at 436).

Plaintiffs allege that Defendant St. Louis County waived its sovereign immunity to their tort claims by purchasing liability insurance to cover those claims. Accepting this allegation as true—as the Court must, *Iqbal*, 556 U.S. at 679—the Court finds that it is inconsequential at this stage of proceedings whether Plaintiffs alleged that St. Louis

---

[8] *See, e.g., Kunzie v. City of Olivette*, 184 S.W.3d 570, 573–74 (Mo. banc 2006); *Topps v. City of Country Club Hills*, 272 S.W.3d 409, 414–15, 17–18 (Mo. App. 2008).

- 10 -

County purchased the insurance pursuant to section 537.610 or 71.185.[9] Plaintiffs'

allegation that St. Louis County waived its sovereign immunity to Plaintiffs' claims by

virtue of the purchase of liability insurance is sufficient to allege waiver.

      Both the St. Louis County and Ferguson Defendants further argue that Plaintiffs

failed to properly allege an exception to St. Louis County and the City of Ferguson's

respective sovereign immunity because Plaintiffs did not allege that the liability

insurance each entity purchased did *not* include an endorsement exempting coverage for

liability barred by sovereign immunity. The Court finds that the pleading rules do not

require such an allegation to sufficiently claim an exception to sovereign immunity.

      As noted above, "[a] public entity does not waive its sovereign immunity by

maintaining an insurance policy where that policy includes a provision stating that the

policy is not meant to constitute a waiver of sovereign immunity." *Brooks*, 340 S.W.3d at

208 (internal citations and quotation marks omitted). Although Plaintiffs will "bear[] the

burden of demonstrating the existence of the insurance and that it covered [their]

particular claim[s]," and Plaintiffs "must plead with specificity facts demonstrating

[their] claims fall[] within an exception to sovereign immunity" because "finding a

[governmental entity] liable for torts is the exception to the general rule of sovereign

---

[9] In a footnote in *Kunzie*, the Missouri Supreme Court noted a then-existing distinction between the sovereign immunity waiver associated with liability insurance purchased under section 537.610 and the corresponding waiver associated with section 71.185. *Kunzie*, 184 S.W.3d at 574 n.4. Namely, the discretionary immunity doctrine (also known as the official immunity doctrine) and the public duty doctrine *were not waived* as to municipalities that purchased liability insurance under section 71.185, whereas these doctrines of immunity *were waived* as to political subdivisions that purchased liability insurance under 537.610. *Id.* (contrasting the "absolute and complete waiver of all immunities" found in section 537.610 with section 71.185's statement that a municipality engaged in governmental functions that purchases liability insurance "shall be liable as in other cases of torts."). However, in subsequent cases, the Missouri Supreme Court held that the official/discretionary immunity doctrine and the public duty doctrine are "personal immunities" that shield government *employees*, but not government *employers* from liability. *Davis v. Lambert-St. Louis Int'l Airport*, 193 S.W.3d 760, 764–66 (Mo. Banc 2006) (official/discretionary immunity doctrine); *Southers*, 263 S.W.3d at 611–14 (public duty doctrine). Thus, separate and apart from the issue of whether St. Louis County could purchase liability insurance under section 71.185, *Kunzie's* observation in footnote four regarding the differences between the waives in sections 71.185 and 536.610 was obviated by the Missouri Supreme Court's decisions in *Davis* and *Southers*, and at this stage of the proceedings it is irrelevant under which of the two statutes Plaintiffs allege that either St. Louis County or the City of Ferguson purchased liability insurance and thereby waived sovereign immunity.

immunity," *Gregg*, 272 S.W.3d at 359–60, the law does not require Plaintiffs to plead the *absence* of a provision in the insurance policy stating that the policy does not waive sovereign immunity.

Indeed, Defendants rely only upon inapposite cases to argue that such a pleading requirements exists. *See Hankins v. City of Hazelwood*, 2014 WL 996789, at *1 (E.D. Mo. Mar. 13, 2014) (dismissing Missouri tort claims against the defendant municipality where the "plaintiff plead[ed] *no facts* showing that an exception to sovereign immunity applie[d].") (emphasis added); *Cunningham v. Hinrichs*, 2013 WL 6068881, at *10 (E.D. Mo. Nov. 18, 2013) (granting *summary judgment* in favor of the defendant municipality where the municipality *submitted its insurance policy* as an exhibit to its motion, which contained a disclaimer specifying that the procurement of insurance did not constitute a waiver of sovereign immunity); *Hummel v. St. Charles City R-3 Sch. Dist.*, 114 S.W.3d 282, 284–85 (Mo. Ct. App. 2003) (affirming the dismissal of an action where the plaintiff "attempted to meet her burden of proving an exception to sovereign immunity by relying on an alleged waiver thereof in the workers' compensation statutes, and not on [an] insurance waiver," and argued on appeal that she should be permitted to amend her pleadings to allege waiver via insurance).

There is, however, case law suggesting that a plaintiff's allegation that a defendant waived its sovereign immunity by the purchase of insurance is sufficient to state a claim for waiver, notwithstanding the absence of an allegation that the insurance policy did *not* include an endorsement exempting coverage for liability barred by sovereign immunity. For example, in *Gregg*, the plaintiffs alleged that the municipal defendant carried liability insurance that insured against the tort claims the plaintiffs brought. 272 S.W.3d at 356–57. The defendant municipality "filed a motion to dismiss

alleging that it was protected by sovereign immunity and that no insurance coverage

existed that waived sovereign immunity," attached copies of two insurance policies that it

purported to be the only policies it maintained that were potentially pertinent to the case,

and asserted that the policies "clearly did not provide coverage relevant to Plaintiffs'

claims." *Id.* at 357. The trial court granted the motion to dismiss. The Missouri Court of

Appeals reversed and remanded, noting that it "fail[ed] to understand why the City

proceeded on a motion to dismiss, rather than a summary judgment," and that, under the

motion to dismiss standard, "the allegations of [the plaintiffs'] petition [namely, that the

defendant municipality waived its sovereign immunity through the purchase of liability

insurance,] must be taken as true for present purposes." *Id.* at 360.

Similarly in *Kunzie v. City of Olivette*, the Missouri Supreme Court reversed the

dismissal of a tort action against a municipality, and remanded, explaining:

> Kunzie alleges that the city maintains liability insurance "to handle the
> consequences of employment related actions brought against them." By
> doing so, Kunzie has sufficiently alleged facts that, if proved, would bring
> his tort claims within the purview of the statute. Because the trial court
> dismissed Kunzie's petition prior to the commencement of discovery,
> Kunzie was not able to prove the existence and content of the insurance
> policy.

184 S.W.3d 570, 574 (Mo. banc 2006). The Court will follow *Gregg* and *Kunzie* and hold

that an allegation that a public entity waived its sovereign immunity through the purchase

of liability insurance is sufficient to state a claim for waiver, despite the absence of an

allegation that the insurance policy did *not* include an endorsement exempting coverage

for liability barred by sovereign immunity.

### 2. Personal Immunities

Defendants argue that several personal immunities enjoyed by Defendants Belmar

and Jackson—namely, the public duty doctrine, the official immunity doctrine, and a

prohibition on respondeat superior for police chiefs—should shield them from liability

for any state law claims brought against them. Plaintiffs rebut that they have not alleged

any state law claims against Defendant Belmar or Jackson. Accordingly, because

Plaintiffs have not alleged any state law claims against Defendants Belmar and Jackson,

Defendants' Motions to Dismiss are denied as moot as to this point.[10]

### 3.    Intentional Infliction of Emotional Distress

Plaintiffs bring claims for intentional infliction of emotional distress ("IIED")

against St. Louis County, the City of Ferguson, Defendant Cosma, and the John Doe

police officers. "To recover for intentional infliction of emotional distress, [a plaintiff]

must show (1) the defendant's conduct was extreme and outrageous; (2) the defendant

acted intentionally or recklessly; and (3) the defendant's conduct caused extreme

emotional distress resulting in bodily harm." *Cent. Mo. Elec. Co-op. v. Balke*, 119

S.W.3d 627, 636 (Mo. Ct. App. 2003) (citing *Thomas v. Special Olympics Missouri, Inc.*,

31 S.W.3d 442, 446 (Mo. Ct. App. 2000)); *see also St. Anthony's Medical Center v.*

*H.S.H.*, 974 S.W.2d 606, 611 (Mo. Ct. App. 1998). "The conduct must have been so

outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Gibson v. Brewer*, 952 S.W.2d 239, 249 (Mo. banc 1997) (internal

quotations omitted). The alleged emotional distress must be "medically diagnosable and

medically significant." *Hendrix v. Wainwright Indus.*, 755 S.W.2d 411, 412 (Mo. Ct.

App. 1998) (internal quotation omitted); *see also Collins v. Burg*, 169 F.3d 563, 565 (8th

Cir. 1999).

---

[10] The City of Ferguson Defendants additionally request that the Court dismiss or strike—pursuant to the public duty doctrine—any state law claims brought by unnamed "U.S. Citizens," and dismiss any federal claims brought by "U.S. Citizens" as well. Given that Plaintiffs have not alleged any claims brought by any unnamed "U.S. Citizens," but rather appear to use the term as a general description of the individuals in Ferguson during the events in question, the Court will also deny this request.

Further, "where one's conduct amounts to the commission of a traditional tort and was not intended *only* to cause extreme emotional distress to the victim, the tort of intentional infliction of emotional distress will not lie and recovery must be had under the appropriate traditional tort action." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 322 (Mo. Ct. App. 2010) (emphasis added) (citing *K.G. v. R.T.R.*, 918 S.W.2d 795, 799 (Mo. 1996) (en banc)). "The rationale behind this rule is that the tort of intentional infliction of emotional distress . . . . was intended to supplement existing forms of recovery, not swallow them." *K.G.*, 918 S.W.2d at 799 (citation omitted). Accordingly, [w]hile recovery for emotional distress caused by battery may be allowable as an element of damages in a battery action, there is no independent action for intentional infliction of emotional distress where the existence of the claim is dependent upon a battery." *Id.*

Here, all of Plaintiffs' claims for IIED are predicated on their claims for assault and battery, and/or false arrest. Thus, their claims for IIED must be dismissed, lest they "swallow" Plaintiffs' predicate tort claims. *See id.* at 799–800. Further, Plaintiffs have not adequately claimed that any of their alleged emotional distress was "medically diagnosable and medically significant." *Hendrix*, 755 S.W.2d at 412.

Accordingly, the St. Louis County Defendants' Motions to Dismiss are granted as to Plaintiffs' claims for IIED.

### 4.    Negligent Supervision

Plaintiffs bring claims for negligent supervision against Ferguson and St. Louis County. Missouri law incorporates the Restatement's definition for negligent supervision:

> A master is under the duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
>
> (a) the servant

> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
>
> (ii) is using a chattel of the master, and
>
> (b) the master
>
> (i) knows or has reason to know that he has the ability to control his servant, and
>
> (ii) knows or should know of the necessity and opportunity for exercising such control.

*Dibrill v. Normandy Assocs.*, 383 S.W.3d 77, 87 (Mo. Ct. App. 2012) (emphasis added) (quoting *Gibson*, 952 S.W.2d at 247 (quoting RESTATEMENT (SECOND) OF TORTS § 317)). Missouri courts have emphasized that a cause of action for negligent supervision "'require[s] evidence that would cause the employer to foresee that the employee would create an unreasonable risk of harm *outside the scope of his employment*.'" *Id.* (emphasis added) (quoting *Reed v. Kelly*, 37 S.W.3d 274, 278 (Mo. Ct. App. 2000)); *see also Truck Ins. Exch. v. Prairie Framing, LLC*, 162 S.W.3d 64, 82 (Mo. Ct. App. 2005).

There is no indication here that the Defendant police officers were acting outside the scope of their employment. By contrast, in *St. John Bank & Trust Co. v. St. John*, the only Missouri case Plaintiffs cite—and that the Court could locate  through research—in which negligent supervision was applied against a local government for the actions of its police force, an officer set a movie theatre on fire. 679 S.W.2d 399 (Mo. Ct. App. 1981). Accordingly, *St. John Bank* is distinguishable in that the police officer's conduct was clearly outside the scope of his employment.

The Court finds that Plaintiffs have failed to state claims for negligent supervision and will grant the St. Louis County Defendants' Motions to Dismiss as to this claim.

**5.    Plaintiffs Kerry White, Kai Bowers, Sandy Bowers, William Davis, and Tracey White's Assault and Battery Claims**

The St. Louis County Defendants argue that Plaintiffs Kerry White, Kai Bowers, Sandy Bowers, William Davis, and Tracey White failed to state claims for assault and battery because they have only alleged that they were handcuffed without just cause. Under Missouri law, a police officer effectuating an arrest may be found liable for assault and battery only when he uses more force than is "reasonably necessary." *Neal v. Helbling*, 726 S.W.2d 483, 487 (Mo. Ct. App. 1987).

Here, Plaintiffs Kai Bowers, Sandy Bowers, and Tracey White allege that they were "thrown to the ground," before being handcuffed, and Plaintiff Kerry White alleges that he was "taken to the ground" before being handcuffed. [Doc. No. 41 at ¶¶ 29, 81, 151]. All four of these Plaintiffs allege that they suffered bodily injuries during the arrest. [*Id.* at ¶¶ 39, 81, 158]. At this stage of the proceedings, these allegations are enough to sufficiently claim that the Defendant police officers used more force than was reasonably necessary in arresting Plaintiffs Kerry White, Kai Bowers, Sandy Bowers, and Tracey White. Accordingly, the St. Louis County Defendants' Motion to Dismiss is denied as to this point.

However, Plaintiffs have not alleged any unreasonable force with regard to Plaintiff Davis, but rather have only alleged that he was "accosted" by Defendant police officers Accordingly, the Court will grant the St. Louis County Defendants' Motion as to Plaintiff Davis's assault and battery claim.

### 6.    Plaintiffs Tracey White and William Davis's False Arrest Claims

The St. Louis County Defendants argue that Plaintiffs Tracey White and William Davis failed to state claims for false arrest because, based on the allegations in their complaint, they violated section 574.060 of the Missouri Revised Statutes by refusing to disperse from the scene of a riot. The court disagrees.

"The essence of the cause of action of false arrest, or false imprisonment, 'is the confinement, without legal justification, by the wrongdoer of the person wronged.'" *Rustici v. Weidemeyer*, 673 S.W.2d 762, 767 (Mo. banc 1984) (citing *Warrem v. Parrish*, 436 S.W.2d 670, 672 (Mo. 1969), and *Patrich v. Menorah Med. Ctr.*, 636 S.W.2d 134, 138 (Mo. App. Ct. 1982)). Under section 574.060, "[a] person commits the crime of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot."

Plaintiff White claims that she and her minor son, Plaintiff Davis, purchased food in McDonalds on W. Florissant in Ferguson on August 13, 2014, following a church-sponsored Peace and Love rally. The two waited for Plaintiff White's husband to pick them up, and Plaintiff White conversed with other patrons. While Plaintiff Davis was in the restroom and Plaintiff White was approaching the counter to purchase a Sunday, several John Doe Defendant police officers and Defendant Cosma entered "in what appeared to be army uniforms, carrying rifles and sticks and wearing helmets, approached the door and ordered Plaintiff White to 'get out.'" Plaintiff White tried to tell them that she was waiting for her son in the restroom. When Plaintiff Davis came out, they "accosted" him. When Plaintiff White expressed her concerns, she was told to shut up, and then arrested for not shutting up. Plaintiff White was thrown to the ground in handcuffs and, when Plaintiff Davis came over on her command to retrieve his iPad from her hand, he was arrested as well.

The St. Louis County Defendants contend that, because Plaintiffs alleged that there was civil unrest in the streets of Ferguson, they effectively alleged that Plaintiffs White and Davis refused to disperse from the scene of a riot, and thus violated section 574.060. However, Plaintiffs have not done so. Plaintiffs White and Davis's allegations, viewed in the light most

favorable to them, are sufficient to state a claim for false arrest. Accordingly, the Court will deny

the St. Louis County Defendants'' Motions to Dismiss as to this point.

## C.     Motion to Sever

Rule 20 of the Federal Rules of Civil Procedure governs permissive joinder of

parties. Rule 20(a)(1) "allows multiple plaintiffs to join in a single action if (i) they assert

claims 'with respect to or arising out of the same transaction, occurrence, or series of

transactions or occurrences;' and (ii) 'any question of law or fact common to all plaintiffs

will arise in the action.'" *In re Prempro Products Liab. Litig.*, 591 F.3d 613, 622 (8th Cir.

2010). The Eighth Circuit recognizes "a very broad definition for the term 'transaction.'"

*Id.*

> "Transaction" is a word of flexible meaning. It may comprehend a series
> of many occurrences, depending not so much upon the immediateness of
> their connection as upon their logical relationship.
>
> Accordingly, all "logically related" events entitling a person to institute a
> legal action against another generally are regarded as comprising a
> transaction or occurrence. The analogous interpretation of the terms as
> used in Rule 20 would permit all reasonably related claims for relief by or
> against different parties to be tried in a single proceeding. Absolute
> identity of all events is unnecessary.

*Mosley v. General Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974) (citations omitted).

This assessment is made on a "case by case" basis. *Id.* Here, the Court finds that

the allegations—all of which are related both temporally and in regard to the same

general events—are close enough in logical relation to comprise the same transaction.

Rule 20 is in place "to promote trial convenience and expedite the final

determination of disputes, thereby preventing multiple lawsuits." *Id.* at 1332. Further,

"[s]ingle trials generally tend to lessen the delay, expense and inconvenience to all

concerned." *Id.*

Any inclination the Court may have had to grant Defendants' Motion to Sever at this time was extinguished by the St. Louis County Defendants' filing of six different Motions to Dismiss. The Motions in question are nearly identical, save for minor variances. Most of the Motions repeat the same arguments, word for word, with the minor variances randomly interspersed throughout. This method of filing required the Court to study the Motions in search for slight changes and differing arguments. Further, the six separate Motions necessitated six separate Responses, and six separate replies, all of which were, again, substantially identical to one another. The result was a total of approximately 240 pages of briefing for arguments that, when distilled so as to not be repetitive, would total approximately 45 pages of briefing.

While Defendants are free to file future motions in whatever form and manner they deem appropriate (so long as they comply with the local and federal rules), the Court will not encourage duplicative, inefficient, and resource-consuming filings of this magnitude by granting Defendants' Motion to Sever. The Court will deny the Motion to Sever, without prejudice, at this time, but will contemplate considering the matter anew later in the proceedings. *Id.* ("Rule 20(b) and Rule 42(b) vest in the district court the discretion to order separate trials or make such other orders as will prevent delay or prejudice.").

### Conclusion

Based on the foregoing, the St. Louis County Defendants' Motions to Dismiss are granted in part and denied in part. The Court will dismiss Plaintiffs' claims for intentional infliction of emotional distress and negligent supervision, and will dismiss Plaintiff William Davis's claim for assault and battery. The Ferguson Defendants' Motion to Dismiss is denied. Further, the St. Louis County Defendants' Motion to Sever is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the St. Louis County Defendants' Motions to Dismiss the Second Amended Complaint [Doc. Nos. 42, 43, 44, 45, 46, 47] are **GRANTED IN PART and DENIED IN PART**.

**IT IS FURTHER ORDERED** that the Ferguson Defendants' Motion to Dismiss the Second Amended Complaint [Doc. No. 50] is **DENIED**.

**IT IS FURTHER ORDERED** that the St. Louis County Defendants' Motion to Sever [Doc. No. 35] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for intentional infliction of emotional distress are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' claims for negligent supervision are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff William Davis's claim for assault and battery is **DISMISSED**.

**IT IS FURTHER ORDERED** that the St. Louis County Defendants' Motions to Dismiss the Complaint [Doc. Nos. 23, 25, 27, 29, 31, 33] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Ferguson Defendants' Motion to Dismiss the Complaint [Doc. No. 13] is **DENIED AS MOOT**.

Dated this 16th day of March, 2015.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE