UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY WHITE ET AL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No.: 4:14CV01490 HEA |
| | ) | |
| THOMAS JACKSON, ET AL, | ) | |
| | ) | |
| Defendants. | ) | |

# *DEFENDANTS CITY OF FERGUSON, THOMAS JACKSON, JUSTIN COSMA, MATT DELIA, BRANDON MCKINNON, AND RYAN DEVOUTON'S MEMORANDUM IN SUPPORT OF THEIR JOINT MOTION FOR SUMMARY JUDGMENT*

COME NOW Defendants, the City of Ferguson, former Ferguson Chief of Police Thomas Jackson, former Ferguson Police Officer Justin Cosma, and Maryland Heights Lieutenant Matt Delia and Officers Brandon McKinnon and David "Ryan" DeVouton, and for their Memorandum in Support of their Joint Motion for Summary Judgment, state:

## I.    INTRODUCTION

Pursuant to the allegations and outline summarized in their Motion for Summary Judgment,[1] the undersigned Defendants will set out why each Defendant is entitled to summary

---

[1] In Plaintiff DeWayne A. Matthews, Jr.'s Count, he alleges the unlawful actions of Defendant "Jackson." To the extent this refers to Thomas Jackson as opposed to St. Louis County Police Officer Derik Jackson, Plaintiffs have set forth no evidence former Ferguson Police Chief Thomas Jackson was involved in the alleged occurrence. *See* Section III.C., *infra*.

Further, Plaintiffs Damon Coleman and Theophilus Green allege the "Maryland Heights Police Department" falsely arrested them. The Maryland Heights Police Department is not and was never named as a Defendant or served with a summons. Regardless, any suit against the "Maryland Heights Police Department" is improper and dismissible. *See DeBellis v. Kulp*, 166 F.Supp.2d 255, 264 (E.D. Pa. 2001) ("In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity."); *Lynch v. City of Philadelphia*, 2001 WL 752641, at *1

judgment on all claims asserted by Plaintiffs against them in the following order: A) Maryland Heights Police Lt. Matt Delia, and Maryland Heights Police Officers Brandon McKinnon and Ryan DeVouton; B) former Ferguson Police Officer Justin Cosma; C) former Ferguson Chief of Police Thomas Jackson; D) the City of Ferguson.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In *Celotex*, the Court noted, "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute of a material fact." *City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op.*, 838 F.2d 268, 273 (8th Cir. 1988). A movant is not required to establish a right to summary judgment as a matter of law by "unassailable proof." *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Co. (ITT)*, 854 S.W.2d 371, 378 (Mo. banc 1993).

---

(E.D. Pa. June 29, 2001) (noting that "the Plaintiff's claim against the City of Philadelphia Police Department cannot proceed as it is not a separate legal entity that can be sued separately from the City of Philadelphia which is also a named Defendant") (citing *Atkinson v. City of Philadelphia*, Civ.A.No. 99-1541, 2000 WL 295106, at *2 (E.D.Pa. March 20, 2000)); *Dooley v. City of Philadelphia*, 153 F.Supp.2d 628, 637 n. 1 (E.D.Pa.2001) (noting that the Philadelphia Police Department "is not a separate legal entity that can be sued apart from the City of Philadelphia") (citing *Atkinson*, 2000 WL 295106, at *2); *Regalbuto v. City of Philadelphia*, 937 F.Supp. 374, 377 (E.D.Pa.1995) (stating that the City of Philadelphia police and fire departments are not separate legal entities which may be sued) (citing 53 Pa. Stat. Ann. § 16257 (West 1957)); *Baldi v. Philadelphia*, 609 F.Supp. 162, 168 (E.D.Pa.1985); *Philadelphia v. Glim*, 149 Pa.Cmwlth. 491, 613 A.2d 613, 616 (Pa.Commw.Ct.1992)); *Urban v. City of Philadelphia*, 06-2391, 2007 WL 906181 (E.D. Pa. 2007); *Cutlip v. City of Toledo*, 488 Fed.Appx. 107, 108 (6th Cir. 2012).

Once the moving party demonstrates that the record does not disclose a genuine issue of material fact, the burden shifts to the non-moving party to go beyond his pleadings and present, by affidavit or by "deposition, answers to interrogatories, and admissions on file," <u>specific facts</u> that show there is a genuine issue to be resolved at trial. Fed. R. Civ. R. 56(e) (emphasis added); *Celotex*, 477 U.S. at 323; *City of Mt. Pleasant*, 838 F.2d at 273. The non-movant "may not rely on mere denials or allegations," but must designate specific facts showing that there is a genuine issue of fact for trial. *Hernandez v. Jarman*, 340 F.3d 617, 622 (8th Cir. 2003).

All matters set forth in a movant's statement of facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party. E.D. Mo. L.R. 4.01(E). It is not sufficient merely to state that a fact is disputed and then cite to the record. See, *e.g., Crossley v. Georgia-Pacific Corp.*, 355 F.3d 1112, 1114 (8th Cir. 2004) ("Judges are not like pigs, hunting for truffles buried in briefs.").

Nor does "the mere existence of *some* alleged factual dispute between the parties . . . defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). Evidence of a disputed factual issue that is merely colorable or not significantly probative will not prevent entry of summary judgment. *Id.* at 248. "[I]t is not the 'truth' of the facts upon which the court focuses, but whether those facts are disputed. Where they are not [disputed], the facts are admitted for purposes of analyzing a summary judgment motion." Fed. R. Civ. P. 56(e); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *ITT*, 854 S.W.2d at 382.

A properly supported Motion for Summary Judgment will not be defeated by self-serving testimony. *Bacon v. Hennepin Cty. Med. Ctr.*, 550 F.3d 711, 716 (8th Cir. 2008) (citation omitted); *Gander Mountain Co. v. Cabela's Inc.*, 540 F.3d 827, 831 (8th Cir. 2008) (citation

3

omitted). A plaintiff "must substantiate allegations with sufficient probative evidence that would permit a finding in his favor." *Bacon*, 550 F.3d at 716; *Gander*, 540 F.3d at 831. The plaintiff's opinions, coupled with unsubstantiated allegations, are not sufficient to raise a genuine issue of fact. *Assam Drug Co. v. Miller Brewing Co.*, 798 F.2d 311, 319 (8th Cir. 1986).

## III. ARGUMENT

**A. The Maryland Heights Officer Defendants are entitled to summary judgment on all remaining counts against them because Plaintiffs Damon Coleman and Theophilus Green cannot meet their burden of proof regarding each and every element of their claim and because these officers are entitled to qualified immunity from liability to Plaintiffs Coleman and Green.**

Plaintiffs Damon Coleman and Theophilus Green have alleged that City of Maryland Heights Officers Matt Delia, Brandon McKinnon, and Ryan DeVouton (the "Maryland Heights Officers"), in both their individual and official capacities: 1) falsely arrested them, 2) assaulted and battered them, and 3) engaged in conduct violating their Fourth Amendment rights (excessive force and unlawful arrest). The undersigned will set out why each of the Maryland Heights Officers are entitled to summary judgment on all claims against them in this order.

*1. The Maryland Heights Officers are entitled to summary judgment regarding Plaintiffs Coleman and Green's claim of false arrest due to official immunity.*

Under Missouri law, false imprisonment, also called false arrest, is the confinement, without legal justification, by the wrongdoer of the person wronged. *Highfill v. Hale*, 186 S.W.3d 277, 280 (Mo. banc 2006) (internal quotation omitted). "There is no dispute here as to the Missouri law on probable cause. In a criminal action, the test for probable cause is 'whether the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed a crime.'" *Williams v. Ryder/P.I.E. Nationwide, Ins.*, 786 F.2d 854, 857 (8th Cir. 1986) (citing *Dodson v. MFA Insurance Co.*, 509 S.W.2d 461, 467 (Mo. 1974)); *but see Haswell v. Liberty Mut. Ins. Co.*, 557 S.W.2d 628, 633 (Mo. banc 1977) ("With the necessary changes in

4

points of detail, the same principles determine questions of probable cause in civil proceedings as in criminal. At the same local citation it is said: Probable cause consists of a belief in the charge or facts alleged, based on sufficient circumstances to reasonably induce such belief in a person of ordinary prudence in the same situation.") (internal quotations and citation omitted).[2] An officer may rely upon information provided by other officers in determining whether an arrest should be made. *See, e.g., Matter of Search of Bldg. T & Secured Parking Area N. of Emerson Blvd.*, 684 F. Supp. 1491, 1499 (E.D. Mo. 1988) (citing *Whiteley v. Warden*, 401 U.S. 560 (1971)); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006).

> As this Court has previously held:
>
> Under section 574.060, "[a] person commits the crime of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot."

Doc. No. 70, p. 18. Further, at the time of the subject incident, a person commits the crime of assault of a law enforcement officer in the third degree if he or she "purposely places a law enforcement officer. . . in apprehension of immediate physical injury" or "knowingly causes or attempts to cause physical contact with a law enforcement officer[.]" R.S.Mo. § 565.082.1(1).

The doctrine of official immunity protects state employees from liability in their individual capacities when liability arises from the discretionary acts or omissions of a state employee. *Kanagawa v. State*, 685 S.W.2d 832, 835 (Mo. banc 1985); *Betts-Lucas v. Hartmann*,

---

[2] The Missouri Court of Appeals for the Eastern District has recently articulated a perceived split in Missouri Supreme Court precedent in the definitions of probable cause regarding malicious prosecution cases. *Copeland v. Wicks*, 2015 WL 343644, at *6 (Mo. App. E.D. Jan. 27, 2015) transferred to Mo. S.Ct., 468 S.W.3d 886 (Mo. banc 2015), reh'g denied (Sept. 22, 2015). However, Eighth Circuit jurisprudence has followed the Missouri string of cases stating probable cause exists where the facts and circumstances would warrant a belief in an ordinarily cautious person that another had committed a crime, not just for the crime charged. *Zike v. Advance America, Cash Advance Centers of Missouri, Inc.*, 646 F.3d 504, 509–10 (8th Cir. 2011). The *Copeland* matter is not controlling for Missouri courts, as it was transferred to the Missouri Supreme Court where the described issue was not specifically addressed. *See Copeland v. Wicks*, 468 S.W. 3d 886 (Mo. banc 2015).

87 S.W.3d 310, 327 (Mo. App. W.D. 2002). Police officers are not liable for negligent acts that are related to discretionary functions. *Miller v. Smith*, 921 S.W.2d 39, 45 (Mo. App. W.D. 1996). "[T]he decision to arrest a suspect constitute[s] discretionary acts for purposes of Missouri's official-immunity doctrine." *Jiang v. Porter*, 2015 WL 9461490, at *4 (E.D. Mo. Dec. 28, 2015) (citing *Reasonover v. St. Louis Cnty., Mo.*, 447 F.3d 569, 585 (8th Cir. 2006)).

The Maryland Heights Officer Defendants anticipate Plaintiffs Coleman and Green will argue that official immunity should not apply as discretionary acts done in bad faith or with malice remove the protection of official immunity. *See State ex rel. Twiehaus v. Adolf*, 706 S.W.2d 443, 446 (Mo. banc 1986). Summary judgment may be denied in this context only where there are "specific facts" that show that the officer acted in "bad faith." *See Davis v. Bd. of Educ.*, 963 S.W.2d 679, 690 (Mo. Ct. App. E.D. 1998) (affirming summary judgment on official immunity grounds where there were insufficient facts to show bad faith or malice.) "The relevant definition of bad faith or malice in this context ordinarily contains a requirement of actual intent to cause injury." *Twiehaus*, 706 S.W.2d at 447 (quoting in parenthetical, "'[m]alice' in the context of statute providing official immunity, 'consists of the intentional doing of a wrongful act without legal justification or excuse.

An act is malicious if it is done knowingly and deliberately, for an improper motive and without legal justification.'"); *see also Sanders v. Daniel Intern. Corp.* 682 S.W.2d 803, 808 (Mo banc 1984) ("The law imputes malice 'to a wrongdoer from the *mere* intentional doing of a wrongful act to the injury of another without legal justification or excuse.'"). Bad faith "embraces more than bad judgment or negligence. It imports a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another."

6

*Blue v. Harrah's N. Kansas City, LLC*, 170 S.W.3d 466, 479 (Mo. App. W.D. 2005). Mere allegations without specific facts demonstrating bad faith are insufficient to overcome summary judgment. *State ex rel. Boshers v. Dotson,* 879 S.W. 2d 730, 731, 733 (Mo. App. S.D. 1994).

It is undisputed there was legal justification for the actions of the Maryland Heights Officers in arresting Plaintiffs Coleman and Green. There is no dispute that officers from St. Louis County determined the protest area "had now turned more violent and more civil disobedience," that the officers "were going to clear the area of people," and "that it was an unlawful assembly[.]" Ex. A, Lt. Matt Delia Dep. 8:5–23, 15:24–17:4, Oct. 1, 2015; ex. B, Det. Edwin Menzenwerth Dep. 66:4–67:19, Nov. 30, 2015; ex. C, Robert Pusins Dep. 196:15–197:6, Jan. 7, 2016; ex. J, David "Ryan" DeVouton Dep. 8:4–9:1, Oct. 1, 2015 (attempting to disperse the bystanders because "[w]e were responding to intelligence obtained by St. Louis County commanders"). Lt. Delia acted reasonably in relying upon the determination of the St. Louis County police in formulating probable cause an unlawful assembly had taken place in the West Florissant area.

There was also arguable probable cause to believe Damon Coleman and Theophilus Green heard the officers' commands to leave and disperse. Ex. A, Lt. Delia Dep. 18:12–20:2 ("I witnessed several members of St. Louis County giving multiple commands for these men to leave. . . I would constitute the assembly occurred beforehand and everyone else chose to leave."); ex. I, Brandon McKinnon Dep. 12:23–13:4, Oct. 1, 2015 ("There were loud commands going over the St. Louis County Bear, their PA to disperse the area[.]"); ex. J, DeVouton Dep. 13:9–14 (hearing St. Louis County police asking Mr. Coleman and Mr. Green to disperse for "a prolonged period of time" and that "[i]t was pretty clear both verbally and visually they were trying to get everybody to disperse"); ex. D, Damon Coleman and Theophilus Green Police

7

Report; ex. E, Damon Coleman Dep. 41:24–42:1, Oct. 14, 2015 (told to leave or disperse after projectiles fired); ex. F, Theophilus Green Dep. 49:12–18, Oct. 26, 2015 ("You guys need to leave[.]"); *see also* ex. G, Antonio French Dep. 32:14–36:7 (at least six people in the parking lot when the police instructed those present to disperse at 1:29 on the video); ex. H, Damon Coleman Video.

There is also no genuine dispute that Lt. Delia, P.O. McKinnon, and P.O. DeVouton had arguable probable cause (thus legal justification) to believe both Mr. Coleman and Mr. Green were "present at the scene of an unlawful assembly. . . [and] knowingly fail[ed] or refuse[d] to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly[.]" R.S.Mo. § 574.060.[3] Therefore, based on the facts and circumstances at the subject time, the Maryland Heights Officers had arguable probable cause and legal justification to believe Plaintiffs Coleman and Green committed the crime of failure to disperse and are entitled to summary judgment in their individual and official capacities based on official immunity.

Separately and in the alternative, there is no genuine dispute of material fact Lt. Delia perceived Plaintiffs Coleman and Green making throwing motions and throwing items at the officers. Ex. A, Lt. Delia Dep. 16:16–17:4, 17:22–18:6; ex. J, DeVouton Dep. 12:12–20, 15:22–16:1, 16:17–22 (arresting Plaintiffs Coleman and Green due to instruction from Lt. Delia to do so); ex. I, McKinnon Dep. 17:16–22 (present while Officer DeVouton handcuffed Plaintiffs

---

[3] As this Court has recognized, "The validity of an arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest." *United States v. Mendez*, 2006 WL 852376, at *3 (E.D. Mo. 2006) (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)). The question before this Court is not whether Plaintiffs Coleman and Green *actually heard* the commands, but whether the officers reasonably believed these individuals heard the commands in formulating probable cause for the arrests. *See, e.g., Petway v. City of New York, No.* 2014 WL 839931, at *6 (E.D.N.Y. Mar. 4, 2014) ("Whether plaintiff actually heard any prior orders to back up or intentionally disobeyed any such orders is not central to the probable cause analysis. What matters for purposes of probable cause is whether, based on his perception of events, a reasonable officer on the scene would be justified in his belief that plaintiff was committing OGA.").

Coleman and Green, but did not handcuff anyone); *see also* ex. H, Damon Coleman Video, 1:27; ex. E, Coleman Dep. 83:13–24 (Mr. Green stated, "Stop throwing rocks, bro!"); ex. F, Green Dep. 60:14–21 (Mr. Green stated, "Stop throwing rocks, bro."). Lt. Delia had arguable probable cause based on his perception of throwing items at the police, and P.O. DeVouton had arguable probable cause to arrest Plaintiffs Coleman and Green based on Lt. Delia's instructions to him. Accordingly Lt. Delia had arguable probable cause to arrest Plaintiffs Coleman and Green for assault on a law enforcement officer in the third degree, P.O. DeVouton reasonably relied upon Lt. Delia's observations and commands in arresting Plaintiffs Coleman and Green, and P.O. McKinnon did not arrest Plaintiffs Coleman and Green. Therefore, based on the facts and circumstances at the subject time, the Maryland Heights Officers had arguable probable cause and legal justification to believe Plaintiffs Coleman and Green committed the crime of assault on a law enforcement officer in the third degree and are entitled to summary judgment in their individual and official capacities based on official immunity.

As Plaintiffs Coleman and Green have not pleaded or proved any exception to Missouri's sovereign immunity statute, the Maryland Heights Officers are entitled to summary judgment regarding Plaintiffs' claim of false arrest against them in their official capacities. *See State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 449 (Mo. App. W.D. 2007) ("Sovereign immunity, if not waived, bars suits against employees in their official capacity, as such suits are essentially direct claims against the state."); R.S.Mo. § 537.600, *et seq.* In addition, sovereign immunity bars claims against these officers in their official capacity regarding punitive damages. R.S.Mo. § 537.610.3; *see, e.g., A.H. v. St. Louis Cty., Mo.*, 2015 WL 4426234, at *8 (E.D. Mo. July 17, 2015).

2. *The Maryland Heights Officers are entitled to summary judgment regarding Plaintiffs Coleman and Green's claim of assault and battery as Plaintiffs Coleman and Green cannot establish the elements as to any of these three officers.*

Under Missouri law, the tort of assault is "any unlawful offer or attempt to injure another with the apparent present ability to effectuate the attempt under circumstances creating a fear of imminent peril. *Devitre v. Orthopedic Center of St. Louis*, *LLC*, 349 S.W.3d 327 (Mo. banc 2011). Plaintiffs must show: "(1) defendant's intent to cause bodily harm or offensive contact, or apprehension of either; (2) conduct of the defendant indicating such intent, and (3) apprehension of bodily harm or offensive contact on the part of the plaintiff caused by defendant's conduct." *Id.* "To recover damages for a battery, the plaintiff must plead and prove an intended, offensive bodily contact with another person." *Id.* (internal citation and quotations omitted); *see also* Doc. No. 70 ("Under Missouri law, a police officer effectuating an arrest may be found liable for assault and battery only when he uses more force than is 'reasonably necessary.'"). A police officer's decision to use force is discretionary rather than ministerial with respect to official immunity. *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

Though Plaintiffs Coleman and Green claim they were struck by less-lethal projectiles, it is undisputed the Maryland Heights Officers were not carrying and did not use any firearms capable of discharging less-lethal projectiles. Ex. K, Lt. Delia Affadavit; ex. L, P.O. DeVouton Affidavit; ex. M, P.O. McKinnon Affidavit. Further Plaintiffs Coleman and Green were unable to identify any of the three Maryland Heights Officers as officers who allegedly used force of any kind against them. Ex. E, Coleman Dep. 46:5–9, 73:12–16, 131:7–13; ex. F, Green Dep. 46:5–47:1 (aside from projectile shot by unknown officers, no force used against Mr. Green). Accordingly, Plaintiffs Coleman and Green are unable to meet each and every element of a claim

of assault and battery, and the Maryland Heights Officers are entitled to official immunity based on their actions to complete the arrest of Mr. Coleman and Green.

Also, the Maryland Heights Officers are entitled to summary judgment on Plaintiffs Coleman and Green's claims for assault and battery (including punitive damages), as they have failed to plead and prove any exception to sovereign immunity. *See State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 449 (Mo. App. W.D. 2007); R.S.Mo. 537.600, *et seq.*; *see supra*.

3. *The Maryland Heights Officers are entitled to summary judgment and qualified immunity regarding Plaintiffs Coleman and Green's federal claims under the Fourth Amendment as it is undisputed the officers had arguable probable cause to conduct arrests and there is no evidence these officers used any force beyond that necessary to effectuate the arrest.*

Section 1983 is a remedial statute allowing for a person acting under "color of any statute, ordinance, regulation, custom, or usage, of a State or Territory or the District of Columbia" to be held liable for the "deprivation of any rights, privileges, or immunities secured by the Constitution and its laws." 42 U.S.C. § 1983. The statute is "merely a vehicle for seeking a federal remedy for violations of federally protected rights." *Foster v. Wyrick,* 823 F.2d 218, 221 (8th Cir. 1987). In a § 1983 action, two essential elements must be present: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct complained of deprived a plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *DuBose v. Kelly,* 187 F.3d 999, 1002 (8th Cir. 1999). Therefore, in evaluating a § 1983 claim, the precise constitutional violation which is alleged must be identified. *Rogers v. City of Little Rock, Ark.,* 152 F.3d 790, 796 (8th Cir. 1998) (emphasis added). And, if no constitutional right would have been violated under the established allegations, there is no need for further inquiry concerning qualified immunity.

11

*McCoy v. City of Monticello (McCoy I),* 342 F.3d 842, 846 (8th Cir. 2003) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)).

     a.  <u>The Maryland Heights Officers are entitled to summary judgment regarding Plaintiffs Coleman and Green's federal claim for excessive force.</u>

Plaintiffs Coleman and Green maintain the Maryland Heights Officers used excessive force in attempting to "seize" them, thereby violating their Fourth Amendment Rights. To establish a Fourth Amendment violation pursuant to § 1983, a claimant must show that a seizure occurred, and the seizure was unreasonable. *Brower v. County of Inyo*, 489 U.S. 593, 599 (1989); *McCoy I*, 342 F.3d at 847. The Fourth Amendment prohibits the use of excessive force during the seizure of a free citizen. *Graham v. Connor,* 490 U.S. 386, 388 (1989); *Guite v. Wright,* 147 F.3d 747, 750 (8th Cir. 1998). "The force employed by an officer is not excessive and thus not violative of the Fourth Amendment if it was 'objectively reasonable under the particular circumstances.'" *Greiner v. City of Champlin,* 27 F.3d 1346, 1354 (8th Cir. 1994).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396–97. Therefore, "[n]ot every push or shove, even if it may later seem unnecessary . . ." is considered excessive. *Id.* at 396 (citation and internal quotation marks omitted).

A court should not judge an officer's conduct in hindsight; rather, a court examining an excessive force claim should place itself in the shoes of a reasonable officer under the circumstances. *Foster v. Metro. Airports Comm'n*, 914 F.2d 1076, 1082 (8th Cir. 1990). The reasonableness evaluation, like that of other Fourth Amendment analyses, focuses on an

objective inquiry: "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citation and internal quotation marks omitted). Determining whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396. A court may also evaluate the extent of the suspect's injuries. *Rohrbough v. Hall*, 586 F.3d 582, 586 (8th Cir. 2009). However, a court must examine the nature of the force, rather than the extent of the injury, when evaluating an excessive force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) ("Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.").

"Fourth Amendment jurisprudence has long recognized that the right to make an arrest or an investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat to effect it." *Graham*, 490 U.S. at 397. "Circumstances such as the severity of the crime, whether the suspect posed a threat to the safety of the officers or others, and whether the suspect was resisting arrest are all relevant to the reasonableness of the officer's conduct." *Moore v. Novak*, 146 F.3d 531, 535 (8th Cir. 1998) (citation and internal quotation marks omitted); *Loch v. City of Litchfield*, 689 F.3d 961, 966 (8th Cir. 2012) ("[A]n act taken based upon a mistaken perception or belief, if objectively reasonable, does not violate the Fourth Amendment."). Federal circuit courts have interpreted this list of factors to be non-exhaustive. *See, e.g., Retz v. Seaton*, 741 F.3d 913, 918 (8th Cir. 2014). Additionally, if the complaining party's injuries are likely explained by the arrestee's own actions, the allegations cannot create a material fact issue as to whether the arresting officer used excessive force. *Greiner*, 27 F.3d at

13

1355.  Whether the force used was constitutionally excessive under the Fourth Amendment is a question of law.  *Davis v. White*, 794 F.3d 1008, 1013 (8th Cir. 2015).

Here, for reasons stated in Section III.A.1 and 2., *supra*, Plaintiffs Coleman and Green have not established any of the Maryland Heights Officers ever engaged in any use of force. Accordingly Plaintiffs Coleman and Green cannot prove each and every element of a claim of excessive force, and these officers, in their individual and official capacities, are entitled to summary judgment.

b. The Maryland Heights Officers are entitled to summary judgment regarding Plaintiffs Coleman and Green's federal claims for false arrest.

"To establish a violation of the Fourth Amendment in a section 1983 action, the claimant must demonstrate a seizure occurred and the seizure was unreasonable." *McCoy v. City of Monticello*, 342 F.3d 842, 846 (8th Cir.2003).  A § 1983 false arrest claim relies on a substantive Fourth Amendment right to be free from unreasonable searches and seizures. *Hannah v. City of Overland, Mo.*, 795 F.2d 1385, 1389 (8th Cir.1986). The constituent elements of false imprisonment or false arrest are: (1) detention or restraint of the plaintiff against his will, and (2) the unlawfulness of the detention or restraint, i.e., that the plaintiff was detained or restrained without probable cause.  *Id.*  A police officer "who arrests someone with probable cause is not liable for false arrest [or false imprisonment] simply because the innocence of the suspect is later proved."  *Hannah*, 795 F.2d at 1389 (quoting *Pierson v. Ray*, 386 U.S. 547, 555 (1967)); *C.L.D. ex rel. Dixon v. Boyd*, 2010 WL 1838408, *4 (E.D. Mo. 2010).

It is well established that a warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least "arguable probable cause."  *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011).  As

this Court has recently stated, "Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Michael Barrientez v. Jefferson County*, 2016 WL 915188, at *6 (E.D. Mo. Mar. 10, 2016) (citing *Peterson v. Kopp*, 754 F.3d 594, 598 (8th Cir. 2004)). The sufficiency of the evidence for a determination of probable cause need not be enough to support a conviction or even enough to show that the officer's belief is more likely true than false. *Matthews v. City of East St. Louis*, 675 F.3d 703, 706 (7th Cir. 2012). As such, "as long as a reasonably credible witness or victim informs the police that someone has committed a crime, or is committing, a crime, the officers have probable cause." *Id.* at 706–07, quoting Spiegel v. Cortese, 196 F.3d 717, 723 (7th Cir. 1999); *see also Matter of Search of Bldg. T & Secured Parking Area N. of Emerson Blvd.*, 684 F. Supp. 1491, 1499 (E.D. Mo. 1988) (An officer may rely upon information provided by other officers in determining an arrest should be made). Additionally, "once probable cause has been established, officials have no constitutional obligation to conduct further investigation in the hopes of uncovering potentially exculpatory evidence." *Id.* at 707. Probable cause is determined "at the moment the arrest was made," therefore, any later developed facts are irrelevant to the probable cause analysis for an arrest. *Amrine v. Brooks*, 522 F.3d 823, 832 (8th Cir. 2008) (quoting *United States v. Rivera*, 370 F.3d 730, 733 (8th Cir. 2004)).

For reasons stated in Section III.A.1 and 2., Plaintiffs Coleman and Green's federal claims regarding false arrest fail and the Maryland Heights Officers are entitled to summary judgment in their individual and official capacities.

    c. <u>The Maryland Heights Officers, in their individual capacities, are entitled to summary judgment regarding Plaintiffs Coleman and Green's federal claims due to qualified immunity.</u>

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). It shields public officials and reduces "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit [public] officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The law is "clearly established" if it gives the defendant official "fair warning" that his conduct violated an individual's rights when the official acted. *Hope v. Pelzer*, 536 U.S. 730, 739-40 (2002). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Moore v. City of Desloge, Mo.*, 647 F.3d 841, 846 (8th Cir. 2011) (internal quotations and citations omitted).

The Supreme Court formulated the analysis for qualified immunity in *Saucier*.

Taken in the light most favorable to the party asserting the injury, do the facts alleged show the [defendant's] conduct violated a constitutional right? . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. . . . The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . An officer does not lose his qualified immunity because of a mistaken, yet reasonable belief, nor does an officer lose his immunity because of a reasonable mistake as to the legality of his actions.

533 U.S. at 201 (internal citations omitted) (receded from by *Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (giving discretion to courts as to the order of addressing the two prongs); *see also Keil v. Triveline*, 661 F.3d 981, 985 (8th Cir.2011). Although Defendants bear the burden of proof for the affirmative defense of qualified immunity, Plaintiffs must demonstrate that the law allegedly violated by Defendants was clearly established. *Monroe v. Arkansas State University*,

16

495 F.3d 591, 594 (8th Cir. 2007). Qualified immunity protects "all but plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Maryland Heights Officers are entitled to qualified immunity as they did not commit any constitutional violations. In addition, the law was not clearly established on August 11, 2014, regarding the following:

1) Lt. Delia could not rely on the representations of St. Louis County regarding the existence of an unlawful assembly, that Plaintiffs Coleman and Green's failure to leave after several lawful commands provided arguable probable cause to arrest them for failure to disperse, that Lt. Delia's observation of Plaintiffs Coleman and Green throwing items at the police provided arguable probable cause to arrest them for assault on a law enforcement officer in the third degree, and that an unidentified source of alleged force could be attributed to him for the violation of constitutional rights;

2) P.O. DeVouton could not rely upon the reports and instructions of Lt. Delia in arresting Plaintiffs Coleman and Green and that an unidentified source of alleged force could be attributed to him for the violation of constitutional rights; and

3) P.O. McKinnon, who did not handcuff either Plaintiffs Coleman and Green, engaged in behavior constituting an unlawful arrest, and that an unidentified source of alleged force could be attributed to him for the violation of constitutional rights.

Accordingly, the Maryland Heights Officers are entitled to qualified immunity as their alleged conduct did not violate "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As Plaintiffs cannot overcome either of the two prongs of the qualified immunity analysis, the Maryland Heights Officers are entitled to summary judgment.

d. <u>The Maryland Heights Officers, in their official capacities, are entitled to summary judgment regarding Plaintiffs Coleman and Green's federal claim due to redundancy and failure to establish any evidence as to who constitutes a "final policymaker."</u>

17

As there is no underlying constitutional violation, the Maryland Heights Officers are entitled to summary judgment on all claims against them in their official capacities. *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 583 (8th Cir. 2006) (internal quotations omitted).

In the alternative, a claim against an individual in their official capacity, where a claim has been raised against the actual entity, is redundant and should be dismissed. *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir.2010); *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir.1999); *Artis v. Francis Howell North Band Booster Ass'n, Inc.*, 161 F.3d 1178, 1182 (8th Cir. 1998). In *Artis*, the Eighth Circuit affirmed the District Court's dismissal of a public official not specifically sued in his individual capacity where the School District was already sued as the claim was "redundant." *Artis*, 161 F.3d at 1182. As Plaintiffs Coleman and Green have sued St. Louis County in this suit and have alleged the Maryland Heights Officers were acting "pursuant to the practices and customs of Defendant St. Louis County and implemented by Defendant Belmar" (Doc. No. 81, ¶ 123), Plaintiffs Coleman and Davis' federal claims against the Maryland Heights Officers in their official capacities should be dismissed as redundant to claims against St. Louis County.

Further, Plaintiffs Coleman and Green have not set forth any evidence to establish that any of the three Maryland Heights Officers is a "final policymaker" pursuant to § 1983 and its case law. *Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010) ("[W]hether an official had final policymaking authority is a question of state law.") (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 486 (1986)). Here, "[t]he uncontroverted evidence shows that Defendant St. Louis County had not delegated policy-making authority to the Defendant [] police officers." *Horn v. St. Louis Cty.*, 2015 WL 1005836, at *8 (E.D. Mo. Mar. 5, 2015). Accordingly, Maryland

Heights Officers are entitled to summary judgment on all claims against them in their official capacities.

**B. Justin Cosma is entitled to summary judgment on all remaining counts because the undisputed evidence establishes Officer Cosma was not involved in the arrest of any Plaintiff and because he is entitled to qualified immunity.**

Plaintiffs Tracey White and her son, William Davis, have alleged in their Amended Compliant that former City of Ferguson Police Officer Justin Cosma, among other officers, "in what appeared to be army uniforms, carrying rifles and sticks and wearing helmets, approached the door and ordered Plaintiff White to 'get out.'" Doc. No. 81, ¶ 42. Ms. White and Mr. Davis further alleged 1) Officer Cosma falsely arrested them, 2) assaulted and battered them, and 3) deprived them of their Fourth Amendment rights to be free from unlawful seizure. The undersigned will argue why Officer Cosma is entitled to summary judgment in this order.

1. *Officer Cosma is entitled to summary judgment regarding Plaintiffs White and Davis' claim of false arrest as it is undisputed Officer Cosma did not arrest either Plaintiff White or Plaintiff Davis.*[4]

It is undisputed that Ms. White did not know what Officer Cosma looked like, that she did not recall Officer Cosma arresting her, and she was not certain if Officer Cosma was indeed who arrested her. Ex. N, Tracey White Dep. 99:15–15, 100:13–14, 122:24–123:21, 125:25–127:12 Sept. 29, 2015. When asked, Ms. White was unable to state why she sued Officer Cosma. *Id.* Ms. White admitted no force was used either against her or her son inside the McDonald's off of West Florissant in Ferguson. *Id.* at 128:16–129:15. The claims of excessive force are confined to the events taking place outside in another location, with respect to allegedly being thrown to the ground, having a knee placed in her back, being handcuffed and being thrown into the vehicle. *Id.* at 129:16–133:14; ex. O, GoPro Video of Arrest. Ms. White

---

[4] P.O. Cosma incorporates the discussion, *supra*, regarding Missouri law, false arrest, and official immunity.

watched the entire video and was unable to identify Officer Cosma. Ex. N, White Dep. 203:8–13. Officer Cosma assisted in arresting Ryan J. Reilly in the McDonald's. Ex. P, Justin Cosma Dep. 42:5–10, Oct. 29, 2015. Mr. Davis could not recall if Officer Cosma was involved in his arrest. Ex. Q, William Davis Dep. 91:19–92:3, Sept. 29, 2015. Officer Cosma has never come in contact with Tracey White (ex. P, Cosma Dep. 57:11–14), Tracey White was arrested by a St. Louis County Police Officer and two St. Charles Police Officers (ex. R, David Ryan Dep. 38:5–8, Oct. 1, 2015, and William Davis was arrested by St. Louis County Officer Terrence McCoy (ex S, Terrence McCoy Dep. 83:8–84:8, Oct. 1, 2015). Any officer associated with the arrest of either Ms. White or Mr. Davis was with the St. Louis County Police Department of St. Charles Police Department. Ex. R, Ryan Dep. 44:24–45:9; ex. O, GoPro Video; ex. S, Ms. White and Mr. Davis Police Report; ex. B, Edwin Menzenwerth Dep. 75:12–15; *see also* ex. C, Pusins Dep. 84:18–23, 159:16–160:3 (to a reasonable degree of certainty, P.O. Cosma was not involved in the arrest nor used force against Ms. White or Mr. Davis); ex. S, Police Report of Tracey White and William Davis. There is no evidence Justin Cosma was present during any alleged use of force or arrest of Plaintiffs White and Davis.

Accordingly, because Officer Cosma was not involved in the use of any force against Ms. White and Mr. Davis, and because he was not even involved in their arrest, Officer Cosma is entitled to summary judgment with respect to Plaintiffs' claim for false arrest against him in his individual capacity and official capacity. In addition, Officer Cosma is entitled to summary judgment on the basis of sovereign immunity regarding Plaintiffs' claim of false arrest (including punitive damages) against him in his official capacity. *See State ex rel. Cravens v. Nixon*, 234 S.W.3d 442, 449 (Mo. App. W.D. 2007) ("Sovereign immunity, if not waived, bars suits against

employees in their official capacity, as such suits are essentially direct claims against the state.");

R.S.Mo. 537.600, *et seq.*; *see supra* Sections III.A.1. and 2.

2. *Officer Cosma is entitled to summary judgment regarding Plaintiffs White and Davis' claim of assault and battery as it is undisputed Officer Cosma did not use or attempt to use any force against either Plaintiff White or Davis.*[5]

For the reasons stated in Section III.A.1., *supra*, in that Officer Cosma did not use force or attempt to use force against Plaintiffs White and Davis, he is entitled to summary judgment. He is also entitled to summary judgment regarding the claim against him in his official capacity by application of sovereign immunity, including Plaintiffs' request for punitive damages.

3. *Officer Cosma is entitled to summary judgment regarding Plaintiffs White and Davis' federal claims under the Fourth Amendment as it is undisputed Officer Cosma did not arrest, or use or attempt to use any force against either Plaintiffs White or Davis.*[6]

a. Officer Cosma is entitled to summary judgment regarding Plaintiffs White and Davis' federal claim for excessive force.

Plaintiffs White and Davis maintain Officer Cosma used excessive force in attempting to "seize" them, thereby violating their Fourth Amendment Rights.

Here, for reasons stated in Section III.A.1., *supra*, Plaintiffs have not established Officer Cosma ever engaged in any act effecting a "seizure" within the confines of the Fourth Amendment. Accordingly Plaintiffs cannot prove each and every element of a claim regarding assault, and Officer Cosma, in his individual and official capacities, is entitled to summary judgment.

b. Officer Cosma is entitled to summary judgment regarding Plaintiffs White and Davis' federal claim for false arrest.

---

[5] P.O. Cosma incorporates the previous legal discussion regarding Missouri torts of assault and battery.
[6] P.O. Cosma incorporates the earlier discussion of law regarding excessive force, unlawful arrest, and qualified immunity.

{01606521.DOCX;1}

For reasons stated in Section III.A.1. (Officer Cosma did not seize any Plaintiff), Plaintiffs White and Davis' federal claims regarding false arrest fail and Officer Cosma is entitled to summary judgment in his individual and official capacities.

    c.   <u>Officer Cosma, in his individual capacity, is entitled to summary judgment regarding Plaintiffs White and Davis' federal claim due to qualified immunity.</u>

Officer Cosma is entitled to qualified immunity unless his alleged conduct violated "clearly established [federal] statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, the first prong is not met as Plaintiffs White and Davis cannot show Officer Cosma engaged in any activity regarding their arrest. Further, the second prong is not met because it was certainly not clearly established on August 13, 2014, that Officer Cosma's assistance in arresting Mr. Reilly violated any rights of any Plaintiffs.

    d.   <u>Officer Cosma, in his official capacity, is entitled to summary judgment regarding Plaintiffs White and Davis' federal claims as there is no underlying constitutional violation, the claims are redundant,[7] and there is no evidence Officer Cosma was a final policymaker of the City of Ferguson.</u>

As there is no underlying constitutional violation, P.O. Cosma is entitled to summary judgment on all claims against him in his official capacity. *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 583 (8th Cir. 2006) (internal quotations omitted).

As Plaintiffs have sued the City of Ferguson in this suit, Plaintiffs White and Davis' federal claims against Officer Cosma in his official capacity should be dismissed as redundant, and for the reasons stated in Section III.C.2, *infra*.

---

[7] P.O. Cosma incorporates previous legal discussion regarding redundant claims and proof of a final policymaker.

{01606521.DOCX;1}

Finally, there is no evidence to establish the City of Ferguson delegated its policymaking authority to P.O. Cosma, and he is entitled to summary judgment with respect to all claims against him in his official capacity.

**C. Thomas Jackson is entitled to summary judgment on all remaining counts because Plaintiffs have adduced no evidence to establish the involvement of Thomas Jackson in his individual or official capacities regarding the subject occurrences.**

Every Plaintiff, with the exception of Damon Coleman and Theophilus Green, have alleged Thomas Jackson, as former Chief of the City of Ferguson Police Department, acted "negligently, carelessly, recklessly, and with deliberate indifference to Plaintiffs by failing to properly train, supervise, control, direct, monitor, and discipline Defendant officers from their respective departments who were patrolling the streets of Ferguson, Missouri during the period of August 11-13, 2014," and that he implemented "practices and customs." Doc. No. 81, ¶¶ 57–58, 81–82, 99–100, 139–40, 158–59, 175–76; *see* ¶¶ 123–24 (regarding Plaintiffs Coleman and Green).

Thomas Jackson is entitled to summary judgment on all remaining counts because the undisputed evidence establishes Thomas Jackson was not personally involved in any of the alleged arrests, use of force, training, supervision, control, direction, monitoring, disciplining, or implementation of any policy or procedure which was the moving force behind any alleged constitutional right of any Plaintiff.[8]

1. *Thomas Jackson is entitled to qualified immunity regarding Plaintiffs' claims against him in his individual capacity as there is no evidence he was individually involved in any of the alleged occurrences.*

---

[8] As former City of Ferguson Officer Justin Cosma was not involved in any of the arrests or alleged use of force in this matter, Defendants will exclude P.O. Cosma from this discussion unless otherwise stated.

{01606521.DOCX;1}

Thomas Jackson, in his individual capacity, is entitled to qualified immunity Plaintiffs have not shown any evidence that he was involved in or caused any alleged arrest or use of force. Specifically, Plaintiffs have shown no evidence:

- Mr. Jackson had any duty to train any of the St. Louis County Officers (*Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014) (finding Missouri state law requiring Missouri Department of Public Safety responsible for training Missouri licensed peace officers) or that any alleged failure to train caused any constitutional violation;

- Mr. Jackson had any duty to supervise St. Louis County Officers in that there is no evidence the St. Louis County Officers were his subordinates, that there were any offensive acts, that he was aware of any offensive acts constituting a deliberate indifference, that he failed to take any remedial action, and that such failures proximately caused injuries to any plaintiffs (*see Parrish v. Ball*, 594 F.3d 993, 1002 (8th Cir. 2010)); and

- Mr. Jackson had any duty to direct, discipline, monitor, or control or such alleged failures proximately caused any constitutional violation to any Plaintiff (*Hinesley v. City of Lake Ozark, Mo.*, 2010 WL 3613996, at *11 (W.D. Mo. 2010) (stating "[a]lleged failures to control and discipline are a failure to supervise.")).

Accordingly, as Plaintiffs have failed to show any individual involvement regarding Mr. Jackson and any constitutional violation of any clearly established constitutional right. Therefore, he is entitled to qualified immunity.

2. *Thomas Jackson is entitled to summary judgment regarding claims against him in his official capacity as there is no evidence of any underlying constitutional violation, such claim is redundant to the claim against the City of Ferguson, and Plaintiffs have not*

*pleaded or proved that as a matter of state law, he was the final policymaker regarding any of the subject occurrences.*

Mr. Jackson is entitled to summary judgment as Plaintiffs cannot establish there was any underlying constitutional violation. *See Reasonover v. St. Louis County, Mo.*, 447 F.3d 569, 583 (8th Cir. 2006) (internal quotations omitted).

In the alternative and as explained in Section III.A.3.d., claims against an officer in his or her official capacity is redundant to the claim against the alleged municipality. As Mr. Jackson was the Chief of the City of Ferguson at the time of the subject incident (*see* ex. T, Thomas Jackson Dep. 11:23–12:12, Oct. 27, 2015), any claim against him in his official capacity should be dismissed as it is redundant to the claim against the City of Ferguson.

In the alternative, Mr. Jackson is entitled to summary judgment as Plaintiffs have not pleaded and cannot prove Mr. Jackson was the final policymaker regarding the subject occurrences. *See Copeland v. Locke*, 613 F.3d 875, 882 (8th Cir. 2010). Not only have Plaintiffs failed to plead or prove any ordinances or statutes providing Mr. Jackson was the final policymaker at the time of the subject occurrences, but even if such were the case, there is no evidence he was the final policymaker for the area of West Florissant subject to mass demonstration. The following discourse took place at Mr. Jackson's deposition:

> Q Mr. Jackson, you mentioned -- you recall earlier that you said that there was a joint command comprised of Chief Belmar and you at one point in time?
> A We were during that first week prior to the state taking over.
> Q And specifically there were certain areas of Ferguson that were in your command, correct?
> A Correct.
> Q And there were certain areas of Ferguson that were in Chief Belmar's command, correct?
> A Correct.
> Q Specifically could you -- the area that was in Chief Belmar's command, police stayed at that area?
> A That was, again, the West Florissant protest area.

Q And the highest ranking officer that was in charge of that area that you just said was who?
A Would have been Lieutenant Colonel Dierkes, I believe.
Q Okay. And then he would report to Chief Belmar?
A Yes.

Ex. T, T. Jackson Dep. 107:3–23; *see also id.* at 37:18–40:24 (Mr. Jackson turned command over to Lt. Col. Dierkes of the St. Louis County Police Department, and Mr. Jackson reported to the instructions of St. Louis County); 45:3–8 (Lt. Col. Dierkes had jurisdiction over the area); 46:10–47:3 ("So when I got there, I just formally said we'll be following your command.").

Chief Jon Belmar of the St. Louis County Police Department confirmed this aspect of the "joint command," depending on the area within the City of Ferguson:

Q All right. So during that period of August 11th through August 14th -- well, August 13th, you were the person in charge, right?
A I shared that responsibility with Chief Jackson, and then I was fortunate enough to have Captain Johnson and either Colonel Adkins or Major Jones from the St. Louis Metropolitan police department assist me along with my commanders.
Q Okay. But you were the ultimate person in this situation?
A I was, yes.
Q All right. So if -- The folks that were using force, there were guidelines that you all explained to them were the parameters in which force were to be used, correct?
A Yes.

Ex. U, Jon Belmar Dep. 66:11–67:1, Oct. 27, 2015. Detective Ed Menzenwerth of the St. Louis County Police Department, who investigated use of force claims and arrests during the subject time period, confirmed the same. Ex. B, Det. Menzenwerth Dep. 70:22–74:20; *see also* ex. R, Ryan Dep. 45:10–46:14 (Sergeant Ryan of the St. Louis County Police Department did not know of the City of Ferguson's orders, chain of command in the subject area was to St. Louis County); ex. V, Richard Mundy Dep. 72:3–74:14, Oct. 26, 2015.

Accordingly, Chief Jackson is entitled to summary judgment on all claims against him in his official capacity.

**D. The City of Ferguson is entitled to summary judgment on all remaining counts because Plaintiffs have adduced no evidence to establish the City of Ferguson's policies or procedures were the moving force behind any alleged constitutional violations.**

Plaintiffs alleged constitutional violations against Defendant City of Ferguson ("City"), accusing the City of failing to train, supervise, control, direct, monitor, and discipline officers from its respective department. Doc. No. 81, ¶¶ 58, 82, 100, 140, 159, 176. Plaintiffs stated their constitutional rights were violated as a result of unnamed practices and customs of the City of Ferguson. *Id.* Plaintiffs also requested relief in the form of punitive damages, *inter alia.* The City is entitled to summary judgment because: 1) There was no underlying constitutional violation; 2) the law of which Plaintiff complains was not clearly established at the time of the subject incident; 3) there is no evidence the City improperly train, supervise, control, direct, monitor, and discipline officers, that they had a duty to do so with respect to St. Louis County Defendants, or that any failure to do so caused any subject constitutional violation, and 4) in the alternative, punitive damages are not recoverable against a municipal entity in an action based on 42 U.S.C. § 1983.

*1. Plaintiffs' claim fails because there is no underlying constitutional deprivation.*

A municipal entity cannot be held vicariously liable under § 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *McGautha v. Jackson County*, 36 F.3d 53, 56 (8th Cir. 1994) ("*Respondeat superior* does not apply under section 1983 because municipal liability is limited to conduct for which the municipality is itself actually responsible."). In order to ensure that *Monell* liability does not collapse into respondeat superior liability, the Supreme Court has instructed courts to employ strict standards of causation and culpability. *See Board of the County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 405 (1997). A municipality may be held liable <u>only</u> if the municipal employee is found liable on

27

the underlying substantive constitutional claim.  *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (*McCoy II*).

Plaintiffs' underlying claims regarding alleged constitutional deprivations fail and the City is entitled to summary judgment.  *See supra*, Section III.B and C.

2.  *Plaintiffs cannot prevail because the rights of which Plaintiffs complain were not clearly established at the time of the subject arrest.*

A municipality may be liable under § 1983 for the unconstitutional acts of its employees if some custom or policy of the municipality was the moving force behind the constitutional violation.  *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000) (citing *Board of County Comm'rs v. Brown*, 520 U.S. 397, 403–04 (1997)).  If plaintiff can establish a municipality's officer violated his federal right, plaintiff must establish the requisite degree of fault on the part of the municipality and a causal link between municipal policy and the alleged violation.  *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (internal citation omitted).  Such a showing requires either the existence of a municipal policy that violates federal law on its face or evidence that the municipality has acted with "deliberate indifference" to an individual's federal rights.  *Id.*; *see Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) ("Alternatively, 'custom or usage' is demonstrated by: (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, i.e., [proof] that the custom was the moving force behind the constitutional violation").

"[A] municipality cannot exhibit fault rising to the level of *deliberate* indifference to a constitutional right when that right has not yet been clearly established." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1259 (8th Cir. 2010) (original emphasis). The Eighth Circuit has stated:

> Where the municipality has not directly inflicted an injury, however, rigorous standards of culpability and causation must be applied, and a showing of deliberate indifference is required. The absence of clearly established constitutional rights-what Justice O'Connor called clear constitutional guideposts, undermines the assertion that a municipality deliberately ignored an obvious need for additional safeguards to augment its facially constitutional policy. This is not an application of qualified immunity for liability flowing from an unconstitutional policy. Rather, the lack of clarity in the law precludes a finding that the municipality had an unconstitutional policy at all, because its policymakers cannot properly be said to have exhibited a policy of deliberate indifference to constitutional rights that were not clearly established.

*Szabla v. City of Brooklyn Park, Minnesota*, 486 F.3d 385, 394 (8th Cir. 2007) (internal quotations and citations omitted).

For the reasons stated above pertaining to the qualified immunity afforded to P.O. Cosma and Mr. Jackson, the rights of which Plaintiffs complain were not clearly established at the time of the subject encounter. *See supra.* The City is therefore entitled to summary judgment with respect all claims.

3. *Plaintiffs have no evidence the City had any policy, custom, or training causing constitutional deprivations to Plaintiffs.*

The Eighth Circuit has carved out an exception to a municipality's lack of liability based on an officer's underlying unconstitutional tort, finding that "even if the arresting officers are not held responsible because of some good faith belief, meriting qualified immunity," the municipality is still liable for the unconstitutional deprivation suffered by the injured party. *Tilson v. Forrest City Police Dept.*, 28 F.3d 802, 813 (8th Cir. 1994). Should this Court determine that Plaintiffs sufficiently showed a constitutional violation and Defendant Officers

were protected by qualified immunity, Defendants maintain that Plaintiffs failed to show that the City violated Plaintiffs' constitutional rights under § 1983.

A municipality can be held directly liable under § 1983 "only where the municipality *itself* causes the constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (citing *Monell*, 436 U.S. at 690) (emphasis in original). A municipality may be sued directly under § 1983 where "the action that is alleged to be unconstitutional implements or executes a 'policy' statement, ordinance, regulation, or decision officially adopted and promulgated by [the city's] officers." *Id.,* at 690. Liability under *Monell* also applies "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell, 436 U.S.,* at 690-91.

As stated above and constituent with Plaintiffs' allegations, Plaintiffs must therefore prove that the City either (a) implemented, executed, and promulgated unconstitutional "policy," (b) that there existed informal approval of a "custom" so widespread as to have the force of law that caused a constitutional deprivation under *Monell*, 436 U.S. at 690–91, 694, or (c) that the City exhibited a deliberate and conscious choice by failing to adequately train Defendant Officers causing harm to Plaintiffs.

    a. <u>Plaintiffs have failed to establish that any policy or regulation of the City was unconstitutional on its face or by implementation.</u>

A plaintiff may establish municipal liability under § 1983 by proving that his constitutional rights were violated by an action pursuant to official municipal policy. *Monell* 436 U.S. at 691. The terms "policy" and "custom" are not used interchangeably in a *Monell* analysis. *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1998).

In order to establish an unconstitutional policy under *Monell*, a plaintiff must prove there was "an official policy," a deliberate choice of a governmental policy made by a municipal official who has final authority regarding such matters, which was the moving force behind the constitutional violation. *Mettler,* 165 F.3d at 1204; *Wilson v. Spain*, 209 F.3d 713, 717 (8th Cir. 2000). Municipal liability is imposed when some official policy "causes" an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 692; *see also Davis v. White*, 794 F.3d 1008, 1014 (8th Cir. 2015). Where a plaintiff fails to identify any official policy that arguably played a role in the plaintiff's injuries, the plaintiff must fail on an unconstitutional policy claim. *Mettler*, 165 F.3d at 1204. "Official policy involves a deliberate choice to follow a course of action made from among various alternatives by an official who [is determined by state law to have] the final authority to establish governmental policy." *Ware v. Jackson County, Mo.*, 150 F.3d 873, 880 (8th Cir. 1998).

Plaintiffs have failed to establish that any policy or regulation of the City was unconstitutional on its face or by implementation. *See* ex. C, Pusins Dep. 182:19–183:21 (Plaintiffs' purported liability expert was unaware of what Ferguson General Orders the arresting officers knew or whether any general order or policy was the moving force behind any constitutional violation). As Plaintiff cannot make their case in chief regarding their claim of municipal liability based upon 42 U.S.C. § 1983, the City is entitled to summary judgment on all counts.

b. <u>Plaintiff has not presented "detailed evidence," about a "continuing, widespread, persistent pattern of unconstitutional conduct" or custom by officers in the City.</u>

Plaintiff alleged that the City has unnamed customs which resulted in the violation of Plaintiffs' rights. Doc. No. 81, ¶¶ 57, 81, 99, 139, 158, 175.

31

The Eighth Circuit has reviewed claims of constitutional violations involving excessive force against a municipality. *Mettler*, 165 F.3d at 1201. In *Mettler*, the plaintiffs alleged that there was deliberate indifference to the officers' custom, pattern, or practice of using excessive force, that the municipality conducted an inadequate investigation, and that it concealed evidence of wrongdoing. *Id.*

Although a municipality may not be held vicariously liable for the unconstitutional acts of its employees, it may be held liable if a plaintiff can prove the municipality's policy or custom was the "moving force [behind] the constitutional violation." *Monell*, 436 U.S. at 694. It is not sufficient for Plaintiffs to merely identify conduct attributed to the municipality, but they must demonstrate that, through the municipality's deliberate conduct, the municipality was the "moving force" behind the alleged injury. *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown (Bryan County)*, 520 U.S. 397, 404 (1997). Where Plaintiffs allege a municipality has not "directly" inflicted an injury, but has caused an employee to do so, "rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405 (citing *Canton*, 489 U.S. at 391–92). Such claims, that do not involve allegations that the municipality itself violated federal law, or that it directed or authorized the deprivation, "present much more difficult problems of proof." *Id.* at 406. "That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown the employee acted culpably." *Id.* at 406–07. The plaintiff <u>must</u> demonstrate the municipal action was taken with "deliberate indifference" to its known or obvious consequences. *Id.* at 407. "'Deliberate indifference' is a stringent standard of fault, requiring

32

proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Oklahoma, 520 U.S.* at 410.

In order to determine if plaintiff has presented sufficient evidence of a municipal custom, plaintiff must demonstrate:

> (1)    The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2)   Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
>
> (3) The plaintiff['s] injury by acts pursuant to the governmental entity's custom, *i.e.*, [proof] that the custom was the moving force behind the constitutional violation.

*Mettler*, 165 F.3d at 1204 (citations omitted).  Plaintiff must satisfy <u>all</u> three requirements and present sufficient evidence "from which a jury could reasonably find the existence of a relevant municipal custom" in the City.  *See id.*  Plaintiff failed to do so.  *See id.*

The Eighth Circuit has required "detailed and compelling" evidence to support liability against a municipality under § 1983. *Parrish v. Luckie*, 963 F.2d 210, 204-05 (8th Cir. 1992) (reviewing the "<u>detailed</u> and compelling" evidence plaintiff presented that defendant police department avoided, ignored, and covered up complaints of physical and sexual misconduct by officer) (emphasis added); *Harris v. City of Pagedale*, 821 F.2d 499, 501-06 (8th Cir. 1987) (finding plaintiff had proven municipal "custom" through presentation of <u>detailed evidence</u> regarding a particular police officer's previous misconduct and the city's failure to investigate or punish that conduct) (emphasis added).  Plaintiffs must show that the City "failed to investigate previous incidents before a court could conclude the deputies at the time of the shooting believed a municipal custom allowed them to violate [plaintiffs'] rights with impunity."  *See id.*

Plaintiffs have not presented "detailed evidence," about a "continuing, widespread, persistent pattern of unconstitutional conduct" by the City of Ferguson or that any such pattern was a motivating force regarding the alleged use of force or arrests by the officers in this suit. No such evidence exists. Aside from former City of Ferguson Police Officer Justin Cosma, Plaintiffs are unable to establish any of the officers allegedly using force or arresting Plaintiffs in this lawsuit were employed by Ferguson or were subject to the City of Ferguson's review, supervision, or potential discipline. Plaintiffs have presented <u>no</u> evidence there were previous investigations that were inadequate, or that such investigations were a moving force in Defendant Officers' actions toward Plaintiffs. *See Mettler*, 165 F.3d at 1205. The evidence fails to establish that there was any pattern in the City which caused any of the alleged constitutional violations. *See McCoy II*, 411 at 923. Accordingly, the City is entitled to summary judgment regarding Plaintiffs' unconstitutional "custom" claim.

    c. <u>Plaintiffs have not established the City was responsible for training or supervising Defendant Officers[9] or that such officers received inadequate training which was the moving force behind any constitutional violation to Plaintiffs.</u>

Plaintiffs alleged that the City has inadequately trained, supervised, controlled, directed, monitored, and disciplined the Defendant Officers, which resulted in the violation of Plaintiffs' rights. Doc. No. 81, ¶¶ 58, 82, 100, 140, 159, 176.

In their claim regarding inadequate training, Plaintiffs must show that (1) the police department's training was inadequate, (2) this failure to train "reflects a deliberate and conscious choice" by the department, and (3) the alleged deficiency in the training procedures actually caused harm. *Teasley v. Forler*, 548 F. Supp. 2d 694, 706 (E.D. Mo. 2008); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 380 (1989); *Ambrose v. Young*, 474 F.3d 1070, 1079 (8th

---

[9] The City excludes Officer Cosma with respect to supervision in this discussion, as there's no evidence Officer Cosma was involved in any use of force or arrest.

Cir.2007); *see Jane Doe A. ex rel. Jane Doe B. v. Special Sch. Dist. of St. Louis County*, 901 F.2d 642, 645 (8th Cir. 1990) (setting out standard for individual liability, which mirrors standard for municipal liability); *Herrera v. Valentine*, 653 F.2d 1220, 1224 (8th Cir. 1981) (stating failure to train or doing so in a grossly negligent manner exhibits a deliberate indifference to the resulting violations of a citizen's constitutional rights).

The Eighth Circuit has found that the City of Cape Girardeau was not deliberately indifferent to an arrestee's constitutional rights for failure to train the officer who made the arrest for violating Missouri's flag desecration statute, as required to support § 1983 liability against city, even though flag desecration statute violated First Amendment; city was not responsible for training officer, instead, state law required that all officers be trained by Missouri Department of Public Safety, officer participated in the required and state-approved 600–hour initial training program and received continuing education training from approved providers, and city was not responsible for the training program's curriculum. *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160–61 (8th Cir. 2014); R.S.Mo. §§ 590.030 and 590.050; *see also Teasley v. Forler*, 548 F. Supp.2d 694 (E.D. Mo. 2008); ex. U, Belmar Dep. 124:18–127:9.

With respect to Plaintiff's claims regarding failure to supervise, control, direct, monitor, and discipline, there is no evidence the City of Ferguson was responsible (or if somehow they were responsible, that any failure to do so was the motivating force behind any alleged constitutional violation) for such activity pertaining to any of the officers at issue in this matter aside from P.O. Cosma (who did not use force or arrest any individual). *See Teasley v. Forler*, 548 F. Supp.2d 694, 707 (E.D. Mo. 2008) (discussing failure to discipline, supervise, and control, and that there must be, *inter alia*, a tacit authorization of the conduct by the policymakers after being put on notice that was the moving force behind any injury). As

35

Plaintiffs cannot show the City of Ferguson was responsible for the activity of St. Louis County police officers, the City is entitled to summary judgment regarding Plaintiffs' claims.

4. *Plaintiffs' claim for punitive damages against the City cannot prevail as a matter of law.*

In the WHEREFORE clause of Plaintiffs' counts, Plaintiffs attempt to request punitive damages against the City. Punitive damages, as a matter of law, are not recoverable against a municipality under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1982); *Robinson v. City of St. Charles, Mo.*, 972 F.2d 974, 978 n.1 (8th Cir. 1992) (S.J. Wellford, concurring). Accordingly, the City is entitled to summary judgment upon Plaintiffs' request for relief against the City in the form of punitive damages.

## IV.    CONCLUSION

WHEREFORE, the Defendants respectfully request that this Court enter its Order and Judgment granting Defendants' Motion for Summary Judgment on all counts, for costs, and for such further relief this Court deems just and proper.

/s/Peter J. Dunne

Peter J. Dunne   #31482MO
Robert T. Plunkert   #62064MO
PITZER SNODGRASS, P.C.
Attorneys for Defendants City of Ferguson,
Chief Thomas Jackson, Officers Justin Cosma,
Matt Delia, Devouton, and McKinnon
100 South Fourth Street, Suite 400
St. Louis, Missouri 63102-1821
(314) 421-5545
(314) 421-3144 (Fax)

{01606521.DOCX;1}

I hereby certify that a copy of the foregoing filed electronically with the Clerk of the Court this 7th day of April, 2016, to be served by operation of the Court's electronic filing system upon the following:

- Gregory L. Lattimer, Attorney for Plaintiffs, 1200 G. Street, N.W., Suite 800, Washington, D.C. 20005, lattlaw@aol.com;
- Malik Z. Shabazz, Attorney for Plaintiffs, 1200 G. Street, N.W., Suite 800, Washington, D.C. 20005, attorney.shabazz@yahoo.com;
- Reginald A. Green, Attorney for Plaintiffs, One Georgia Center, Suite 605, 600 West Peachtree Street, N.W., Atlanta, Georgia 30308, rgreene@greenelegalgroup.com; and
- Michael E. Hughes, Attorney for Defendants St. Louis County and Chief Jon Belmar, 41 S. Central Ave, Clayton MO 63105, mhughes2@stlouisco.com. pgunn@stlouisco.com.

/s/ Peter J. Dunne

{01606521.DOCX;1}