IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY WHITE, et al., | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Cause No. 14-cv-01490 - HEA |
| | ) | |
| THOMAS JACKSON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW OF THE ST. LOUIS COUNTY DEFENDANTS
IN SUPPORT OF THEIR MOTION TO EXCLUDE EXPERT TESTIMONY
PURSUANT TO DAUBERT**

COME NOW Defendants Jon Belmar, Sgt. David Ryan, Officer Terence McCoy, Officer Michael McCann, Det. Derik Jackson, Det. Joseph Patterson, Det. Aaron Vinson, Det. William Bates, Det. Nicholas Payne, Officer Daniel Hill, Officer Antonio Valentine, and St. Louis County, Missouri, ("St. Louis County Defendants") and submit the following Memorandum of Law in Support of their Motion to Exclude Expert Testimony Pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993).

**I.      Introduction**

Plaintiffs are individuals who went to Ferguson, Missouri between August 11 and 13, 2014 to either participate in protests following the death of Michael Brown or to observe unfolding events.  Each claims to have had an encounter with the police.  They sue the above named St. Louis County Defendants, in addition to three officers from the City of Maryland Heights, the former City of Ferguson Police Chief and the City of Ferguson for state law false arrest, battery, and assault, and for federal Fourth Amendment violations and failure to train, supervise and discipline.  They endorsed Robert R. Pusins as an expert to offer opinions included

1

in his Rule 26 Report. For the reasons to follow, the St. Louis County Defendants ask the Court to exclude Mr. Pusins as an expert in this matter.

## II. Standard of Review and Legal Requirements

The court of appeals reviews the district court's evidentiary ruling for an abuse of discretion. *Schmidt v. City of Bella Villa,* 557 F.3d 564, 570 (8th Cir. 2009). The admission of expert testimony in federal court is governed by Federal Rule of Evidence 702. The Supreme Court interpreted Rule 702 to require district courts to be certain that expert evidence based on scientific, technical or other specialized knowledge is "not only relevant, but reliable." *Daubert,* 509 U.S. at 589. The court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *Id.* at 592–93.

The Eighth Circuit has delineated three criteria for an expert's testimony to be admissible under Rule 702. "First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy." *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir.2001). "Second, the proposed witness must be qualified to assist the finder of fact." *Id.* (citation omitted). "Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires." *Id*. To meet the third requirement, the testimony must be "based on sufficient facts or data" and be "the product of reliable principles and methods"; and the expert must have "reliably applied the principles and methods to the facts of the case." Fed.R.Evid. 702(b)-(d).

In general, "the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the

opinion in cross-examination." *Nebraska Plastics, Inc. v. Holland Colors Americas, Inc.,* 408 F.3d 410, 416 (8th Cir.2005) (quoted case omitted). Nevertheless, "if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury, it must be excluded." *Lawrey v. Good Samaritan Hosp.* 751 F.3d 947, 952-53 (8th Cir. 2014) (quoting *Nebraska Plastics,* 408 F.3d at 416). An expert opinion is fundamentally unsupported when it "fails to consider the relevant facts of the case." *Id.*

**III.     Argument**

The St. Louis County defendants ask the Court to exclude Mr. Pusins' testimony because it does not meet the criteria for admissibility under Federal Rule of Evidence 702.

**A.  *Opinion No. 1***

Mr. Pusins' first opinion is that defendants did not prepare sufficient documentation surrounding the arrest of each plaintiff. He faults defendants for police reports that were prepared months after the August 11 through 13 arrests, and for not preparing probable cause statements, charging documents, and affidavits to support the existence of probable cause. He states that the failure to prepare probable cause denies *defendants* due process.

Defendants ask the Court to exclude the testimony because it is irrelevant to the issues raised in the Complaint, and does not assist the trier of fact. First, there are no allegations in the Complaint that any plaintiff was denied due process on account of the charging process or criminal proceedings. Regardless, Mr. Pusins admitted that the documentation does not affect whether plaintiffs were indeed arrested on probable cause or whether any of them used excessive force. Pusins Deposition Exhibit A Page 236-37. Whether any of the plaintiffs' civil rights were violated or whether they were the subject of state law torts occurred at the time of the encounter with the police. Subsequent issues related to the paperwork are irrelevant to the claims asserted.

The Affidavit of Chief Jon Belmar establishes that the County Police Department took measures to ensure that all arrests were indeed tracked, along with the name of the arresting officer and the reason for the arrests. The County is able to identify the officers associated with each arrest, and the probable cause articulated to support each arrest. Persons arrested were taken to the Justice Center where they were booked, and then released. No charges were issued at that time. Charges were only issued later after the police reports were completed, and the responsible officer made a warrant application with the Prosecuting Attorney or County Counselor's Office. The existence of probable cause for an arrest, and prosecution on charges are two separate issues. Probable cause is determined at the moment the arrest was made, and any later developed facts are irrelevant to the probable cause analysis for an arrest. *Fisher v. Wal-Mart Stores, Inc.,* 619 F.3d 811, 816 (8th Cir. 2010). Whether the charges are accurate or a person is even acquitted of them is not even relevant to the existence of probable cause to arrest. *Baker v. McCollan,* 443 U.S. 137, 145 (1979): *Clay v. Conlee,* 815 F.2d 1164, 1167-68 (8th Cir. 1987).

Moreover, co-defendants cite multiple authorities in their Memorandum in Support of their Motion to Exclude the Testimony for the proposition that a delay in preparing police reports does not state a claim for relief. In addition, in *Shock v. Tester,* 405 F.2d 852 (8th Cir. 1969), the court held that a party does not have a constitutional right to be free from even a false police report. See also *A.J. ex rel. Dixon v. Tanksley,* 94 F.Supp.3d 1061, 1071 (E.D. Mo. 2015).

Nor is the opinion that officers should have prepared "charging documents" which contained probable cause statements accurate or relevant. Chief Belmar avers that he made the decision to release persons arrested after booking, and charges would be issued later after the

police reports were prepared. Any charges which may have been issued were done upon Information from the Prosecuting Attorney or County Counselor.

**B.** *Opinion No. 2*

Mr. Pusins' next opinion is that the delay in the preparation of the police reports prevented supervisory oversight because supervisors were unable to review the work of those under their command until much later. Defendants ask the Court to exclude the testimony because it is fundamentally unsupported by the evidence, constitutes undue speculation, and will not assist the trier of fact.

The Affidavit of Chief Belmar establishes that he made the decision on August 11, 2014, to relieve the arresting officers of the obligation of writing police reports, and to task a detective with report writing responsibilities and tracking arrests during the Ferguson riots. Reports would still need to be reviewed and approved up through the chain of command. He also gave the directive that St. Louis County Police Officers had to be able to identify each person arrested, the arresting officer, and the reason for an arrest in order to be certain that there was probable cause for each arrest. Nor did the County ever suspend the requirement that use of force reports had to be prepared and approved up through chain of command in accordance with policy.

In order to hold supervisors or the County responsible for a constitutional violation, plaintiffs must show that a custom of laxness or inaction toward allegations of misconduct, and that such custom was the moving force behind the constitutional violation. *Board of County Comm'rs v. Brown,* 520 U.S. 397 (1997); *Ware v. Jackson County,* 150 F.3d 873, 885 (8th Cir. 1998).

Mr. Pusins agrees that prior to August 11, 2014, St. Louis County did not have a custom of report writing delays. (Pusins' Depo. P. 140). He does not claim that the use of force policy

5

which included the procedures for preparing use of force reports was deficient. *Id.* at P. 254. Chief Belmar avers that use of force report review is not regularly completed within the two day time frame in any event. Nor does Mr. Pusins offer the opinion that unconstitutional uses of force or false arrests were so widespread, prevalent, and persistent within the Department prior to August 11, 2014, so as to constitute a custom. *Ware,* 150 F. 3d at 880-81.

All of the plaintiffs had they police encounters over which they sue between August 11 and 13. The practice of delegating the report writing function to a detective did not begin until August 11. Any connection between report writing delays which began on August 11, and the ability to supervise the actions of the named individual defendants on August 11, 12 and 13, is so attenuated as fall below the test of admissibility under Rule 702.

Moreover, even if supervisors were hampered in their ability to oversee the work of subordinates through report writing delays, Chief Belmar avers that supervisors were on the ground with the police officers. The arrest teams were directly supervised by commanders of all ranks. Supervisors did not have to rely on police reports or use of force reports to determine whether subordinates followed policy. Supervisors were able to observe the actions of police officers with their own eyes. The opinions offered by Mr. Pusins regarding supervision do nothing to establish the deliberate indifference required to prove supervisory inadequacies under 42 U.S.C. §1983. See *Mettler v. Whitledge,* 165 F.3d 1197, 1204-05 (8th Cir. 1999).

**C.** *Opinion No. 3*

Mr. Pusins' third opinion is that defendants did not document or review the use of force. His reasoning for documenting the use of force is the same as it is for preparing timely police reports. Defendants ask the Court to exclude the opinion for the same reasons they ask the Court to exclude Opinions 1 and 2. Defendants deny any such failures as noted by Chief Belmar's

affidavit, but regardless, any claimed deficiencies in documenting the use of force did not cause any alleged constitutional violations.

### D. Opinion No. 4

Mr. Pusins' final opinion is that there were no decontamination procedures, or protocols for first aid and treatment to arrested persons. From the outset, as pointed out by co-defendants, there are no allegations in the Complaint pertaining to decontamination. For this reason alone the opinion is irrelevant, and should be excluded.

Moreover, Mr. Pusins does not provide a basis or foundation for or his conclusions. He testified that he was not aware of any procedures in place, and that a decontamination post should have been set up. (Pusin's Deposition P. 211) The Affidavit of Chief Belmar proves that St. Louis County indeed had a decontamination post, and procedures in place for addressing contamination and injuries in Ferguson.

Further, Mr. Pusins agreed that front line officers or members of the arrest team are not responsible for decontamination or offering first aid. *Id. at 221-22.* His opinion is a general one, and not directed to any particular plaintiff or defendant. And even if a particular plaintiff's exposure to spray or gas was not appropriately attended to by an officer, Mr. Pusins' testimony cannot support liability against the County or Chief Belmar based on an isolated instance of failure to make available to a particular plaintiff resources at hand. *Board of County Comm'rs,* 520 U.S. at 1391-92. Mr. Pusins' opinions do not demonstrate a nexus between plaintiffs' claims and any action attributable to any of the defendants.

### E. Testimony regard DOJ and Cops reports

The St. Louis County Defendants join in the request of the co-defendants to exclude the any testimony regarding the DOJ and COPS reports.

7

**F.** *Conclusion*

Therefore, for the above stated reasons, the St. Louis County Defendants ask the Court to grant the instant motion, and to exclude the expert opinions of Robert Pusins.

PETER J. KRANE
COUNTY COUNSELOR


\_\_/s/ Priscilla F. Gunn_____
Michael E. Hughes #23360MO
Associate County Counsel
Mhughes2@stlouisco.com
Priscilla F. Gunn #29729MO
Assistant County Counselor
Pgunn@stlouisco.com
41 S. Central, Ninth Floor
Clayton, MO 63105
(314) 615-7042
(314) 615-3732 (fax)

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was sent by the Court's electronic filing system this on this 29th day of April, 2016 to all counsel of record.