| | |
|---|---|
| ST. LOUIS COUNTY POLICE DEPARTMENT<br>OFFICE OF THE CHIEF OF POLICE | U-1<br>April 7, 2010 |

| Index as: | | Cancels: |
|---|---|---|
| Administrative Detachment | Nondeadly Force | General Order 07-29 |
| Deadly Force | Psychological Support Program | Special Order 09-316 |
| Firearm **Discharge** Procedures | Use of Force | Special Order 09-317 |
| Force, Use of | | |

## USE OF FORCE

I. <u>PURPOSE</u>

The purpose of this General Order is to establish policy and procedures for the use of deadly and nondeadly force by members of this Department.

II. <u>USE OF DEADLY FORCE - REGULATIONS</u>

Officers are authorized to use deadly force in order to:

A. Protect themselves or others from what is reasonably believed to be an imminent threat of death or serious physical injury; or

B. Effect the capture or prevent the escape of a suspect when there is probable cause to believe that:

 1. The suspect committed or attempted to commit a felony; <u>and</u>

 2. The crime involved the use or threatened use of deadly force; <u>and</u>

 3. There is a substantial risk that the fleeing suspect will cause death or serious physical injury if apprehension is delayed.

C. If feasible, a verbal warning shall be given prior to the use of deadly force.

D. More restrictive parameters for use of deadly force and authorization to carry or use lethal weapons for reserve police officers and security officers may be outlined in their respective manuals.

III. <u>USE OF NONDEADLY FORCE - REGULATIONS</u>

A. Where deadly force is not authorized, officers should assess the incident in order to determine which nondeadly technique or less lethal weapon will best de-escalate the incident and bring it under control in a safe manner. Only the appropriate amount of force necessary to bring an incident under control is authorized. In making an arrest, no more force shall be used than is reasonably necessary for the safe custody of the prisoner or for overcoming any resistance that may be offered and for ensuring the delivery of the prisoner into safekeeping. Officers are not authorized to use chokeholds, neck restraints, shoulder pins or similar weaponless control techniques with a potential for serious injury.



EXHIBIT
County
Exhibit A

100318

B. <u>Parameters for Use of Nondeadly Force</u>

Officers are authorized to use nondeadly force, including the use of Department-approved less lethal weapons for resolution of incidents, as follows:

1. To protect themselves or another from physical harm; or
2. To restrain or subdue a resistant individual; or
3. To bring an unlawful situation safely and effectively under control.

IV. <u>GENERAL</u>

A. This Order will only form the basis for Departmental administrative review and possible corrective action concerning conduct allegedly performed without regard for these guidelines and policy, although that conduct may conform to all legal norms of care and safety.

B. The Order is for Department use only and does not apply in any criminal or civil proceedings. The Order should not be construed as a creation of a higher legal standard of safety or care in an evidentiary sense with respect to third party claims.

C. The Department recognizes and respects the value and special integrity of each human life. In vesting police officers, reserve officers and security officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Officers are confronted with situations where control must be exercised to effect arrests and to protect the public safety. Control may be achieved verbally through instruction, advice, warnings and persuasion, or by the use of physical force.

D. While the use of reasonable physical force may be necessary in situations which cannot be otherwise controlled, force may not be resorted to unless other reasonable alternatives have been exhausted or would likely be ineffective under a particular set of circumstances. Therefore, it is the policy of this Department that officers shall use only the force that appears reasonably necessary to effectively bring an incident under control, while protecting the lives and safety of the officer or another. Verbal or physical abuse is forbidden.

V. <u>RESISTANCE CONTROL GUIDELINES</u>

This Department subscribes to, and trains its officers in, the concept of controlling resistive behavior with techniques that employ reasonable force relative to the suspect's actions. As the level of resistance increases, so may appropriate levels of response:

| <u>Levels of Resistance</u> | <u>Response options permitted if reasonable under the circumstances</u> |
|---|---|
| Psychological Intimidation<br>Verbal Non-compliance<br>(Oral refusal to comply) | Officer Presence<br>Verbal Direction<br>(Commands of direction or arrest) |
| Passive Resistance<br>(Ignoring officer's commands but taking no further action to resist) | Soft Empty Hand Control (Pain compliance with verbal reinforcement), joint locks, or any level of response previously listed. |

100319

| | |
|---|---|
| Defensive Resistance (Physically resists, non-assaultive) | Taser, **Oleoresin Capsicum Aerosols**, Hard Empty Hand Control (Stun blows, motor dysfunction, etc.), or any level of response previously listed. |
| Active Aggression (Overt actions of assault) | Intermediate Weapons Baton strikes, chemical agents, special weapons, impact munitions, distraction devices, etc., or any level of response previously listed. |
| Aggravated Active Aggression (Subject's behavior likely to cause death or serious physical injury) | Deadly Force, or any level of response previously listed. |

## VI. RESPONSIBILITIES OF DEPARTMENT PERSONNEL

A. <u>Command and Supervisory Responsibility</u>

Department commanders and supervisors have a responsibility to closely monitor the day-to-day performance of employees under their supervision. Command and supervisory personnel must maintain an awareness of any employee experiencing problems in dealing with the public and make recommendations for specific remedial action, training or counseling when appropriate. Commanders and supervisors are accountable for the compliance of their subordinates with the provisions of this Order.

B. <u>Individual Employee Responsibility</u>

1. Every employee of this Department has the responsibility to immediately contact the Bureau of Professional **Standards** or the Department Duty officer and report any act which they believe involves the use of excessive force as described in this Order.

2. Any employee who fails to report physical or verbal abuse against any citizen by another member of this Department is subject to disciplinary action.

C. <u>Bureau of Professional **Standards** Responsibility</u>

1. In addition to investigating alleged acts of misconduct, the Bureau of Professional **Standards** will also have the responsibility of administering a counseling program to prevent similar complaints from occurring in the future.

2. The Bureau of Professional **Standards** shall conduct a documented annual analysis and publish a quarterly summary report of incidents involving the use of force by Department employees and the circumstances surrounding these incidents. The Bureau of Professional **Standards** shall retain the Supervisor's Use of Force Review during the calendar year in which the incident occurred or until the investigation is complete.

## VII. FIREARM DISCHARGE PROCEDURES

A. <u>Procedures to be Followed When a Firearm is Discharged (Gunshot Wound Inflicted or a Police Officer is the Victim of First Degree Assault)</u>

1. <u>When an officer has discharged a firearm</u> causing a gunshot wound to be inflicted to any person, or when an officer has been shot or is the victim of first degree

100320

assault, the Bureau of Crimes Against Persons shall investigate the circumstances of the incident.

   a. If an officer has inflicted a gunshot wound, the on-duty supervisor, Crimes Against Persons, shall evaluate the use of the deadly force and recommend if it was justified and in accordance with this General Order.

   b. **At the conclusion of the investigation,** the on-duty supervisor, Crimes Against Persons, shall prepare a Supervisor's Use of Force Review (F-319R) and forward it through the chain of command to the Chief. This form shall accompany a copy of the original report and support the conclusion that the use of deadly force was or was not justified and in accordance with this Order. This form will then be forwarded to the Bureau of Professional **Standards** for review.

2. When an officer has been shot or an officer has inflicted a gunshot wound upon another person, the Bureau of Communications shall be notified immediately either by the officer involved in the incident or the first police officer on the scene. The Bureau of Communications shall make the required notifications, including the summoning of emergency medical aid as required. Commissioned employees at the scene of such an incident are responsible for ensuring that medical care is rendered to anyone in need of such treatment.

3. The watch commander shall:

   a. respond to the scene and be responsible for the command and protection of the scene until the arrival of the Crimes Against Persons investigator(s); and

   b. assist, as necessary, in the investigation of the incident and arrange to have a police officer assigned to the Division of Patrol prepare the original report.

4. Upon notification of a firearm discharge (gunshot wound inflicted) or at the request of the officer's commanding officer, the Bureau of Professional **Standards** will open an administrative review.

5. A copy of the completed investigative report shall be forwarded by the Division of Criminal Investigation to the Chief of Police. The report will then be forwarded to the Bureau of Professional **Standards** for final disposition.

B. <u>Procedures to be Followed When a Firearm is Discharged (No Gunshot Wound Inflicted, unknown if Wound Inflicted or Animal Destroyed)</u>

1. Whenever a firearm is discharged by an officer, or their firearm is discharged by another person, the officer shall:

   a. Immediately notify the on-duty watch commander;

   b. Notify the Bureau of Communications watch supervisor as soon as time and circumstances permit, but no later than one (1) hour after the discharge of the firearm; and

   c. Prepare a police report detailing all circumstances surrounding the discharge. A copy of the report shall be forwarded through the chain of command to the Chief.

2. The watch commander shall:

   a. Respond to the scene and ensure that the police officer preparing the report identifies all known witnesses to the incident; and

   b. Prepare a Supervisor's Use of Force Review (F-319R) and forward it through the chain of command to the Chief. This form shall accompany a copy of the

100321

required police report. The form shall contain the observations and conclusions in addition to whether or not the discharge was justified and in accordance with this General Order. This form and copy of the police report will be forwarded to the Bureau of Professional **Standards** for review and final disposition.

   3. The procedure outlined above will not be required when a firearm is discharged as under Section VIII.A.3.

   4. A supervisor is not required to respond to the scene when a non-domesticated animal is destroyed but shall be notified, along with the dispatcher, by the officer prior to that officer discharging his weapon. A police report is not required when a non-domesticated animal is destroyed but a Supervisor's Use of Force Review shall be completed by the supervisor who was notified of the animal being destroyed.

VIII. <u>OTHER WEAPON DISCHARGE REGULATIONS</u>

   A. <u>A Police Officer May Also Discharge a Firearm Under the Following Circumstances</u>

      1. To destroy an animal which presents a substantial risk of harm to the officer or another, or when an animal is so badly injured that it should be destroyed to prevent additional suffering.

      2. To give alarm or to call assistance in an emergency when no other means can reasonably be used, and then only in a safe direction.

      3. At a sporting event, to include hunting and organized shooting matches and target practice where the discharging of a firearm is not in violation of any law or ordinance and all safety procedures can be followed, or at the Department Range.

   B. <u>Firearms Shall Not be Discharged Under the Following Circumstances</u>

      1. As a warning shot; or

      2. At or from a moving vehicle, unless the occupant(s) of the vehicle represents a direct and immediate threat to the life or safety of the officer or an innocent person, and then only as a last resort; Officers shall avoid tactics that could place them in a position where a vehicle could be used as a weapon against them (i.e. reaching into the vehicle to turn the car off and secure the keys, approaching the vehicle from the front, etc.). When confronted with an oncoming vehicle, officers shall make every attempt to move out of its path.

IX. <u>NONDEADLY USE OF FORCE PROCEDURES</u>

   A. The precinct watch commander or appropriate bureau commander must be notified immediately whenever an officer uses or attempts to use force under extraordinary circumstances that vary from the standard handcuffing process or detention techniques.

   B. In those situations where nondeadly force is used, the precinct watch commander/supervisor and/or bureau commander/supervisor must respond to the scene. When an officer or suspect has sustained a serious injury, the responding commander/supervisor must ensure that appropriate notifications are made.

      1. Commissioned employees at the scene of such an incident are responsible for ensuring that appropriate medical care is rendered to anyone in need of such treatment. **A fit for confinement will be obtained any time an impact weapon**

or impact munitions (e.g. ASP™ Collapsible Baton, bean bag/sock round, etc.) are utilized on a suspect.

2. The commander/supervisor on the scene is responsible for ensuring:

   a. A thorough investigation is conducted and complete area canvass is immediately undertaken to locate, identify and interview all witnesses to the incident; <u>and</u>

   b. Anyone arrested as a result of such an incident is escorted in an ambulance or transported in a police vehicle by a commissioned employee not directly involved in the incident; <u>and</u>

   c. A complete and accurate police report as described in Section X.D.1-8 is prepared and warrant application, if necessary, occurs. In the case of a felony resisting, the suspect shall be placed on a 24 hour hold and warrant application shall be made within that period.

3. The investigating commander/supervisor not directly involved in the use of force shall complete a Supervisor's Use of Force Review when nondeadly force is used. The commander/supervisor may use the back of the Supervisor's Use of Force Review to make any administrative comments regarding the incident, including any recommendations that the investigation should continue. However, any statements by witnesses or suspects shall be documented in the original or supplemental police report as required in Section X.D.1-8. The commander/supervisor is not required to complete a supplemental police report unless the statements given to the supervisor contradict those given to the reporting officer.

4. The Supervisor's Use of Force Review, the police report and any supplemental reports shall be forwarded through the chain of command to the Bureau of Professional **Standards** without delay.

C. <u>Supervisor's Use of Force Review</u>

The following examples are intended to clarify circumstances when a Supervisor's Use of Force Review is required.

1. A police officer places a suspect under arrest. The officer directs the suspect to place his hands behind his back. The suspect refuses to follow direction, stating he does not want to be handcuffed. The officer grabs the suspect's hand and applies a wrist lock to control the individual. The suspect, experiencing pain as a result of the wrist lock, complies with the officer's request and is handcuffed. A Supervisor's Use of Force Review does not need to be completed unless the suspect claims injury or the officer believes the suspect was injured as a result of this control technique. However, verbal notification must be made to the watch commander or bureau commander as required in Section IX.A.

2. A police officer places a suspect under arrest. As the officer is applying the handcuffs, the suspect pulls his arm free and attempts to run from the officer. The officer chases the subject, tackles the suspect and applies the handcuffs. Due to the fact that there were extraordinary circumstances, a Supervisor's Use of Force Review must be completed.

3. A police officer receives a call for a residential burglar alarm sounding. Upon arrival, the officer finds an open door and enters the house. While searching, he observes someone standing in the bedroom. The police officer points his weapon

100323

toward the individual and orders the person to raise his hands. The person turns out to be the homeowner. Due to the fact that the officer only threatened to use but did not use or attempt to use force, a Supervisor's Use of Force Review does not need to be completed.

4. Police officers receive a call for a disturbance. Upon arrival, two subjects are threatening each other and the officers believe an assault is imminent. One officer grabs a subject by the arm and pulls him back; the other officer uses his body to restrain the second subject. A Supervisor's Use of Force Review does not have to be completed for either of these officers.

D. Required Police Report Components

Whenever an officer uses or attempts to use force under extraordinary circumstances that vary from the standard handcuffing process or detention techniques, the police report and supplemental report, if any, shall contain the following information:

1. The number and names of officers involved in the incident, their method of arrival (marked police unit vs. unmarked vehicle) and whether the officers were in uniform or plain clothes apparel;

2. A description of the scene upon arrival and the verbal commands initially given to the suspect;

3. The subject's reaction to the officer(s):
    a. Verbal response(s);
    b. Body language;
    c. Physical actions;

4. The suspect's condition, i.e., influence of drugs or alcohol, mental, highly agitated, etc;

5. The officer's action:
    a. Type of control methods used or attempted;
    b. The duration of the subject's resistance;
    c. Type of de-escalation methods used (immediate removal, etc.);
    d. Method(s) of restraint (handcuffs, leg irons, etc.);

6. Name of transporting officer, method of transport (patrol vehicle, cage car, conveyance van), transport destination, length of transport and the subject's demeanor and actions during transport;

7. Name of supervisor who interviewed witness(es), if applicable, and name(s) of any witness(es) and their statement(s);

8. Use of Force CARE reports will only be approved by a commissioned supervisor.

X. USE OF FORCE WHILE OFF-DUTY OR OUTSIDE ST. LOUIS COUNTY

A. Commissioned employees shall follow the guidelines established in the Departmental General Order entitled "Off Duty Arrests by Police Officers" when determining the appropriate response to a situation while off-duty.

B. Commissioned employees that use force in a law enforcement capacity while off-duty or outside of St. Louis County shall immediately request the appropriate law enforcement agency to respond to the scene and comply with all legal requirements of

100324

the venue. The employee shall ensure that appropriate medical care is rendered to anyone in need of such treatment.

C. The employee shall notify the Bureau of Communications of the incident as soon as possible.

1. When the incident occurs within St. Louis County procedures outlined previously in this General Order shall be followed. Should the place of occurrence be within an incorporated area, the employee shall cooperate with the local authorities if they also desire a report.

2. When the incident occurs within an adjoining Missouri county or the City of St. Louis and the employee is on-duty, the Bureau of Communications shall make notification to the employee's bureau/watch commander who shall respond to the scene and cooperate with the local authorities in the investigation. The commander shall prepare a Supervisor's Use of Force Review and attach a copy of the investigating agency's report.

3. In all other use of force incidents outside St. Louis County, the Bureau of Communications shall make notification to the on-call representative of the Bureau of Professional **Standards** who shall determine if a response to the scene is necessary. The Bureau of Professional **Standards** shall prepare a Supervisor's Use of Force Review and contact the investigating agency to determine if the incident was justified. A copy of the investigating agency's report shall be attached to the Supervisor's Use of Force Review and submitted to the employee's commanding officer for review.

XI. PSYCHOLOGICAL SUPPORT PROGRAM

A. The Department recognizes that employees, by virtue of their profession, may encounter situations in which they must take action that may result in psychological trauma for the employee. Therefore, it is the policy of the Department to assist employees in understanding the impact of such incidents by providing them with a professional support program. The purpose of this program is to provide psychological support for employees who are involved in a critical incident.

B. When an employee's duty-related actions or use of force results in serious physical injury of a person, the employee shall be placed in administrative status from their duty assignment, pending a review by the employee's supervisor/commander to determine if the employee should be placed on administrative detachment. When the employee's actions result in the death of a person, the employee shall be placed on administrative detachment immediately upon completion of their preliminary report of the incident. This administrative detachment is mandatory and shall not be interpreted to imply or indicate that the employee acted improperly.

C. The employee placed on administrative detachment will be referred to the St. Louis County Employee's Assistance Program by their commanding officer for a counseling session with a specialist in post critical incident counseling. This referral will be for support purposes, allowing the employee to discuss any problems resulting from the incident. The contents of this session will remain confidential and will not be available to the Department or used by the Department in subsequent proceedings. In exceptional circumstances, the employee may be referred to a mental health professional in preference to the Employee Assistance Program.

D. The commanding officer of the involved employee is responsible for notifying the **Commander,** Bureau of Staff Services, who will schedule the employee for an interview with the Department psychologist.

100325

E. This interview with the Department psychologist will be used to determine if the employee is psychologically fit to return to duty. Information discussed during this interview and the psychologist's recommendation, while treated in a confidential manner, will be provided to the Department in a written report.

F. Participation in this program is mandatory for a commissioned employee who uses a weapon wherein the death of a person results. The Chief may authorize participation in this program for employees involved in other critical incidents.

## XII. DEFINITIONS

A. Officer - Commissioned employee of this Department regardless of rank, any commissioned employee of another agency who is operationally attached to this Department, reserve police officers and security officers. Where the term "police officer" is used in this Order, it shall only refer to commissioned personnel, specifically excluding security officers.

B. Deadly Force - That force which is likely to cause death or serious physical injury.

C. Nondeadly Force - Force less than deadly force.

D. Lethal Weapon - Any weapon that is likely to cause death when properly used according to training.

E. Less Lethal Weapon - A weapon not likely to cause death when properly used according to training.

F. Reasonably Believe - Similar to probable cause, it is determined by a totality of the facts and circumstances known to the officers at the time and the logical inferences that may be drawn from them.

G. Serious Physical Injury - An injury that creates a substantial risk of death or that causes severe disfigurement or protracted loss or impairment of the function of any body part.

Adopted by Command Staff

By order of:

COLONEL TIMOTHY E. FITCH
Chief of Police

TF:gv

Approved at the regular Board meeting of April 7, 2010

GREGORY G. SANSONE
Chairman

REV. JIMMY L. BROWN
Secretary

Distribution
All Department Personnel

CALEA Reference
1.2.2, 1.3.1, 1.3.2, 1.3.3, 1.3.4, 1.3.5, 1.3.6, 1.3.7, 1.3.8, 1.3.9, 1.3.10, **1.3.11**, 1.3.12, 1.3.13, 22.2.1, **22.2.4, 22.2.6**, 22.2.10, **35.1.9, 41.2.4, 70.3.1**, 81.2.4

100326