IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRACEY WHITE, et al. | ) | |
| Plaintiffs | ) ) ) | |
| v. | ) ) | Cause No. 14-cv-01490 - HEA |
| THOMAS JACKSON, et al. | ) ) | |
| Defendants. | ) ) | |

## AFFIDAVIT OF OFFICER MATT BURNS

Comes now Matt Burns, on personal knowledge, on his oath, states as follows:

1. I am a St. Louis County police officer.

2. During the period of August 10th to 13th and beyond, I was on duty for 12 hour shifts, and if necessary longer on behalf of the St. Louis County police department assigned to duties in the City of Ferguson.

3. During this period of time, I observed rocks and bottles and other objects thrown at the police, and every night that I was there during this period I heard gunshots; one time I could see muzzle flashes; and one time I actually heard a bullet whistling nearby.

4. On August 13th, 2014, I was a member of the bureau of drug enforcement of the St. Louis County police department, and by then drug enforcement had been my assignment for approximately 2 ½-3 years.

5. On the night, of August 13th, 2014, the members of the drug enforcement bureau, Det Derik Jackson, Det. Joe Patterson, Det. William Bates, Det. Aaron Vinson, and Det. Nick Payne, and myself, were assigned as an arrest team under the supervision of Sgt.

1



Brandt Wathen of the St. Louis County Police Department. At that time we reported to the Buzz Westfall Command Post for instructions and assignment as needed.

6. On the night of August 13th, 2014, at approximately 9 p.m, our arrest team was assigned to a police skirmish line on West Florissant near Highmont Rd. Nearby was Sgt. Wathen, and also nearby were higher ranked officers.

7. If an arrest was ever made by the arrest team, the arrested person would right away or, shortly thereafter, be turned over to other officers for conveyance, while the arrest team would return to the skirmish line.

8. All members of our group of detectives, including myself, were wearing jeans and T-shirts. In addition, we wore a vest that had the word "Police" on the front and back, and in addition we had our badges exposed. We were not dressed in military uniforms.

9. Rocks and bottles were being thrown at the police. A Molotov cocktail was thrown at a car wash building which was next to where we were standing and the roof of that building started burning.

10. Numerous orders to disperse were made to the crowd. The decision to issue orders to disperse were not made by the arrest team, but was made by higher ups in the chain of command. The announcements to disperse were made with the use of loud speakers spoken by the tactical operations division.

11. Smoke was deployed and tear gas was deployed. The decision to deploy smoke and tear gas was made up the chain of command. Only the tactical operations division could deploy the smoke and tear gas.

12. So to state this again in other words, the arrest team did not make the orders to disperse and did not make the announcements to disperse, and did not have smoke and tear gas, and did not deploy smoke and tear gas.

13. After numerous announcements to disperse were made, smoke and tear gas were deployed. The crowd did begin dispersing. While the crowd was dispersing, the arrest team remained on the skirmish line. I was definitely standing next to Det. Patterson, and as I recall, I was standing between Detectives Patterson and Jackson.

14. Suddenly from the direction of the crowd that was dispersing, I observed a man, who was later identified as Dwayne Matthews, come toward the police through the smoke and tear gas.

15. When Matthews came toward the police line, I observed that he had clenched fists. It appeared to me that he was coming toward police quickly.

16. When Matthews came toward the police line, I had no idea what he was doing, or why he was coming toward police. But I will say that with everyone else running away, and with Matthews running toward us, this put me, and I believe others, on higher alert.

17. When Matthews was coming toward the police, I and the other officers near me were yelling for him to stop and turn around. We were wearing gas masks at the time. I observed Det. Joe Patterson to somewhat remove his gas mask to expose his mouth, and I could actually hear loud commands coming from Patterson telling Matthews to stop and turn around.

18. Matthews continued coming toward the police. I heard Det. Derik Jackson yell out "Less Lethal, Less lethal, less lethal." From our perspective, the purpose of yelling

3

out "less lethal, less lethal" is that, if a shots are fired, other officers will know that the shots are less lethal, so that there will not be any sympathetic firing of lethal weapons.

19. It appeared to me that Matthews was initially hit twice with bean bag less lethal rounds, and it appeared to me that the first two shots did actually strike Matthews, but that these first two rounds did not appear to be effective in stopping him. Det. Jackson shot Matthews a 3rd time, which appeared to me to be effective.

20. From my perspective, it appeared to me Matthews then jumped into the culvert; it did not appear to me that he fell into the culvert.

21. After Matthews went down into the culvert, I observed Detectives Vinson and Bates to be the first officers arriving at the edge of the culvert to retrieve Matthews. I observed Vinson and Bates pull Mathews out from the culvert, while Mathews appeared to be trying to get away.

22. When Vinson and Bates pulled Matthews out of the culvert, Mathews was placed on flat ground at which time I and others approached. Mathews was flailing and struggling despite officers telling him to stop resisting, until Det. Patterson used one short burst of Mace in the facial area, after giving a warning that he would.

23. I did not strike Matthews. I did not see anyone else strike Matthews. He was resisting and flailing.

24. My involvement was that while Matthews was flailing, I started to assist with starting to hold Matthews, but then he was handcuffed and then when he was handcuffed, I checked to make sure that there was a proper fit of the handcuffs. I had no other involvement.

4

25. After Mathews was handcuffed, he was handed off to St. Charles County SWAT team officers, one of whom was a tactical medic.

26. At the time that this was occurring, I was not aware that the St. Charles County paramedic was wearing a Go-Pro device which recorded much of what was happening. But I have viewed the footage which confirmed that Matthews was passed off to St. Charles County SWAT officers.

_____
Matt Burns

Subscribed and sworn to before me this  10th  day of May, 2016

_____
Notary Public

My Commission Expires: 4-15-2017

ROBERT E FOX, JR.
Notary Public  Notary Seal
STATE OF MISSOURI
St. Louis County
My Commission Expires April 15, 2017
Commission 13691757