# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| TRACEY WHITE et. al., | * |
| Plaintiffs, | * |
| vs. | * Case No. 4:14-cv-01490 (HEA) |
| | * |
| THOMAS JACKSON, et. al., | * |
| Defendants. | * |
| | * |

### PLAINTIFFS' RESPONSE TO THE ALLEGED STATEMENT OF UNCONTROVERTED FACTS OF DEFENDANTS CITY OF FERGUSON, THOMAS JACKSON, JUSTIN COSMA, MATT DELIA, BRANDON MCKINNON, AND RYAN DEVOUTON IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. The plaintiff shall address each of the alleged undisputed material facts below.

The substantive law will identify which facts are material. Disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. For present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).

1. On August 11, 2014, Lt. Delia, P.O. DeVouton, and P.O. McKinnon were performing duties as licensed peace officers at the request of St. Louis County, Missouri, and by virtue of the order and assignment to duty by the City of Maryland Heights Police Department. Ex. A, Lt. Matt Delia, Dep. 10:8-11:9, Oct. 1, 2015; ex. D, Police Report of Arrest of Plaintiffs Damon Coleman and

Theophilus Green.

**While the plaintiffs do no not dispute that defendants Delia, DeVouton and McKinnon, were performing police functions in the role of police officers on August 11, 2014, there is nothing in defendant DeVouton's deposition on page 10 or 11 indicating that he was acting by virtue of any "order and assignment to duty by the City of Maryland Heights Police Department." More troubling, however, is the inappropriate attempt by the defendants to place into the record of this proceeding their Ex. D which is an after the fact document prepared several months after the subject arrests and after the instant lawsuit was filed, by detective Menzenwerth of the St. Louis County Police Department who had nothing whatsoever to do with the arrests. Defendants Ex. D is noting more than rank, inadmissible hearsay that may not be used to support or defeat a motion for summary judgment. *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).**

2. On August 11, 2014, at least one officer of the St. Louis County Police Department determined the protest near West Florissant area had turned more violent and more civilly disobedient. Ex. A, Lt. Delia Dep. 8:5-23, 15:24-17:4; ex. B, Det. Edwin Menzenwerth Dep. 66:4-67:19, Nov. 30, 2015; ex. C, Robert Pusins Dep. 196:15-197:6, Jan. 7, 2016; ex. J, David "Ryan" DeVouton Dep. 8:4-9:1, Oct. 1,2015.

**The fact that some unidentified member of the St. Louis County Police Department may have indicated that some unidentified persons had engaged in an unlawful assembly is not a material fact nor does it set forth probable cause for the arrest of plaintiff's Coleman and/or Green. Plaintiffs Coleman and Green fully detail what occurred in the parking lot where they**

were arrested in their depositions. At pages 34-35 of his deposition, Exhibit 1, plaintiff Green clearly indicates that he was not "assembled " with anyone but plaintiff Coleman. Plaintiff Coleman details the entire incident on pages 19-44 and 47-50 of his deposition, Exhibit 2, and refutes that he was unlawfully assembled with anyone. In addition to the plaintiffs Coleman and Green, a disinterested witness, Alderman Antonio French was also in the parking lot and he noted that the two guys in the parking lot on the 11th, one with a white shirt and one with a black shirt, were not assembled with anyone as well. French dep. at 61-64. Exhibit 3.

3. On August 11, 2014, at least one officer of the St. Louis County Police Department determined that the police were to clear the protesters, by-standers and other people from the area near West Florissant. Id.

**The fact that some unidentified member of the St. Louis County Police Department may have determined that the police were to violate the rights of the citizens does not provide probable cause for the arrest of plaintiff's Coleman and/or Green. Plaintiffs Coleman and Green fully detail what occurred in the parking lot where they were arrested in their depositions. At pages 34-35 of his deposition, plaintiff Green clearly indicates that he was not engaged in any unlawful conduct. Plaintiff Coleman details the entire incident on pages 19-44 and 47-50 of his deposition, and refutes that he or plaintiff Green had engaged in anyunlawfully conduct of any kind. In addition to the plaintiffs Coleman and Green, a disinterested witness, Alderman Antonio French was also in the parking lot and he noted that the two guys in the parking lot on the 11th, one with a white shirt and one with a black shirt, did not engage in any unlawful conduct in his presence. French dep. at 61-64.**

4. On August 11, 2014, at least one officer of the St. Louis County Police Department

determined the area near West Florissant constituted an unlawful assembly and informed Lt. Delia of the same. Id.

**This alleged fact is neither relevant nor material as it is not possible for an "area near West Florissant" to constitute an unlawful assembly. An "unlawful assembly" requires that six or more people assemble and agree to violate criminal laws with force or violence. Mo. Rev. Stat. § 574.040.**

5. On August 11, 2014, Lt. Delia, P.O. DeVouton, and P.O. McKinnon heard police deliver several audible commands to the protesters, by-standers and other people to leave / disperse the area near West Florissant. Ex. A, Lt. Delia Dep. 18:12-20:2; ex. I, Brandon McKinnon Dep. 12:23-13:4, Oct. 1,2015; ex. J, DeVouton Dep. 13:9-14; ex. D, Damon Coleman and Theophilus Green Police Report; ex. E, Damon Coleman Dep. 41:24-42:1, Oct. 14, 2015; ex. F, Theophilus Green Dep. 49:12-18, Oct. 26, 2015; ex. G, Antonio French Dep. 32:14-36:7; ex. H, Damon Coleman Video

**It is not clear what relevance and/or materiality this statement has. "[A] person commits the crime of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot." Mo. Rev. Stat. § 574.060. Because there are no undisputed facts indicating that plaintiffs Green and Coleman were part of an unlawful assembly; that the police gave a lawful order that they were required to obey; or that plaintiffs Coleman and Green failed to disperse, the fact that defendants Delia, DeVouton and McKinnon heard police deliver several audible commands is of no moment.**

6. On August 11, 2014, Lt. Delia, P.O. DeVouton, and P.O. McKinnon were all present and

did not observe Plaintiffs Coleman and Green leave the subject parking near West Florissant after being ordered to do so and before Plaintiffs Coleman and Green were placed under arrest. Ex. H, Damon Coleman Video.

**Defendants Delia, DeVouton and McKinnon admittedly did not observe plaintiffs Green and Coleman leave the subject parking lot, as they explained, they were not allowed to do so. Green dep at 19-38, 43-44, 49-50; Coleman dep at 47-48, 53. Mr. French put things thusly about plaintiffs Green and Copeland in his deposition:**

> **it's news to me today that they were arrested. I thought, the last time I saw them was when I see them on the video, which is they were going that way. And I thought they got, I thought they just left . . . The last I saw, the police was moving toward them. And they left, and the police had stopped . . . So, I didn't know there was another encounter.**

**French dep at 47.**

7. Lt. Delia perceived Plaintiffs Coleman and Green making throwing motions and throwing items toward himself and towards other police officers. Ex. A, Lt. Delia Dep. 16:16— 17:4, 17:22-18:6.

**This is not an undisputed fact, in fact it is entirely contrived inasmuch as defendant Delia could not identify anything that plaintiff Green and/or Coleman allegedly threw and because plaintiff Coleman indicates that he never threw anything or made a throwing motion, Green dep at 27, plaintiff Coleman never threw a rock, Green dep at 96; Alderman French never saw plaintiff Green or Coleman throw anything or attempt to throw anything. French dep at 63-64.**

8. Lt. Delia informed P.O. DeVouton that Lt. Delia had observed Plaintiffs Coleman and Green throwing items at officers. Ex. J, DeVouton Dep. 12:12-20, 15:22-16:1, 16:17-22.

Plaintiffs Green and Coleman do not dispute that defendant Delia may have provided false representations of fact to defendant DeVouton. The fact of the matter is that defendant DeVouton indicated in his deposition that he arrested plaintiffs Green and Coleman because his lieutenant told him to arrest them. His actual testimony was as follows:

Q And so at that point, the probable cause to arrest was what?

A My probable cause was based off what my lieutenant had observed and all his observations, he directed me to arrest them.

Q All right. And so let's get into that. Your lieutenant told you he'd observed what?

A Throwing motions coming from them, and the officers were appeared to be getting hit with items of some sort.

Q Okay. And so what did he say they were throwing?

A I didn't ask him.

Q Well, what crime is a throwing motion?

A It's not.

Q So if he told you to take them into custody because they were engaged in a throwing motion, what crime did you believe at that point that he was telling you probable cause existed for?

A I would imagine that he believed they were throwing the items that were striking officers.

Q (by Mr. Lattimer) Well, what items were those?

A I don't know.

Q So basically you just arrested them because your lieutenant told you to?

A Yes.

Q (by Mr. Lattimer) Is that fair to say?

A That's fair to say.

**In essence, defendant DeVouton admits that the reason that he arrested plaintiffs Green and Coleman was because he was told to do so without regard to the whether or not probable cause existed. DeVouton dep at 16.**

9. P.O. McKinnon did not place Plaintiffs Coleman or Green in handcuffs. Ex. I, McKinnon Dep. 17:16-22.

**Plaintiffs Green and Copeland admit that defendant DeVouton did not handcuff either of them, however, he admits that he took them into custody. DeVouton dep at 16-17.**

10. On August 11, 2014, neither Lt. Delia, nor P.O. DeVouton, nor P. O. McKinnon possessed or were equipped with any weapons or firearms capable of discharging less-lethal projectiles such as rubber bullets, mace/pepper balls, or bean bags. Ex. K, Lt. Delia Affidavit; ex. L, P.O. DeVouton Affidavit; ex. M, P.O. McKinnon Affidavit.

**It is not disputed that the defendant officers were wearing gas masks that hid their identity, McKinnon dep at 13. There is an internal dispute among the defendants as to the weapons carried. Notwithstanding what they represent in their affidavits, defendant McKinnon indicated at pages 8-9 of his deposition that the people in his unit were carrying less-lethal shotguns. In addition, plaintiff Coleman testified that every officer that he saw with a rifle was firing at them with less lethal munitions. 44-46.**

11. On August 11, 2014, neither Lt. Delia, nor P.O. DeVouton, nor P. O. McKinnon discharged any less-lethal munitions in conjunction with the arrest of Mr. Damon Coleman and Mr. Theophilus Green. Ex. K, Lt. Delia Affadavit; ex. L, P.O. DeVouton Affidavit; ex. M, P.O. McKinnon Affidavit.

**Notwithstanding what they represent in their affidavits, defendant McKinnon indicated**

**at pages 8-9 of his deposition that the people in his unit were carrying less-lethal shotguns. In addition, plaintiff Coleman testified that every officer that he saw with a rifle was firing at them with less lethal munitions. 44-46.**

12. On August 11, 2014, neither Lt. Delia, nor P.O. DeVouton, nor P. O. McKinnon observed each other ever discharge any less-lethal munitions in conjunction with the arrests of Plaintiffs Damon Coleman and Theophilus Green. Ex. K, Lt. Delia Affidavit; ex. L, P.O. DeVouton Affidavit; ex. M, P.O. McKinnon Affidavit.

**Notwithstanding what they represent in their affidavits, defendant McKinnon indicated at pages 8-9 of his deposition that the people in his unit were carrying less-lethal shotguns. In addition, plaintiff Coleman testified that every officer that he saw with a rifle was firing at them with less lethal munitions. 44-46.**

13. Plaintiffs did not identify any of the three Defendant Maryland Heights Officers (Lt. Delia, P.O. DeVouton, nor P. O. McKinnon) as an officer who allegedly used force against them. Ex. E, Coleman Dep. 46:5-9, 73:12-16, 131:7-13; ex. F, Green Dep. 46:5-47:1.

**It is not disputed that the defendant officers were wearing gas masks that hid their identity, McKinnon dep at 13. However, there is no dispute that plaintiffs' Green and Copeland were arrested by defendant DeVouton and Mckinnon at the direction of defendant Delia. DeVouton dep at 16-17, Mckinnon dep at 17 and that defendant DeVouton handcuffed the plaintiffs. McKinnon dep at 17. Furthermore, plaintiff Coleman clearly indicated that he was kicked while he was being handcuffed, and hit with what he believed was a stick. Coleman dep at 49-51. In addition, plaintiff Coleman testified that every officer that he saw with a rifle was firing at them with less lethal munitions. 44-46.**

14. P.O. Cosma was a police officer for the City of Ferguson and was performing duties as such on August 13, 2014. Ex. P. Cosma Dep. 6:15-7:4; 11:2-6, 31:14-17; 42:5-10, Oct. 29, 2015.

**Admitted.**

15. No force was used either against Ms. Tracey White or her son, William Davis, inside the McDonald's off of West Florissant in Ferguson. Ex. N, Tracey White Dep. 128:16129:15, Sept. 29, 2015.

**Admitted.**

16. P.O. Cosma has never come in contact with Tracey White. Ex. P. Cosma Dep. 57:11-14.

**Admitted.**

17. Tracey White was arrested by a St. Louis County Police Officer and two St. Charles Police Officers. Ex. R, David Ryan Dep. 38:5-8, Oct. 1, 2015.

**It is admitted that plaintiff Tracy White was not arrested by defendant Cosma.**

18. William Davis was arrested by St. Louis County Officer Terrence McCoy. Ex 5, Terrence McCoy Dep. 83:8-84:8, Oct. 1, 2015.

**Admitted.**

19. Any officer associated with the arrests of either Ms. White or Mr. Davis were with either the St. Louis County Police Department of St. Charles Police Department. Ex. R, Ryan Dep. 44:24-45:9; ex. 0, GoPro Video; ex. 5, Ms. White and Mr. Davis Police Report; ex. B, Edwin Menzenwerth Dep. 75:12-15; ex. C, Pusins Dep. 84:18-23, 159:16-160:3; ex. 5, Police Report of Tracey White and William Davis.

**It is admitted that plaintiffs Tracy White and William Davis were not arrested by defendant Cosma. However, it is the entirely inappropriate for defendants Delia, DeVouton**

**and McKinnon to attempt to place into the record of this proceeding after the fact documents prepared several months after the subject arrests and after the instant lawsuit was filed, by detective Menzenwerth of the St. Louis County Police Department who had nothing whatsoever to do with the arrests purporting to be arrest reports. The defendants alleged police reports are nothing more than rank, inadmissible hearsay that may not be used to support or defeat a motion for summary judgment.** *Jenkins v. Winter*, 540 F.3d 742, 748 (8th Cir. 2008); *Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111 (8th Cir. 2005).

20. P.O. Cosma was not involved in any use of force towards or the arrests of Tracey White and William Davis. Id.

**Admitted.**

21. Mr. Thomas Jackson was the Chief of the City of Ferguson in the subject time frame. Ex. T, Thomas Jackson Dep. 11:23-12:12, Oct. 27, 2015.

**The plaintiffs admit that Thomas Jackson was the Chief of the Ferguson Police Department at all times relevant herein.**

22. During all times relevant to Plaintiffs' allegations, Mr. Jackson was not a final policymaker with respect to police response in the subject areas of demonstrations on and near West Florissant where Plaintiffs allege force was used against them and where Plaintiffs allege they were arrested. Ex. T, T. Jackson Dep. 107:3-23; 37:18-40:24; 45:3-8.

**This is certainly not an undisputed fact. According to Chief Belmar, speaking of Chief Jackson - - I think it's fair to say there was an understanding that we would have to work together on this, and there was also an understanding that I had the bulk of the manpower down there. Belmar dep at 29. Exhibit 4. According to Chief Belmar, he and Chief Jackson**

**shared responsibility as incident commander for the period August 11-13. Belmar dep at 66.**

23. During all times relevant to Plaintiffs allegations, St. Louis County Police Chief Belmar was the ultimate officer in command of the subject areas of demonstrations on and near West Florissant where Plaintiffs allege force was used against them and they were arrested. Ex. U, Jon Belmar Dep. 66:11-67:1, Oct. 27, 2015.

**This is certainly not an undisputed fact. According to Chief Belmar, speaking of Chief Jackson - - I think it's fair to say there was an understanding that we would have to work together on this, and there was also an understanding that I had the bulk of the manpower down there. Belmar dep at 29. According to Chief Belmar, he and Chief Jackson shared responsibility as incident commander for the period August 11-13. Belmar dep at 66.**

24. During all times relevant to Plaintiffs allegations, the St. Louis County Police Department (and not the City of Ferguson Police Department) was the entity with command and jurisdiction over the subject areas of demonstrations on and near West Florissant where Plaintiffs allege force was used against them and where Plaintiffs allege they were arrested. Ex. T, T. Jackson Dep. 107:3-23; 37:18-40:24; 45:3-8; ex. U, Belmar Dep. 66:11-67:1; ex. B, Det. Menzenwerth Dep. 70:22-74:20; ex. R, Ryan Dep. 45:10-46:14; ex. V, Richard Mundy Dep. 72:3-74:14, Oct. 26, 2015.

**This is certainly not an undisputed fact. According to Chief Belmar, speaking of Chief Jackson - - I think it's fair to say there was an understanding that we would have to work together on this, and there was also an understanding that I had the bulk of the manpower down there. Belmar dep at 29. According to Chief Belmar, he and Chief Jackson shared responsibility as incident commander for the period August 11-13. Belmar dep at 66.**

As is clear, the only undisputed material facts in this case relate to the lack of involvement

of defendant Cosma. Otherwise, there are no material facts that are undisputed regarding the unlawful arrests of plaintiffs Green and Coleman or with respect to the role of defendant Thomas Jackson.

Respectfully submitted,

By /s/ Gregory L. Lattimer
Gregory L. Lattimer [371926DC]
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Tel. (202) 434-4513
Fax: (866) 764-6442
Lattlaw@aol.com

Malik Z. Shabazz [458434DC]
Black Lawyers for Justice
1200 G Street, N.W., Suite 800
Washington, D.C. 20005
Tel: (202) 434-4528
Fax: (202) 248-4478
attorneyshabazz@yahoo.com

Reginald A. Greene[308674GA]
Greene Legal Group, LLC
One Georgia Center, Suite 605
600 West Peachtree Street, N.W.
Atlanta, Georgia 30308
Tel. (404) 574-4308
Fax: (404) 574-4308
rgreene@greenelegalgroup.com

Counsel for the Plaintiffs

Certificate of Service

The undersigned certifies that a copy of the foregoing was served by the court's electronic

filing to all counsel of record this 25th day of May, 2016.

                                                      /s/ Gregory L. Lattimer
                                                      Gregory L. Lattimer