IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TRACEY WHITE et. al., | * |
| Plaintiffs, | * |
| vs. | * Case No. 4:14-cv-01490 (HEA) |
| | * |
| THOMAS JACKSON, et. al., | * |
| Defendants. | * |
| | * |

PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO THE ST. LOUIS COUNTY DEFENDANTS' MOTION
TO EXCLUDE EXPERT TESTIMONY PURSUANT TO DAUBERT

Come now the plaintiffs, by and through counsel, and hereby submit their opposition to the motion to exclude expert testimony of the St. Louis County defendants.

**I. Introduction**

St. Louis County's liability is premised upon knowingly allowing a practice and policy of violating the civil rights of its citizens by law enforcement agencies following the shooting death of Michael Brown to exist; the liability of Chief Belmar is premised on the his failure to exercise proper supervisory authority by creating and/or allowing a practice and policy of violating the civil rights of the City of Ferguson's citizens by law enforcement agencies following the shooting death of Michael Brown.

**II. Statement Of Relevant Facts**

On August 8, 2014, Travis Wilson of the Ferguson, Mo., police department and Michael Brown, a teenaged African American encountered one another. A violent confrontation ensued, and Michael Brown, who was unarmed, was shot to death by Travis Wilson. Although the fact that an

unarmed African American was shot and killed by a police officer, is not an unusual event in the United States, the Michael Brown shooting was somewhat unique in that it occurred between 12:00 p.m. and 1:00 p.m. in the afternoon, and there were several independent witnesses. As a result of the number of witnesses, technology and the internet, the shooting of Michael Brown was seen by millions of people. The African American community in Ferguson was particularly enraged by what appeared to be an excessive use of force which culminated with Michael Brown being shot in the forehead with the final shot fired by an officer who had already shot Mr. Brown several times prior to that.

Public outrage about the shooting turned into protests which subsequently led to civil unrest in the streets of Ferguson. In response, the Ferguson Police and the St. Louis County Police took up arms and in militaristic displays of force and weaponry engaged U.S. Citizens as if they were war combatants. In doing so, the City of Ferguson and the St. Louis County Police Departments used wanton and unnecessary force and acted as if the civil rights of the citizenry that they encountered had been revoked during the period of August 11-13, 2014. The plaintiffs in this case were all victims of the atrocities committed by the City of Ferguson and the St. Louis County Police Departments during that period.

Plaintiffs designated Robert Pusins as their police practices and procedures expert. Mr. Pusins, with over thirty (30) years of law enforcement experience, after reviewing over seventy-five documents, which entailed almost the entire file in this case, issued a report wherein he concluded:

> In sum, the City of Ferguson, St. Louis County, Chief Jackson and Chief Belmar ("the municipal defendants") allowed an environment to exist in Ferguson, Missouri, following the death of Michael Brown, in particular the period of August 10-13, 2014, where law enforcement officers were not held accountable, were not required to provide probable cause for arrests and were not required to document the

>use of force. Allowing this environment to exist was inconsistent with all applicable standards of care and was in several respects, unprecedented in modern day law enforcement practices.
>
>In allowing the environment discussed herein to exist, it was entirely foreseeable that constitutional rights would be violated, arrests without probable cause would be made and that force without reason would be used. The U.S. Department of Justice After-Action Assessment of the Police Response to the August 2014 Demonstrations in Ferguson, Missouri detailed a situation that amounted to a complete failure of law enforcement to properly respond to its citizenry following the shooting death of Michael Brown. The records reviewed herein fully documents specific failures on the part of law enforcement amounting to policies and practices on the part of the defendants that exhibited a reckless disregard and deliberate indifference for the right of citizens and was a proximate cause of the injuries suffered by the plaintiffs in this case.

Pusins Report (Exhibit 1) at pg. 18.

Notably, the moving defendants do not contend that Mr. Pusin's factual premise is contrived or wrong, indeed they have submitted an affidavit from defendant Belmar wherein he admits that the requirement of written reports documenting arrests and use of force was suspended because of the dire conditions in Ferguson and a court, in *Abdullah v. County of St. Louis*, 52 F. Supp. 3d 936, 945 (E. D. Mo. 2014), has determined that:

>The top members of the unified command decided that they would use the failure-to-disperse law as their legal justification for the orders that all the demonstrators must keep moving, but they also knew that to arrest someone legally they would have to have probable cause to believe that six or more people were gathered for the purpose of violence and had refused an order to disperse. The policymakers knew the policy was being used against peaceful citizens but did not stop the practice

Somewhat incredulously, the moving defendants are seeking to prevent Mr. Pusins' from providing testimony in this case "because his testimony does not meet the criteria for admissibility under Fed. R. Evid. 702, as interpreted by Daubert." Mot. at 1. In actuality, however, the moving defendants seek to exclude the testimony of Mr. Pusins because he accurately sets forth the facts,

circumstances and effects of defendants Belmar, St. Louis County, the City of Ferguson and Chief Thomas Jackson suspending the constitution for the sake of expediency following the shooting death of Michael Brown in August, 2014.

### III. Argument

**A. Exclusion of Expert Testimony**

F.R.E. 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
(b) the testimony is based on sufficient facts or data;
(c) the testimony is the product of reliable principles and methods; and
(d) the expert has reliably applied the principles and methods to the facts of the case.

The Eighth Circuit set forth the standard in assessing the admissibility of expert testimony in *Lauzon v. Senco Prods*, 270 F.3d 681, 686-687 (8th Cir. 2001):

> In *Daubert*, the U.S. Supreme Court emphasized the district court's gatekeeper role when screening *expert* testimony for relevance and reliability. *Daubert, 509 U.S. at 591-93*; see also *Blue Dane Simmental Corp. v. Am. Simmental Ass'n, 178 F.3d 1035, 1040 (8th Cir. 1999)* (during the evaluation "of *expert* testimony under *Federal Rule of Evidence 702*, the district court must look to both the relevancy and the reliability of the testimony"). *Daubert* provides a number of nonexclusive factors a court can apply in performing this role: "(1) whether the theory or technique 'can be (and has been) tested'; (2) 'whether the theory or technique has been subjected to peer review and publication'; (3) 'the known or potential rate of error'; and (4) whether the theory has been generally accepted." *Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297*, Free. Ch. 1020 (8th Cir. 1996) (citing *Daubert, 509 U.S. at 593-94*). Daubert's progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the *expert*'s research; whether the proposed *expert* ruled out other alternative explanations; and whether the proposed *expert* sufficiently connected the proposed testimony with the facts of the case. *Bogosian v. Mercedes-Benz of N. Am., Inc., 104 F.3d 472, 479 (1st Cir. 1997)* (finding testimony of the *expert* and the plaintiff must be sufficiently related); *Daubert v. Merrell Dow Pharm., Inc., 43 F.3d 1311, 1317 (9th Cir. 1995)* (addressing whether opinion was developed naturally out of research

or solely for litigation); *Claar v. Burlington N.R. Co., 29 F.3d 499 (9th Cir. 1994)* (discussing whether the *expert* accounts for obvious alternative explanations).

While acknowledging that district courts have discretion in determining the admissibility of evidence, the Eighth Circuit in reversing the district court's exclusion of the expert in *Lauzon v. Senco Prods* was careful to note the liberal interpretation of the rules of evidence as it relates to the admissibility of expert testimony. It held:

> Federal Rule of Evidence 702 governs admissibility of expert testimony. See *Fed. R. Evid. 702*. "*Rule 702* reflects an attempt to liberalize the rules governing the admission of expert testimony." *Weisgram v. Marley Co.*, 169 F.3d 514, 523 (8th Cir 1999), aff'd, 528 U.S. 440, 145 L. Ed. 2d 958, 120 S. Ct. 1011 (2000); see also *Daubert, 509 U.S. at 588* (citing *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 169, 102 L. Ed. 2d 445, 109 S. Ct. 439 (1988)) (highlighting the "'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion' testimony'"). The rule clearly "is one of admissibility rather than exclusion." *Arcoren v. United States*, 929 F.2d 1235, 1239 (8th Cir. 1991).

The Eighth Circuit further ruled in *Unrein v. Timesavers,* Inc., 394 F.3d 1008, 1011 (8th Cir. 2005) as follows:

> This evidentiary inquiry is meant to be flexible and fact specific, and a court should use, adapt, or reject *Daubert* factors as the particular case demands. There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant.

In *Phelps-Roper v. Heineman,* 57 F. Supp. 3d 1146, 1164 (D. Neb. 2014), the court recently stated:

> An expert's opinion should be excluded only if that 'opinion is so fundamentally unsupported that it can offer no assistance to the jury.'" *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (quoting *Bon-ner v. ISP Techs., Inc.*, 259 F.3d 924, 929 (8th Cir. 2001)). "[D]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility." *Miles v. General Motors Corp.*, 262 F.3d 720, 724 (8th Cir. 2001).

Thus, while this Court has discretion in determining the admissibility of Mr. Pusins' testimony, it is clear that the rules favor admissibility rather than exclusion.

B.     **Defendants' Claim that the Expert's Testimony Is Irrelevant
       To The Issues And Does Not Assist The Trier Of Fact Is Baseless**

The moving defendants posit that "Mr. Pusins' first opinion is that defendants did not prepare sufficient documentation surrounding the arrest of each plaintiff." Mot. Mem at 3. Actually, Mr. Pusins' first opinion is as follows:

**Arrests were made without articulation and documentation of probable cause.**

Pusins Report at 12. The defendants next assert that "He states that the failure to prepare probable cause denies *defendants* due process." Mot. Mem at 3. That is not at all what Mr. Pusins says in his report. What he said was this:

> The failure to articulate and document the probable cause to justify, support and to memorialize the probable cause for an arrest contemporaneously with the arrest or within a reasonable time frame is not in line with widely accepted police practices, falls below the standard of care for arrests and is unreasonable and can lead to constitutional violations. Law enforcement officers are taught nationally that the articulation and documentation of the probable cause to justify and to memorialize the probable cause of each arrest is an essential element of policing and affords the defendants due process.

Pusins Report at 14-15. The moving defendants contend that this opinion of Mr. Pusins is irrelevant because it is not alleged in plaintiffs' complaint that any of the plaintiffs were denied due process on account of the charging process or criminal proceedings. The moving defendants apparently do not understand the plaintiffs' case. The plaintiffs' have alleged that they were arrested without probable cause and subjected to unwarranted uses of force in several instances by the individual defendant officers. The plaintiffs have also alleged that the City of Ferguson, St. Louis County, defendant Belmar and defendant T. Jackson, the municipal defendants, insitituted policies and failed to supervise the officers under their command during the period following the shooting of Michael Brown, and that their derelictions or more precisely, their deliberate indifference in this regard led

-6-

to an environment of lawlessness that was fertile ground for constitutional violations. What Mr. Pusins is doing in his report, is identifying the conduct at issue, explaining its significance and the likely consequences thereof.

The moving defendants submit an affidavit from defendant Belmar wherein he admits that short-cuts were taken but then he tries to explain why the short-cuts that were consciously taken were appropriate. That in no way supports the position that Mr. Pusins' testimony should be excluded, it only indicates that the moving defendants have come up with excuses and alleged justifications for their conduct that a jury should hear after Mr. Pusins testifies. Too be sure, no court has ever excluded an expert's testimony because a party has provided excuses for why it deviated from national standards of care and widely accepted police practices and no legitimate reason has been set forth as to why this Court should be the first one to do so.

The moving defendants assert that Mr. Pusins' testimony regarding any delay in documenting the arrests in police reports or failure to require a probable cause statement would not assist the trier of fact determine whether there was a false arrest, battery, assault, any excessive force, an unlawful arrest within the meaning of the Fourth Amendment, or any municipal liability as to the City of Ferguson, St. Louis County, defendant Belmar, or defendant T. Jackson.

The defendants again have it all wrong. Plaintiffs expert is not opining that there was a separate cause of action for the defendants' failure to document probable cause or the use of excessive force. Rather, Mr. Pusins opines, as he explained during his deposition testimony, that defendants City of Ferguson, St. Louis County, Chief Jackson, and Chief Belmar's law enforcement actions amounted to policies and practices on the part of the defendants that exhibited a reckless disregard and deliberate indifference for the constitutional rights of its citizens:

Q.	And I'm going to draw your attention to the part that talks about conclusion.

Do you see that?

A.	Yes.

Q.	And you talk about an environment that was allowed to exist -

A.	Yes.

Q.	-- in Ferguson.  Do you see that?

A.	Yes.

Q.	Now, when you talk about environment, explain exactly what it is you're talking about.

A.	I'm talking about the activities of the police officers that were involved in this response to a civil disturbance and the civil disturbance itself, but what I'm saying is that because of Chief Belmar's position, that there was joint command, that he and Jackson, City of Ferguson, St. Louis County, allowed this environment to exist where police officers were just not held accountable, were not required to provide probable cause for arrest, not required to document the use of force, and that -- allowing that to exist is just inconsistent with police practices because they should have demanded, and Chief Belmar talks about that, that it was his understanding, it was his expectation that these arrests were documented, that these uses of force were documented and that was his expectation.  So he takes the position that's what we should have done, that's what he thinks they did, but in reality, they didn't do it contemporaneously with the incidents themselves.

Q.	All right. And what other foreseeable consequences of the failure to take such actions - failure to make sure that that environment does not exist?

			*	*	*	*	*

THE WITNESS: You're going to violate people's civil rights by using force that you're not going to report that may be unreasonable, objectively unreasonable force, that you may be detaining people without -- without probable cause because you need to have somebody that provides some oversight to what the police officers are doing, and you do that through supervision.  That's standard in law enforcement, because if you don't, as I said, you could have people arrested where probable cause did not exist.

You could have use of force applied that's objectively unreasonable and not even report it, and that's unreasonable.

-8-

Q.     And would it be fair to say that because we give police officers extraordinary power, we have to hold them accountable for the actions that they take?

*          *          *          *          *

THE WITNESS: Absolutely, and that's why police departments require reporting. That's why -- that's why they require reporting of use of force. And let me -- and now that you're mentioning this --

*          *          *          *          *

Q.     And when an environment -- would it be correct to say that when an environment of unaccountability exists, that that is an environment that is ripe for violations of the constitutional rights of the citizen?

*          *          *          *          *

THE WITNESS: Yes.

Pusins' Depo at 274-278 [Exhibit 2].

Mr. Pusins reached this conclusion after reviewing well over seventy-five documents that included the depositions of the parties and witnesses, discovery responses by the parties, documents produced by the defendants and plaintiffs and evaluating each of the plaintiffs' incidents and claims and the defenses of the defendants, including the deposition testimony of Detective Edwin Menzenwerth, who drafted the police reports almost eight (8) months after the plaintiffs' arrests. In addition, Pusins also considered, in rendering his opinion, the U.S. Department of Justice's findings that the Ferguson Police Department's "approach to law enforcement has led officers to conduct stops and arrest that violated the Constitution," as well as several other findings. Pusins Report at 6. Included among the reports he considered was the U.S. Department of Justice's After-Action Assessment of the Police Response to the August 2014 Demonstrations in Ferguson, Missouri.

Thus, Mr. Pusins' testimony regarding the failure to document probable cause will assist in

the issue of the municipal defendants' liability with respect to violations of plaintiffs' constitutional rights as he set forth the national standard on police practices and procedures. Accordingly, jurors will be assisted in evaluating the evidence as they decide a verdict on plaintiffs' claims that their constitutional rights were violated, not only by the indidual officers who arrested them and subjected them to unwarranted uses of force, but also by the municipal defendants who created the environment for these horrendous acts to have occurred.[1]

### 2. Failure to Provide Oversight of Arrest and Documentation of Probable Cause

Again, the defendants focus on the wrong claims and issues. On this point, Pusins opined:

> The failure of supervisory oversight of the arrests through a review of the police reports and any associated charging documents or affidavits to confirm the existence of probable cause and that the elements of the offense are contained in the police report and charging documents is not in line with widely accepted police practices and falls below the standard of care for supervision and oversight of arrests and that is unreasonable and can lead to constitutional violations.

Pusins Report at pg. 13. Pusins went on to conclude:

> The records reviewed herein fully documents specific failures on the part of law enforcement amounting to policies and practices on the part of the defendants that exhibited a reckless disregard and deliberate indifference for the rights of citizens and was a proximate cause of the injuries suffered by the plaintiffs in this case.

*Id*. at pg. 18.

---

[1]/ Municipal liability is analyzed under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and its progeny. In *Monell*, the Supreme Court held that municipalities may be liable for monetary, declaratory or injunctive relief under § 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the municipality. *Monell*, 436 U.S. at 690. To establish liability for a "custom," plaintiff must show that there is: (1) a continuing, widespread, and persistent pattern of unconstitutional misconduct, (2) deliberate indifference or tacit authorization of such conduct by policymaking officials after notice of the conduct, and (3) that the custom caused the violation of plaintiff's constitutional rights. *Johnson v. Douglas Cnty Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013); *Jane Doe A v. Special Sch. Dist. of St. Louis*, 901 F.2d 642, 646 (8th Cir. 1990).

Nevertheless, the moving defendants aver that Mr. Pusins' testimony in this regard should be excluded "because it is fundamentally unsupported by the evidence, constitutes undue speculation, and will not assist the trier of fact." Mot. Mem at 5. However, Mr. Pusins fully articulated the factual basis for his opinions in this regard:

> The arresting officers in the arrests of each of the plaintiffs chose not to follow the standard of care regarding each arrest of the plaintiffs to articulate and document the probable cause to justify and to memorialize the probable cause for the arrest contemporaneously with the arrests or within a reasonable time frame and that is unreasonable.
>
> Consequently, it was not possible for supervisors to conduct a review of the documentation of the arrests of the plaintiffs to confirm the existence of probable cause and that all of the elements of the offense are contained in the probable cause affidavit and police report, contemporaneously with the arrests or within a reasonable time frame and that is unreasonable and can lead to constitutional violations.
>
> As mentioned previously, the police reports were completed and obtained final approval in May of 2015, over eight (8) months after the arrests. Such a delay in reporting and approval is unreasonable. Moreover, the fact that the reports were prepared by someone other than the arresting officer or any officer that was on the scene at the time of the arrest or communicated with any officer on the scene within a reasonable time after the arrest is unprecedented.

Pusins' Report at 16-17. In another misrepresentation of fact, the moving defendants assert that "Mr. Pusins agrees that prior to August 11, 2014, St. Louis County did not have a custom of report writing delays. (Pusins' Depo. P. 140)" Mot. Mem at 5. The moving defendants know full well that Mr. Pusins did not say that. Mr. Pusins was asked if he were aware of any customs of St. Louis County prior to August, 2014, and he agreed that he wasn't. Pusins' dep at 140. He never agreed that the County never had such a custom, he simply said that he was not aware of any of St. Louis County's customs prior to August, 2014. In going down this road, it appears that the moving defendants have convinced themselves that the plaintiffs must identify a "custom" in order to hold the municipal

defendants liable and that simply is not the law.

> we have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal **"policy" or "custom" that caused the plaintiff's injury**. See Monell, 436 U.S. at 694; Pembaur, 475 U.S. at 480-481; Canton, 489 U.S. at 389. Locating a "policy" ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality. Monell, 436 U.S. at 694. [emphasis added].

*Bd. of the County Comm'Rs v. Brown*, 520 U.S. 397, 403-04 (1997).  It is not the customs of the municipal defendants that are at issue, it is the policies enacted by the municipal defendants in August, 2014 that displayed deliberate indifference to the constitutional rights of the citizenry of Ferguson that are at issue.  And contrary to the obvious view of the municipal defendants, civil unrest does not provide a basis for suspending the protections of the United States Constitution afforded to law abiding citizens.  At least one court has already told the municipal defendants that in *Abdullah, supra*., the Department of Justice has told them the same thing, and so has plaintiffs' expert, Mr. Pusins.  The fact that the moving defendants disagree with what Mr. Pusins has to say, and offer excuses, justifications and rationalizations for their conduct, does not mean that he should be precluded from testifying at trial.  All any of that means is that the moving defendants should have the opportunity to offer its excuses, justifications and rationalizations to a jury after Mr. Pusins offers his opinions at trial.

### 3. Mr. Pusins' Opinions Regarding Use of Force Should Not be Excluded

Defendants next ask the Court Mr. Pusins' opinions regarding the use of force.  Those opinions were essentially:

> Reasonable and prudent law enforcement officers who serve as supervisors know and understand that the failure to conduct a supervisory review of all instances of use of force by law enforcements officers under their supervision to confirm the

> documentation, justification and the reasonableness of the force contained in police reports and use of force reports is not in line with widely accepted police practices and falls below the standard of care for arrests, is unreasonable and resulted in a display of clear and deliberate indifference to the rights of plaintiffs and the citizenry who they are sworn to serve.
>
> As with probable cause, when force is not reported, or documented contemporaneously with the use of force or within a reasonable time frame, and not reviewed through a use-of-force review system, such practice is not in line with widely accepted police practices and falls below the standard of care for the use of force, is unreasonable and can lead to constitutional violations.

Pusins Report at 18-19. The only reason offered for the exclusion of Mr. Pusins' opinion in this regard is "for the same reasons they seek the Court to exclude Opinions 1 and 2. Mot. Mem at 6. For reasons that are not clear, the defendants deny wrongdoing, and deny that any of their alleged deficiencies were the cause of any alleged constitutional violations as if that is the criteria for the admission or exclusion of expert testimony. Clearly, it is not and the moving defendants have failed to identify a single recognized basis for the exclusion of Mr. Pusins' testimony in this or any other regard.

    **4.    Decontamination**

The plaintiffs have no intention of having Mr. Pusins offer any opinion at trial regarding appropriate decontamination or other first aid procedures.

    **5.    Mr. Pusins' Testimony Regarding His Consideration Of The DOJ And COPS Reports Should Not Be Excluded**

The moving defendants join the request of the co-defendants defendants in this case to exclude any testimony regarding Mr. Pusins' consideration of the DOJ and Cops reports that where produced as a result of the civil unrest and police response following the shooting death of Michael Brown. In the co-defendants' motion, they argue that Mr. Pusins' testimony regarding the DOJ and COPS reports is inadmissible because "he establish no methodology and did not independently

evaluate the information tested in the reports.  Therefore, any portions of Mr. Pusins testimony regarding the two reports should be excluded as lacking specialized knowledge and for failure to assist the jury in determining an ultimate issue of fact as to these Defendants." Defendants' Memo at pgs. 8-9.

Defendants' arguments are groundless.  First of all, Mr. Pusins has and continues to have an extensive career in law enforcement.  Mr. Pusins considered the findings of the DOJ in his review of the evidence in rendering his opinion.

> An assessment of individual police practices should be evaluated in as complete context as possible. In this case, as background, it noteworthy that the Ferguson Police Department (FPO) has a long and documented history of systemic unconstitutional policing in general and in particular, a pattern of stops without reasonable suspicion and arrests without probable cause in violation of the Fourth Amendment; infringement on free expression, as well as retaliation for protected expression, in violation of the First Amendment ; and excessive force in violation of the Fourth Amendment. This fact was recently confirmed in detail by the United States Department of Justice (USDOJ) Civil Right Division in their investigation of the Ferguson Police Department. This documented history is germane because it is widely accepted and understood that incidents of unconstitutional policing occur in police departments in proportion to their organizational attitudes, values and beliefs (i.e., the police culture within a particular department). A department with a problematic use of unconstitutional practices and/or having chronic problems in this regard is more likely to produce incidents of misconduct and error. Here, the federal government, through the U.S. Department of Justice, made findings, including the following, which should be considered in an objective and impartial review of this case.

Pusins Report at pg. 6.

Mr. Pusins' consideration of the DOJ and COPS reports is only some of the evidence he considered, along with the thousands of pages of evidence in this case in the form of both testimonial and documentary evidence.  The reports were extensive and contained clear and distinct findings.  Evidence that clearly falls within the expert's purview to review.  Not only does Mr. Pusins have the

special knowledge and skill to properly analyze the findings, but as noted above, the findings were just one factor that Pusins considered in reaching his opinion.

Mr. Pusins' consideration of the reports is proper consideration of the evidence and does not render his testimony inadmissible. At worst, it is a question of weight for the jury to consider. That was the finding of the Court in *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 862 (8th Cir. 2005), wherein it held:

> As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded." *Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995) (internal citations and quotations omitted)). Owen's testimony was not so fundamentally unsupported that it can offer no assistance to the jury.

In the instant case, Mr. Pusins evaluated all the evidence in this case including the findings in the DOJ reports which were consistent with the opinion that he reached. Any doubts as to the DOJ's findings can be the subject of cross-examination by defendants. It is not, in any event, a basis to exclude Pusins' testimony.

The cases cited by the defendants in support of their argument for exclusion are distinguishable. In *Hill v. Fikes Truck Line*, LLC, 2012 WL 5258753, which has absolutely no precedential significance, the expert, by defendants' own account, did not perform his own testing and that the opinioin was entirely that of another expert. Clearly, that is not the case here. Pusins performed his own review of all the evidence in this case, reviewed the applicable standards based upon on his own 30+ years of law enforcement experience and those set forth in law enforcement publications from International Association of Chiefs of Police, and the Commission on

Accreditation of Law Enforcement Agencies and rendered an opinion based on the evidence and his special knowledge and skill in the area of police practices and procedure.

In *Dura v. CTS Corp*, 285 F.3d 609 (7th Cir. 2002), the Seventh Circuit ruled that an expert could not rely upon the findings of another expert for his conclusion. In the instant case, Mr. Pusins is not relying upon the DOJ reports to support his conclusion. It was just one of several factors that he considered when reviewing the evidence. Moreover, unlike the expert in the *Dura* case, Mr. Pusins is qualified in the area of police practices and procedures, the very expertise that was needed by DOJ in rendering its findings. Thus, there was nothing inappropriate about Mr. Pusins considering those findings. Quite to the contrary, he would be remiss if he did not do so.

With respect to *In re TMI Litig.*, 193 F.3d 613 (3rd Cir. 1999), Mr. Pusins did not "blindly" rely upon conclusions of other experts. Instead, he evaluated the evidence available to him. Lastly, unlike the expert in *Tk-7 Corp. v. Estate of Barbouti*, 993 F.2d 722 (10th Cir. 1993), Mr. Pusins did not simply adopt the findings of the report without any familiarity with the method used or reasoning applied. The reports at issue are extensive and detailed providing analysis of the facts and conclusion reached therein.

In sum, Mr. Pusins is a police practices and procedures expert who considered all of the evidence in this case and rendered opinions as to the constitutionality of the law enforcement actions of the City of Ferguson, Chief Jackson, St. Louis County and Chief Belmar. He reached his opinions and conclusions by applying his knowledge, specialized experience, training, education and skills to the facts and information furnished to him. As noted by Mr. Pusins, his opinions are provided with a reasonable degree of professional certainty within the field of law enforcement.

Defendants have advanced no legitimate basis to exclude the testimony of plaintiffs' expert.

As such, their motion to exclude Mr, Pusins' testimony pursuant to Daubert must be denied.

                                            Respectfully submitted,

                                            By  /s/ Gregory L. Lattimer
                                            Gregory L. Lattimer [371926DC]
                                            1200 G Street, N.W., Suite 800
                                            Washington, D.C.  20005
                                            Tel. (202) 434-4513
                                            Fax: (866) 764-6442
                                            Lattlaw@aol.com

                                            Malik Z. Shabazz [458434DC]
                                            Black Lawyers for Justice
                                            1200 G Street, N.W., Suite 800
                                            Washington, D.C.  20005
                                            Tel: (202) 434-4528
                                            Fax: (202) 248-4478
                                            attorneyshabazz@yahoo.com

                                            Reginald A. Greene[308674GA]
                                            Greene Legal Group, LLC
                                            One Georgia Center, Suite 605
                                            600 West Peachtree Street, N.W.
                                            Atlanta, Georgia 30308
                                            Tel. (404) 574-4308
                                            Fax: (404) 574-4308
                                            rgreene@greenelegalgroup.com
                                            Counsel for the Plaintiffs

## Certificate of Service

      The undersigned certifies that a copy of the foregoing was served by the court's electronic filing to all counsel of record this 26th  day of May, 2016.

                                                /s/ Gregory L. Lattimer
                                            Gregory L. Lattimer