**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| **TRACEY WHITE et. al.,** | * |
| **Plaintiffs,** | * |
| **vs.** | *  **Case No. 4:14-cv-01490** (HEA) |
| | * |
| **THOMAS JACKSON, et. al.,** | * |
| **Defendants.** | * |
| | * |

**PLAINTIFFS' RESPONSE TO THE ALLEGED STATEMENT OF MATERIAL
FACTS OF DEFENDANTS BELMAR, SGT. DAVID RYAN, OFFICER TERRENCE
MCCOY, OFFICER MICHAEL MCCANN, DET. DERIK JACKSON, DET. JOE
PATTERSON, DET. AARON VINSON, DET. WILLIAM BATES, DET. NICHOLAS
PAYNE, OFFICER DANIEL HILL, OFFICER ANTONIO VALENTINE, AND ST.
LOUIS COUNTY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

Under Rule 56 of the Federal Rules of Civil Procedure, a motion for summary judgment shall

be granted if the pleadings, depositions, answers to interrogatories, admissions on file and affidavits

show that there is no genuine issue of material fact, and that the moving party is entitled to judgment

as a matter of law.  Significantly, the moving defendants in this case do not even allege that there

are undisputed material facts in existence that would entitle them to summary judgment.

**STATEMENT OF MATERIAL FACTS OF DEFENDANTS BELMAR, SGT.
DAVID RYAN, OFFICER TERRENCE MCCOY, OFFICER MICHAEL
MCCANN, DET. DERIK JACKSON, DET. JOE PATTERSON, DET. AARON
VINSON, DET. WILLIAM BATES, DET. NICHOLAS PAYNE, OFFICER
DANIEL HILL, OFFICER ANTONIO VALENTINE, AND ST. LOUIS
COUNTY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

The movants' failure to identify a single undisputed material fact is reason enough to

summarily deny their motion for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324

(1986) ( a party seeking summary judgment always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact). Nonetheless, the plaintiffs shall address each of the alleged material facts below.

The substantive law will identify which facts are material. Disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  For present purposes, summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986).

**A.  Claims Relating to Tracey White and William Davis**

1.    It is admitted that William Davis, who is the son of Tracey White was 17 years old at the time of his arrest.  He also suffered from a learning disability and received special services in high school for reading and math.  Exhibit 22.  (Davis Interrogatory Response 15).

2-8.    Defendants' alleged facts 2-8 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

9.  Admitted.

10.  Admitted.

11. Ms. White indicated in her deposition that she attended a rally held on August 13, 2014. She was told about the rally by a fellow social worker by the name of Phyllis Nodel and she had also seen the rally promoted on tv.  White Dep at 44-46.

12.  Admitted.

13-18.  Defendants' alleged facts 13-18 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

19.   Ms. White admits that she was not thrown to the ground inside the McDonald's restaurant.  She was thrown to the ground and had a knee placed in her back at the location where she was arrested.  White Dep at 94.

20.  Ms. White admits that her son was not arrested inside the McDonald's restaurant.  He was arrested at the same location that she was arrested.  White Dep at 94-95.

21-27.  Defendants' alleged facts 21-27 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

28.  Ms. White admits that she and her son complied with the unlawful orders of the police to exit the McDonald's, and continue to move.

29.  Defendants' alleged fact 29 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

30.  Ms. White admits that she and her son were falsely arrested on a side street not too far from the McDonald's.

31-32.  Defendants' alleged facts 31-32 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

33.  Ms. White admits that the police kept forcing them to move without legal authority.

34.  Ms. White admits that she was arrested without probable cause after questioning the police about their illegal conduct of forcing them to keep moving.

35.  Defendants' alleged fact 35 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

36.  Ms. White admits that the police kept forcing her and her son to move without a legal basis.

37-41. Defendants' alleged facts 37-41 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

42.  Ms. White admits that she did not resist her illegal arrest.

43.  Defendants' alleged fact 43 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

44.  Ms. White admits that the defendants' videos shown to her by the defendants do not show her being thrown to the ground.

45.  Ms. White admits that the defendants' videos shown to her by the defendants do not show her being thrown to the ground.

46.  Ms. White admits that she did not know any of the officers and has no knowledge that any of them knew her prior to her arrest.  Her only allegation in this case is that no probable cause existed for her arrested as exhibited by the comment from the police when she protested about her arrest - - "You shouldn't have opened your big mouth."  Dep at 85.

47. Admitted.

48. Ms. White admits that she does not know who offices McCoy, McCann and Ryan are, however, they know who she is.  They were arrested for interfering with the duties of a police officer. McCoy Dep at 50-51; He was there when Ms. White and her son was arrested and had gone into the McDonald's to get the restaurant to close.  McCann Dep at 36; he had interaction with Ms. White and she and her son were arrested for failing to move.  Ryan Dep at 27.

49. Ms. White admits that she cannot describe the officer who arrested her son, however, it was defendant McCoy

> So I told him that he'd still have to leave the area regardless of his mom being arrested, so either to go into the apartment complex or go further up the street to the next intersection. As far as his mom being arrested, he kind of looked over my shoulder and all he said was, "I don't have nowhere to go," and he said, "Don't hurt my mom." I was like, "They're not hurting her, they're trying to get her into custody." And then after that I was like, "You still have to leave, we're giving you an opportunity to either go into the apartment complex or go up the street." And he kind of stared at me, didn't say anything. I was like, "Okay, now you're going to be arrested, I'm going to have to arrest you if you don't choose either to go into the apartment complex or up the street." And he still kind of stayed there and stared at me, so then at that point I placed him under arrest.

McCoy Dep at 83-84.

50. Admitted.  However, her arrest was ordered by defendant Ryan.

> Q Your men were under your supervision, okay. And your men effectuated the arrest of Ms. White, correct?
> A One of my men were there and then two others were from St. Charles County.
> Q Okay. And whose authority were they under?
> A It would have been the St. Louis County police department at the time, because we were in charge of that scene.
> Q Okay.
> A And then I was running that scene at that time.

Ryan Dep at 38.

51-54.  Admitted.

55-76.  Defendants' alleged facts 55-76 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

77.  William Davis admits that he did not resist his unlawful arrest.

78.  Defendants' alleged fact 43 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

79-80.  Defendants' alleged facts 79-80 are not material facts.  Were these facts to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

81-89.  Ms. White and William Davis admit that defendant Ryan gave the referenced testimony in his deposition, however, none of that constitutes probable cause to arrest Ms. White and Mr. Davis, nor does it otherwise provide a basis to make illegal arrests or give unlawful orders.

90.  Admitted.

91-97.  Defendants' alleged facts 91-97 are not material facts.  Were these facts to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

98.  Admitted.

99-102.  Admitted.

103.  Admitted.

104-106.  Defendants' alleged facts 104-106 are not material facts.  Were these facts to be

-6-

proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate particularly since there is no evidence of any kind indicating that either Tracey White or William Davis were anywhere near the contrived situation with a truck.

107.  The plaintiffs admit that Officer McCann testified as alleged.

**B.  Claims Relating to DeWayne Matthews**

108.  What Mr. Matthews actually said in his deposition was that he left home at about 8:30, 8:40, and caught the "61 Chambers" bus at 8:43 p.m.  He was going to West Florissant and Chambers.  He caught the bus at the North Hanley station which was across the street from the apartments where he lived.  Matthews Dep at 11.

109.  Again, what Mr. Matthews actually said in his deposition about his route of travel after getting off the bus is the following:

> I was walking toward West Florissant and Kappel, it's right there by the Domino's and the Elite Liquor store, there is where I normally make my right, and I will turn right there to go to my mother house. There were a group of officers standing right there, they pointed me in the direction of West Florissant and Highmont, so I kept straight ahead, there is where I went with the officers.

Matthews Dep at 12.

> Q Okay. So you were just going to your -- You got off the bus at West Florissant and Chambers and you were walking to West Florissant and Kappel, right?
>
> A Kappel, yeah.
>
> Q Kappel. How do you spell that?
>
> A K-A-P-P-E-L.
>
> Q And then you would normally make a right turn?
>
> A Make a right turn.

Q On Kappel?

A On Kappel.

Q But you didn't?

A I did not, the officers pointed me in the direction of West Florissant and Highmont, and so I did.

Q Okay. So that's where you went?

A Yes, sir.

Q And so you started walking towards West Florissant and Highmont?

A Yes, sir.

Matthews Dep at 14-15.  On page 16 of his deposition, Mr. Matthews indicated - -

As I kept walking towards West Florissant and Highmont, I seen tear gas, and I kept walking and tear gas was getting thicker, I had my transfer in my right hand, because I knew I would run into officers. When I ran into the officers, I put my hands up, I had my transfer in my right hand, they fired shots.

110.  Once again, what Mr. Matthews actually said in his deposition is the following:

Q Once you saw tear gas and smoke, if you wanted to walk to a parallel street, you could have gone a block to the east; is that correct?

A I would have walked down West Florissant and made a right on Highmont, from Highmont, South Dellwood connects, made a right on South Dellwood, walked across the road closing, my mother house is right there.

Q But, I mean, you're walking towards tear gas and you're walking towards smoke?

A I'm walking in the direction the officers pointed me to. I was only cooperating with them.

Matthews Dep at 17.

111.  Admitted.

112.  Admitted.

113.  Mr. Matthews admits that he cooperated with the police and walked where they told him to walk.  Dep at 12, 14-15, 17, 20.

114.  Admitted.

115- 129.  Admitted.

130.  Defendants' alleged fact 130 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

131-137.  Defendants' alleged facts 131-137 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

138.  Mr. Matthews admits that he did not know what Derik Jackson, Joe Patterson, William Bates, Aaron Vinson and Nicholas Payne did to him, however, discovery in this matter has uncovered the role of each.  Moreover, the defendants discuss the role played by each of the defendant officers in the shooting and subsequent arrest of Mr. Matthews.  See Statement of Facts 143-250.

139-140.  Defendants' alleged facts 139-140 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

141.  Mr. Matthews admits that he did not know what Derik Jackson, Joe Patterson, William Bates, Aaron Vinson and Nicholas Payne did to him, however, discovery in this matter has uncovered the role of each.  Moreover, the defendants discuss the role played by each of the defendant officers in the shooting and subsequent arrest of Mr. Matthews.  See Statement of Facts

143-250.

142.   What Mr. Matthews actually said on page 63 of his deposition in this regard was the following - - They're wearing gas masks and military uniform and no name tag.

143-152.   Defendants' alleged facts 143-152 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

153.   Mr. Matthews admits that he had his hands up.

154.   Mr. Matthews admits that he was shot with a less lethal shotgun by Derik Jackson for no reason at all.

155-156.   Defendants' alleged facts 155-156 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

157-158.   Mr. Matthews explained his ordeal in the creek and/or culvert in the following manner:

Q So at the time -- You mentioned you went into a culvert, is that correct, you went -- you dropped into some water?

A Yes.

Q And was that water --

A It was rain water in the creek.

Q In a creek?

A There's a creek on the left side --

Q Yeah.

A -- where I'm coming from, to the left side there's a creek, just rained about two days ago, two days prior to that date.

Q Yeah.

A They shot me with the bean bag, I fell into the creek water, hit my head on the pavement, they drowned me for about five, six seconds.

Q So just so I understand, you're saying you didn't jump into the creek, you fell into the creek?

A No, no, sir, when they shot me with the bean bag it took my leg off, like my leg just -- by force it went off the pavement, so I'm standing on one leg and I'm leaning to the left, so I fell by gravity.

Q When you say it took your leg off, you mean – what do you mean, it hurt?

A Yeah, like you shot me, by force it took my leg off my feet, like I'm standing on one leg now as if an NFL player came and --

Q What leg are you talking about?

A My left leg. No, it was my right leg, I apologize.

Q Right leg?

A My right leg.

Q And you're saying that they tried to drown you?

A They did drown me.

Q How many people are doing that?

A There was only one of them grabbing me by the throat.

Q He grabbed you by the throat?

A The throat, (indicating). I'm on my back, he's grabbing me by the throat, two others came and grabbed me by my arm, one grabbed my legs, they flipped me over like a cross, so you say, came and grabbed my head and slammed me like a wrestling maneuver.

-11-

Q You don't remember a police officer trying to ask you to grab his arm to get you out?

A No.

Matthews Dep at 28-29.

159.  No matter what Det. Payne claims to have observed, Mr. Matthews was compliant and never resisted the officers.  Matthews Dep at 65.

160.  According to Mr. Matthews, after the police beat him they maced him.  Dep at 32. No matter what Det. Payne claims to have observed, Mr. Matthews was compliant and never resisted the officers.  Matthews Dep at 65.

161-162.  Defendants' alleged facts 161-162 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

163.  Irrespective of what Det. Payne claims not to have seen and what he claims not to have done, Mr. Matthews states otherwise .  After he was lifted out of the water, his face was slammed into the pavement, scraped on the ground all while being subjected to racial slurs such as nigger, mop head.  After that the police took turns punching and kicking him while repeating those racial slurs over and over. While he was yelling , "I'm not a part of the protest, I'm trying to go home. I'm not a part of the protest, I'm trying to go home." They're saying I'm resisting, "Stop resisting, I'm going to break your arm. Stop resisting, I'm going to break your arm."   He responded "Okay, I apologize, I'm just trying to go home, I'm just trying to go home."   He started saying those things so they would stop beating him.  After he was cuffed, the police maced him me everywhere, in his wounds,  in his face, nose, mouth, and then put him in a van for about 45 minutes to an hour before

-12-

they took him into Ferguson where I met with the ambulance.  Matthews Dep 24-25.

164-173.  Defendants' alleged facts 164-173 are not material facts.  Were these facts to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

174.  Mr. Matthews admits that he walked toward the police with his hands up.

175.  Mr. Matthews was walking with his hands up.  Matthews Dep at 21-23.

176.  Mr. Matthews was walking with his hands up.  Matthews Dep at 21-23.

177.  Mr. Matthews did not hear any officer say anything before he was shot.  Matthews Dep at 23.

178.  Mr. Matthews was walking with his hands up.  Matthews Dep at 21-23.

179.  Mr. Matthews was walking with his hands up, Matthews Dep at 21-23, and did not hear any officer say anything before he was shot.  Matthews Dep at 23.

180.  According to Mr. Matthews the second round hit him in the stomach, he stopped .  They fired off another shot, it was a shotgun, bean bag, it him in the left shin, he fell into the creek, and they followed him there.  Matthews Dep at 24.

181.  According to Mr. Matthews, who was the person actually shot, he fell into the creek after being shot in the shin.  Matthews Dep at 24.

182.  According to Mr. Matthews, who was the person actually shot, he fell into the creek after being shot in the shin.  Matthews Dep at 24.

183.  According to Mr. Matthews - - After he was lifted out of the water, his face was slammed  into the pavement, scraped on the ground all while being subjected to racial slurs such as nigger, mop head.  After that the police took turns punching and kicking him while repeating those

-13-

racial slurs over and over. While he was yelling , "I'm not a part of the protest, I'm trying to go home. I'm not a part of the protest, I'm trying to go home. "They're saying I'm resisting, "Stop resisting, I'm going to break your arm. Stop resisting, I'm going to break your arm." He responded "Okay, I apologize, I'm just trying to go home, I'm just trying to go home." I started saying those things so they would stop beating him. After he was cuffed, the police Maced him everywhere, in his wounds, in his face, nose, mouth, and then put him in a van for about 45 minutes to an hour before they took him into Ferguson where he met with the ambulance. Matthews Dep 24-25.

184. No matter what Det. Burns claims to have observed, Mr. Matthews was compliant and never resisted the officers. Matthews Dep at 65.

185. Mr. Matthews admits that he was maced all over his body.

186. According to Mr. Matthews, after he was cuffed, the police maced him everywhere, in his wounds, in his face, nose, mouth, and then put him in a van for about 45 minutes to an hour before they took him into Ferguson where he met with the ambulance. Matthews Dep 24-25.

187- 197. Defendants' alleged facts 187-197 are not material facts. Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

198. Mr. Matthews did not hear any officer say anything before he was shot. Matthews Dep at 23.

199. Mr. Matthews admits that he walked toward the police with his hands up.

200. Mr. Matthews was walking with his hands up, Matthews Dep at 21-23, and did not hear any officer say anything before he was shot. Matthews Dep at 23.

201. Mr. Matthews was walking with his hands up, Matthews Dep at 21-23, and did not hear

any officer say anything before he was shot.  Matthews Dep at 23.  Derik Jackson did not see a weapon in Matthews' hands and shot him nonetheless.  D. Jackson Dep at 31.

202.  Mr. Matthews admits that he was shot multiple times for no lawful reason.

203-210.  Defendants' alleged facts 187-197 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

211.  Mr. Matthews was walking with his hands up.  Matthews Dep at 21-23.

212-216.  Mr. Matthews was walking with his hands up, Matthews Dep at 21-23, and did not hear any officer say anything before he was shot.  Matthews Dep at 23.

217.  Mr. Matthews did not hear any officer say anything before he was shot.  Matthews Dep at 23.

218.  Mr. Matthews admits that he fell into the creek filled with water after he was shot several times for no reason.

219.  Defendants' alleged fact 219 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

220.  Defendants' alleged fact 220 is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

221.  No matter what Det. Patterson claims to have observed, Mr. Matthews was compliant and never resisted the officers.  Matthews Dep at 65.

222. According to Mr. Matthews, after he was cuffed, the police maced him everywhere, in

his  wounds,  in his face, nose, mouth, and then put him in a van for about 45 minutes to an hour before they took him into Ferguson where he met with the ambulance.  Matthews Dep 24-25.

223.  According to Mr. Matthews, after he was cuffed, the police maced him everywhere, in his  wounds,  in his face, nose, mouth, and then put him in a van for about 45 minutes to an hour before they took him into Ferguson where he met with the ambulance.  Matthews Dep 24-25.

224-225.  Defendants' alleged facts 224-225 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

226-232.  Defendants' alleged facts 226-232 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

233.  Mr. Matthews admits that he walked toward the police with his hands up.

224(sic).  Det Bates also indicated that he saw no weapon and had no evidence that Mr. Matthews had engaged in any illegal conduct of any kind.

225(sic).  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

226(sic).  Mr. Matthews admits that he was walking down a public sidewalk when he was shot by the police for no reason.

227(sic).  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

-16-

228(sic).  Mr. Matthews was walking with his hands up, Matthews Dep at 21-23, and did not hear any officer say anything before he was shot.  Matthews Dep at 23.

229(sic).  Mr. Matthews admits that he was shot multiple times by the police for no lawful reason.

230(sic).  According to Mr. Matthews the second round hit him in the stomach, he stopped, they fired off another shot, it was a shotgun bean bag, it him in the left shin, he fell into the creek, and they followed him there.  Matthews Dep at 24.

231(sic).  According to Mr. Matthews the second round hit him in the stomach, he stopped They fired off another shot, it was a shotgun, bean bag, it him in the left shin, he fell into the creek, and they followed him there.  Matthews Dep at 24.

232(sic).  According to Mr. Matthews the second round hit him in the stomach, he stopped They fired off another shot, it was a shotgun, bean bag, it him in the left shin, he fell into the creek, and they followed him there.  Matthews Dep at 24.

233(sic).  According to Mr. Matthews - - After he was lifted out of the water, his face was slammed  into the pavement, scraped on the ground all while being subjected to racial slurs such as nigger, mop head.  After that the police took turns punching and kicking him while repeating those racial slurs over and over. While he was yelling , "I'm not a part of the protest, I'm trying to go home. I'm not a part of the protest, I'm trying to go home.  "They're saying I'm resisting, "Stop resisting, I'm going to break your arm. Stop resisting, I'm going to break your arm."  He responded "Okay, I apologize, I'm just trying to go home, I'm just trying to go home."   I started saying those things so they would  stop  beating him.  After he was cuffed, the police Maced him everywhere, in his wounds,  in his face, nose, mouth, and then put him in a van for about 45 minutes to an hour before

-17-

they took him into Ferguson where he met with the ambulance.  Matthews Dep 24-25.

234-239.  Defendants' alleged facts 234-239 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

240.  Mr. Matthews was walking with his hands up.  Matthews Dep at 21-23.

241.  Mr. Matthews was walking with his hands up, Matthews Dep at 21-23, and did not hear any officer say anything before he was shot.  Matthews Dep at 23.

242.  Admitted.

243.  Admitted.

244.  According to Mr. Matthews - - After he was lifted out of the water, his face was slammed  into the pavement, scraped on the ground all while being subjected to racial slurs such as nigger, mop head.  After that the police took turns punching and kicking him while repeating those racial slurs over and over. Matthews Dep at 24.

245.  This alleged fact is inconsistent with what Det. Bates says. (When Matthews fell into the ravine, he grabbed his right arm to get him out).  Bates Dep at 37.  It is also inconsistent with Det. Vinson's testimony on page 40 of his own deposition - - "I pulled him to the side of the ravine with the assistance of Detective Bates, who grabbed my hand, as soon as I got to the side of the ravine Detective Bates assisted me and he grabbed him, too, and we got him out of the water."

246.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

247.  No matter what Det. Vinson claims to have observed, Mr. Matthews was compliant and

-18-

never resisted the officers.  Matthews Dep at 65.

248.  No matter what Det. Patterson claims to have observed, Mr. Matthews was compliant and never resisted the officers.  Matthews Dep at 65.

249.  Mr. Matthews admits that there is a sketchy video that catches very little of the interaction between him and the police.

250.  According to Det. Bates, The medic on the scene was telling the police to get off of Mr. Matthews' back, Bates Dep at 40-41, and Mr. Matthews kept telling the police that he could not breathe.  Bates Dep at 41.

251-253.  Defendants' alleged facts 251-253 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

254.  Plaintiff Kerry White admits that he was falsely arrested.

255-271.  Defendants' alleged facts 251-253 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

272-279.  Admitted.

280.  Mr. White's camera was in fact in his car in the back seat on the floor, and the only thing that was missing was his memory card.  It was also damaged.  K. White Dep at 71.

281-282.  Admitted.

283-288. Defendants' alleged facts 283-288 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

-19-

288-290.  Admitted.

291-297.  Defendants' alleged facts 283-288 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

298.  Plaintiffs K. White, K. Bowers and S. Bowers admit that they were detained for no reason, accosted and falsely arrested by the police.

299-302.  Admitted.

303-327.  Defendants' alleged facts 303-327 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

328.  Admitted.

329.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

330.  Kai Bowers admits that he was assaulted by the police for no reason.

331-336.  Admitted.

337-345.  Admitted.

346-347.  Defendants' alleged facts 346-347 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

348-350.  Admitted.

351.  According to Mr. White, everyone was snatched out of the car and thrown on the

ground.  K. White Dep at 71.

352.  According to Mr. White he spoke with an officer and  asked him what was going on and was he going to be arrested, that officer lied and said that he wasn't going to be arrested, and he should "Just chill out."  He had no other personal contact with any other officer.  K. White Dep at 58.

353.  There are no facts in this case supporting probable cause for the arrest of K. White.  A lack of probable cause is inconsistent with good faith.

354.  According to Mr. White, everyone was snatched out of the car and thrown on the ground.  K. White Dep at 71.

355. This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

356-367. Defendants' alleged facts 356-367 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

368.  According to Mr. White, everyone was snatched out of the car and thrown on the ground.  K. White Dep at 71.  According to K. Bowers once the police came the door was opened and he was snatched from the vehicle, thrown to the ground where a caucasian police officer held him face down with a knee on his neck.  K. Bowers Dep at 106-08.  According to Sandy Bowers he tried to file a complaint against the police for injuring his shoulder, but all the police had their badges covered, so he didn't know who to file a complaint on.  S. Bowers Dep at 24.

369-387.  Defendants' alleged facts 369-387 are not material facts.  Were these facts to be

proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

388.   According to Mr. White, everyone was snatched out of the car and thrown on the ground. K. White Dep at 71.  According to K. Bowers once the police came the door was opened and he was snatched from the vehicle, thrown to the ground where a caucasian police officer held him face down with a knee on his neck.  K. Bowers Dep at 106-08.  According to Sandy Bowers he tried to file a complaint against the police for injuring his shoulder, but all the police had their badges covered, so he didn't know who to file a complaint on.  S. Bowers Dep at 24.

389-390.  Defendants' alleged facts 369-387 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

391-392.  According to Mr. White, everyone was snatched out of the car and thrown on the ground. K. White Dep at 71.  According to K. Bowers once the police came the door was opened and he was snatched from the vehicle, thrown to the ground where a caucasian police officer held him face down with a knee on his neck.  K. Bowers Dep at 106-08.  According to Sandy Bowers he tried to file a complaint against the police for injuring his shoulder, but all the police had their badges covered, so he didn't know who to file a complaint on.  S. Bowers Dep at 24.

393-394.  According to K. White No one ever told them that they had to disperse from Lorna. Dep at 87-88.  In addition, a police line began marching from the front, and they we were being fired up on with -- from the back.  Dep at 52.

395-415.  Defendants' alleged facts 369-387 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not

-22-

summary judgment is appropriate.

416. Admitted.

417-422. Defendants' alleged facts 417-422 are not material facts. Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

423. According to Mr. White, everyone was snatched out of the car and thrown on the ground. K. White Dep at 71. According to K. Bowers once the police came the door was opened and he was snatched from the vehicle, thrown to the ground where a caucasian police officer held him face down with a knee on his neck. K. Bowers Dep at 106-08. According to Sandy Bowers he tried to file a complaint against the police for injuring his shoulder, but all the police had their badges covered, so he didn't know who to file a complaint on. S. Bowers Dep at 24.

424. Plaintiffs K. White, S. Bowers and K. Bowers admit that they were all illegally searched and falsely arrested.

425. This alleged fact is not a material fact. Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate. Indeed, defendant Valentine made no attempt to explain the basis for arresting a passenger in a vehicle for failure to disperse because he alleges that the driver did not follow a police order to stop.

426. This alleged fact is not a material fact. Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate. Indeed, defendant Valentine made no attempt to explain the basis for arresting a passenger in a vehicle for failure to disperse because he alleges that the driver did not follow a police

-23-

order to stop.

427-430.  Defendants' alleged facts 427-430 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

431-444.  Defendants' alleged facts 431- 444 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

445-446.  According to Mr. White, everyone was snatched out of the car and thrown on the ground.  K. White Dep at 71.  According to K. Bowers once the police came the door was opened and he was snatched from the vehicle, thrown to the ground where a caucasian police officer held him face down with a knee on his neck.  K. Bowers Dep at 106-08.  According to Sandy Bowers he tried to file a complaint against the police for injuring his shoulder, but all the police had their badges covered, so he didn't know who to file a complaint on.  S. Bowers Dep at 24.

447-452.  Admitted.

453.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

454.  Admitted.

455.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

456.  Just before he was shot in the face, he saw an officer aim a weapon at him and fire that

-24-

weapon. Harris Dep at 59.

457-468.  Defendants' alleged facts 457-468 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

469.  Nathan Burns admits that he was falsely arrested on August 11, 2014.

470. According to Mr. Burns, after the police pushed them onto a side street, was when he first heard anything about disperse.  The officers giving those orders were St. Louis County officers.  Dep at 11.  The police told people to disperse but at the same time blocked all of the ways that one could leave the area.  Dep at 13. When he heard the order to disperse the first time, Mr. Burns explained his actions as follows:

> "I was actually standing, it was a lady that was out there protesting, I was standing in her yard, I was standing like out of the street and everywhere, I was just basically waiting on it to pass by, because it was like they were shooting at everything moving, and like it was dark out at this time, it had gotten dark, but it was – it was dark, and at this point they were shooting and like throwing like cans of some type of smoke, so I was just really trying to stay out of sight really, like take cover basically, so I was standing in the yard on the side of a like big bush, maybe a seven-foot bush."

Dep at 14.

471-472.  Admitted.

473.  While Mr. Burns indicated that he did not want to leave his car, at no place on page 15 of his deposition does Nathan Burns indicate that he could have gone through any yard.

474.  According to Mr. Burns, while on Westdell St., he saw an armored vehicle come down the street with at least eight policemen hanging off the side.  The policemen jumped off the vehicle with their weapons, he immediately raised his hands and the police then lowered their weapons and began spraying everyone with mace.  Dep at 17.  He was sprayed with so much mace that his

clothing was drenched. Dep at 17-18. After being drenched with mace, he was grabbed by his hair and slammed to the ground. While on the ground he was maced repeatedly and otherwise threatened and abused. Dep at 18-19.

475. According to Mr. Burns, none of the officers who abused him had name tags. Dep at 19. However, according to defendant McCoy, he was involved in the arrest of Nathan Burns. Dep at 11. According to defendant McCann, he arrested and cuffed Burns. Dep at 35. The defendants admit in their alleged fact 498 that defendant Hill went to where Burns was standing to arrest him.

476-481. Defendants' alleged facts 476-481 are not material facts. Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

482-484. Admitted.

485. According to Mr. Shearer, immediately after he heard the police tell everyone that they had to go to their homes, they started shooting tear gas, they backed into the neighborhood, and then tried to leave, but couldn't leave because the police had a part of West Florissant blocked off and that part of Chambers blocked off, so in between that you couldn't leave. Dep at 22.

486. Admitted.

487. Admitted. When the police deployed tear gas initially, he and Burns ran and were able to escape the tear gas and the wooden pellets that the police were shooting. Shearer Dep at 24. While there were other people who ran in the direction in which they ran, it was just he and Burns who were together. Shearer Dep at 27. They made it back to the car and tried to leave the neighborhood but couldn't because the police had everything blocked. Shearer Dep at 31-32. They were driving around in circles trying to leave the area without success so they eventually parked the

-26-

car again.  Shearer Dep at 33-34.  He heard the police announce that they needed all news outlets to

leave.  Shearer Dep at 36.  After making that announcement, the police started shooting tear gas

again and he witnessed when "they shot a guy in the face with a rubber bullet.  Shearer Dep at 36.

488.  Actually, according to Mr. Shearer, when the police began using mace he ran and got

into Burns' car.  The car got maced but he did not.  Dep at 52-53.

489.  Admitted.

490. This alleged fact is not a material fact.  Were this fact to be proven, it would have

absolutely no affect whatsoever on the determination of whether or not summary judgment is

appropriate.

491-496.  Defendants' alleged facts 491-496 are not material facts.  Were these facts to be

proven, they would have absolutely no affect whatsoever on the determination of whether or not

summary judgment is appropriate.

497.  Irrespective of what defendant Hill claims to have observed, when he heard the order

to disperse the first time, Mr. Burns explained his actions as follows:

> "I was actually standing, it was a lady that was out there protesting, I was standing
> in her yard, I was standing like out of the street and everywhere, I was just basically
> waiting on it to pass by, because it was like they were shooting at everything moving,
> and like it was dark out at this time, it had gotten dark, but it was – it was dark, and
> at this point they were shooting and like throwing like cans of some type of smoke, so I was just really trying to stay out of sight really, like
> take cover basically, so I was standing in the yard on the side of a like big bush, maybe a seven-foot
> bush."

Dep at 14.

499.  According to Mr. Burns, he had dispersed and ended up in someone's yard.  Burns Dep

at 14.

500.  Mr. Burns admits that he did not resist his unlawful arrest.

501.  It may have been uneventful to the police, but according to Mr. Burns, after being drenched with mace, he was grabbed by his hair and slammed to the ground and while on the ground he was shot with mace repeatedly and otherwise threatened and abused.  Dep at 18-19.  While in custody, one of the officers that arrested him placed his hands in his pants and groped his genitalia with mace on his hands.  Dep at 81-82.

502.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

503.  According to Mr. Burns, after being drenched with mace, he was grabbed by his hair and slammed to the ground and while on the ground he was maced repeatedly and otherwise threatened and abused.  Dep at 18-19.  While in custody, one of the officers that arrested him placed his hands in his pants and groped is genitalia with mace on his hands.  Dep at 81-82.

504.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

505.  Admitted.

506-508.  Defendants' alleged facts 506-508 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

509.  Mr. Burns admits that he did not run from the police.  He further admits that he was unlawfully seized and falsely arrested.

510.  Mr. Burns admits that Officer McCoy testified as alleged.

-28-

511-512.  Admitted.

513.  Mr. Burns admits that Officer McCoy testified as alleged.

514.  Admitted.

515.  According to Mr. Burns, while on Westdell St., he saw an armored vehicle come down the street with at least eight policemen hanging off the side.  The policemen jumped off the vehicle with their weapons, he immediately raised his hands and the police then lowered their weapons and began spraying everyone with mace.  Dep at 17.

516.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

517.  According to Mr. Burns,   he did not see anyone throwing rocks and he did not throw any rocks.  Dep at 16.

518.  According to Mr. Burns, he did not see anyone throwing rocks and he did not throw any rocks.  Dep at 16.

519.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

520.  This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

521.  According to Mr. Burns, he did not see anyone throwing rocks and he did not throw any rocks.  Dep at 16. When he saw the armored vehicle, it was on Westdell St.  Burns Dep at 17.

522. This alleged fact is not a material fact. Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

523. Admitted.

524-533. Defendants' alleged facts 524-533 are not material facts. Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

534. In his deposition, Chief Belmar Chief Belmar agreed that during August, 2014, "Law enforcement applied the 'keep moving' order broadly and without guidelines for officers that allowed for its legal application." He further admitted that the standing order on the failure to disperse charge should have been altered, and in fact, it subsequently was. Belmar Dep at 98. He further agreed 100%, that the circumstances present on August 10-13 did not justify the lack of documentation and need to track the use of lethal – less-lethal responses. Dep at 108. In addition, he admitted that prior to August 2014, officers in St. Louis County were trained to remove their name badges. Belmar Dep at 117, 119, and that the only time that he is aware of officers removing their name badges is when they are told to do so during times of civil disturbance. Belmar Dep at 120.

Furthermore, plaintiffs' expert witness, Robert Pusins, in a report prepared in this case opined as follows:

> In sum, the City of Ferguson, St. Louis County, Chief Jackson and Chief Belmar ("the municipal defendants") allowed an environment to exist in Ferguson, Missouri, following the death of Michael Brown, in particular the period of August 10-13, 2014, where law enforcement officers were not held accountable, were not required to provide probable cause for arrests and were not required to document the use of force. Allowing this environment to exist was inconsistent with all applicable standards of care and was in several respects, unprecedented in modern

day law enforcement practices.

  In allowing the environment discussed herein to exist, it was entirely foreseeable that constitutional rights would be violated, arrests without probable cause would be made and that force without reason would be used. The U.S. Department of Justice After-Action Assessment of the Police Response to the August 2014 Demonstrations in Ferguson, Missouri detailed a situation that amounted to a complete failure of law enforcement to properly respond to its citizenry following the shooting death of Michael Brown. The records reviewed herein fully documents specific failures on the part of law enforcement amounting to policies and practices on the part of the defendants that exhibited a reckless disregard and deliberate indifference for the right of citizens and was a proximate cause of the injuries suffered by the plaintiffs in this case.

Exhibit 20 at 17-18. Mr. Pusins explained in his deposition testimony that defendants' Belmar and

St. Louis County's law enforcement actions amounted to policies and practices on the part of those

defendants that exhibited a reckless disregard and deliberate indifference for the constitutional rights

of its citizens:

  Q. And I'm going to draw your attention to the part that talks about conclusion. Do you see that?

  A. Yes.

  Q. And you talk about an environment that was allowed to exist -

  A. Yes.

  Q. -- in Ferguson.  Do you see that?

  A. Yes.

  Q. Now, when you talk about environment, explain exactly what it is you're talking about.

  A. I'm talking about the activities of the police officers that were involved in this response to a civil disturbance and the civil disturbance itself, but what I'm saying is that because of Chief Belmar's position, that there was joint command, that he and Jackson, City of Ferguson, St. Louis County, allowed this environment to exist where police officers were just not held accountable, were not required to provide probable

cause for arrest, not required to document the use of force, and that -- allowing that to exist is just inconsistent with police practices because they should have demanded, and Chief Belmar talks about that, that it was his understanding, it was his expectation that these arrests were documented, that these uses of force were documented and that was his expectation.  So he takes the position that's what we should have done, that's what he thinks they did, but in reality, they didn't do it contemporaneously with the incidents themselves.

Q.      All right. And what other foreseeable consequences of the failure to take such actions - failure to make sure that that environment does not exist?

                *             *             *             *             *

THE WITNESS: You're going to violate people's civil rights by using force that you're not going to report that may be unreasonable, objectively unreasonable force, that you may be detaining people without -- without probable cause because you need to have somebody that provides some oversight to what the police officers are doing, and you do that through supervision.  That's standard in law enforcement, because if you don't, as I said, you could have people arrested where probable cause did not exist.

You could have use of force applied that's objectively unreasonable and not even report it, and that's unreasonable.

Q.      And would it be fair to say that because we give police officers extraordinary power, we have to hold them accountable for the actions that they take?

                *             *             *             *             *

THE WITNESS: Absolutely, and that's why police departments require reporting. That's why -- that's why they require reporting of use of force.  And let me -- and now that you're mentioning this --

                *             *             *             *             *

Q.      And when an environment -- would it be correct to say that when an environment of unaccountability exists, that that is an environment that is ripe for violations of the constitutional rights of the citizen?

                *             *             *             *             *

THE WITNESS: Yes.

Pusins Dep at 274-278.

535-544. Defendants' alleged facts 535-544 are not material facts.  Were these facts to be proven, they would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

545.   The contrary has already been determined by a Court of competent jurisdiction

> The top members of the unified command decided that they would use the failure-to-disperse law as their legal justification for the orders that all the demonstrators must keep moving, but they also knew that to arrest someone legally they would have to have probable cause to believe that six or more people were gathered for the purpose of violence and had refused an order to disperse. The policymakers knew the policy was being used against peaceful citizens but did not stop the practice.

*Abdullah v. County of St. Louis*, 52 F. Supp. 3d 936, 945 (E. D. Mo. 2014).

546. This alleged fact is not a material fact.  Were this fact to be proven, it would have absolutely no affect whatsoever on the determination of whether or not summary judgment is appropriate.

547.   It is not alleged that Chief Belmar had any personal involvement with any of the plaintiffs, however, as noted above, the representation that he did not know that law enforcement was not engaging in a pattern of unconstitutional conduct is directly refuted by *Abdullah v. County of St. Louis*.

548.   Admitted.

549.   The first sentence of this paragraph does not state or allege a "fact," it states an opinion that is inappropriate in this context.  The remainder of this paragraph purports to set forth language that is allegedly contained in an excess policy that is supposedly provided herein as defendants' Exhibit D.  Significantly, there is no "Exhibit D" that has been submitted in support of the instant motion, and the representations about the language contained therein constitutes inadmissible hearsay.

-33-

As is clear, there is not a single material fact that is undisputed regarding the claims of plaintiffs Tracey White, William Davis, DeWayne Matthews, Kerry White, Kai Bowers, Sandy Bowers, Antawn Harris and Nathan Burns.

Respectfully submitted,

 /s/ Gregory L. Lattimer
Gregory L. Lattimer [371926DC]
1200 G Street, N.W., Suite 800
Washington, D.C.  20005
Tel. (202) 434-4513
Fax: (866) 764-6442
Lattlaw@aol.com

Malik Z. Shabazz [458434DC]
Black Lawyers for Justice
1200 G Street, N.W., Suite 800
Washington, D.C.  20005
Tel: (202) 434-4528
Fax: (202) 248-4478
attorneyshabazz@yahoo.com

Reginald A. Greene[308674GA]
Greene Legal Group, LLC
One Georgia Center, Suite 605
600 West Peachtree Street, N.W.
Atlanta, Georgia 30308
Tel. (404) 574-4308
Fax: (404) 574-4308
rgreene@greenelegalgroup.com

Counsel for the Plaintiffs

-34-

**<u>Certificate of Service</u>**

The undersigned certifies that a copy of the foregoing was served by the court's electronic filing to all counsel of record this 28th day of June, 2016.

_____/s/ Gregory L. Lattimer_____
Gregory L. Lattimer
