# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-3897

_____

Tracey White; DeWayne Anton Matthews, Jr.; Damon Coleman; Theophilus
Green; Kerry White; Antawn Harris; Sandy Bowers; William Davis; Nathan
Burns; Kai Bowers

*Plaintiffs - Appellants*

v.

Thomas Jackson; John Belmar; Justin Cosmo; St. Louis County, Missouri; City of
Ferguson, Missouri; David Ryan; Terrence McCoy; Michael McCann; Derik
Jackson; Joe Patterson; Aaron Vinson; William Bates; Nicholas Payne; Daniel
Hill; Antonio Valentine; Matt Delia; David "Ryan" DeVouton; Brandon McKinnon

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: June 7, 2017
Filed: August 1, 2017

_____

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

_____

MURPHY, Circuit Judge.

Michael Brown, Jr. was killed by a police officer in Ferguson, Missouri on August 9, 2014. In the days that followed, large crowds gathered in Ferguson. While the crowds were largely peaceful, at times they became violent. This action concerns six sets of plaintiffs who allege multiple claims related to the police response to the demonstrations. The district court granted defendants summary judgment on all plaintiffs' claims, and plaintiffs appeal. We affirm in part, reverse in part, and remand.

## I. Background

On August 9, 2014, Ferguson police officer Darren Wilson shot Michael Brown, Jr. killing him. In the following days, large crowds gathered in Ferguson, and the crowds turned violent on several evenings in the week following Brown's death. Individuals threw objects at the police, discharged firearms, looted businesses, and set a convenience store on fire. The epicenter of this unrest was West Florissant Avenue which runs north and south and is located on the eastern edge of the City of Ferguson. In response to the civil unrest, the Ferguson Police Department requested assistance from the St. Louis County Police Department and from other municipal police departments located in the county. This action concerns six sets of plaintiffs who allege state and federal claims against the individual defendants, St. Louis County, and the City of Ferguson.

### A. Nathan Burns

On the evening of August 11, Nathan Burns and a friend were standing near Gage Drive and West Florissant Avenue in Ferguson. A crowd of approximately one hundred people was assembled near Gage and West Florissant. Members of the crowd were throwing objects at the police who attempted to disperse the crowd by instructions and by the use of smoke and tear gas. Burns did not follow the orders to disperse. While standing with a small group of others, who also remained in the area,

Appellate Case: 16-3897    Page: 2    Date Filed: 08/01/2017 Entry ID: 4563290

he was sprayed with pepper spray by St. Louis Metropolitan police officers who were not named as defendants in this action.

St. Louis County police officers Terence McCoy and Daniel Hill arrested Burns after he had been pepper sprayed. Burns testified that officers had deployed pepper spray on him several times, but he did not identify the individual officers. After McCoy and Hill arrested Burns they transferred him to other officers who transported him to the St. Louis County Jail. Burns testified that while he was in handcuffs an officer with pepper spray on his hands had placed his hand between Burns' pants and his underwear and rubbed his genital area. It is unclear from Burns' testimony the time at which this occurred, and Burns did not identify the officer.

Burns alleges state law claims for false arrest, intentional infliction of emotional distress, and assault and battery against St. Louis County police officers McCoy, Hill, and Michael McCann. He also alleges negligent supervision against the City of Ferguson and St. Louis County. His remaining federal civil rights claims under 42 U.S.C. § 1983 for unreasonable seizure and excessive force are brought against McCann, McCoy, and Hill; claims for failure to train, supervise, and discipline are brought against the City of Ferguson, its police chief Thomas Jackson, St. Louis County, and its police chief Jon Belmar.

B. Damon Coleman and Theophilus Green

On August 11, Maryland Heights police lieutenant Matt Delia, officer Brandon McKinnon, and officer David "Ryan" DeVouton were assigned to play a support role to the St. Louis County tactical operations on West Florissant Avenue. Delia, McKinnon, and DeVouton were not equipped with firearms capable of discharging nonlethal projectiles. That night, the St. Louis County police department determined that the crowds had turned violent and that they therefore needed to be dispersed. County officers then made announcements to the crowd to disperse.

-3-

That evening the tactical unit proceeded toward West Florissant and Canfield Drive because they had received reports of gunfire in that area. While the unit was moving down West Florissant, officers noticed two individuals standing in a nearby parking lot. The individuals were later identified as Damon Coleman and Theophilus Green. They were near a group of approximately 15 to 20 people who were repeatedly ordered to disperse by county officers. The group dispersed except for Coleman and Green who made no effort to leave while yelling at the police officers.

As officers approached Coleman and Green, they hit the two with nonlethal projectiles. Lieutenant Delia instructed officer DeVouton to arrest Coleman and Green, and officer DeVouton made the arrests while officer McKinnon stood nearby and observed. Coleman later testified that about four officers had applied force to him during his arrest and that while he was lying on his stomach and being handcuffed, he was kicked, struck with a stick, and dragged on the ground.

Coleman and Green allege state law claims for false arrest and intentional infliction of emotional distress against unidentified police officers from the City of Maryland Heights and an assault and battery claim against Maryland Heights police lieutenant Delia and officers McKinnon and DeVouton. They also allege negligent supervision against St. Louis County. Section 1983 claims for unreasonable seizure and excessive force were also brought against Delia, McKinnon, and DeVouton, as well as failure to train, supervise, and discipline against St. Louis County and chief Belmar.

C. Antawn Harris

At approximately 7:00 p.m. on the evening of August 11, Antawn Harris walked from his apartment to a barbeque restaurant on the corner of West Florissant Avenue and Canfield Drive. Harris saw that the police were attempting to disperse the crowd on West Florissant and had deployed tear gas, but Harris did not disperse.

-4-

Instead, he stayed and filmed the events on his phone. Harris testified that while he was standing near the street, a police officer shot him in the face with a nonlethal projectile. Harris was not able to identify the officer who shot him or the department to which he belonged. Harris was taken to the hospital, was discharged that evening, and did not seek any follow up care.

Harris alleges state law claims for intentional infliction of emotional distress and assault and battery against unidentified police officers from the City of Ferguson and St. Louis County. He also alleges negligent supervision against the City of Ferguson and St. Louis County. He finally alleges § 1983 claims for unreasonable seizure and excessive force against unidentified police officers from the City of Ferguson and St. Louis County and for failure to train, supervise, and discipline against the City of Ferguson, chief Jackson, St. Louis County, and chief Belmar.

D. Kerry White, Sandy Bowers, and Kai Bowers

On the following evening of August 12, crowds near West Florissant Avenue and Chambers Road became violent. Police had heard gunshots, and people were throwing objects and directing threats at the officers. Police officers made announcements on loud speakers instructing the crowd to disperse. The police also deployed smoke and tear gas. In an additional effort to disperse the crowds, police officers formed a skirmish line. The skirmish line headed east on Chambers Road where a crowd of about 40 or 50 people were standing. At around midnight the police line reached Chambers Road and Lorna Lane. There were between 10 and 50 people on Lorna Lane at this time.

When the skirmish line reached the intersection of Chambers and Lorna, a police helicopter alerted officers on the ground that a car was driving on Lorna toward the police line. The officers in the skirmish line observed a car driving toward them shortly thereafter. They gave several instructions for the car to stop, but it

-5-

continued moving toward them. When it stopped close to the police line, the occupants (Kerry White, Sandy Bowers, and Kai Bowers) were arrested for refusal to disperse.

Kerry White alleges state law claims for false arrest and assault and battery against St. Louis County police officers McCann, McCoy, Hill, and Antonio Valentine. He also alleges a § 1983 claim for unreasonable seizure against the same four officers. Sandy and Kai Bowers allege state law claims for false arrest and assault and battery against St. Louis County police officers McCann, Hill, Valentine, and St. Louis County detective Nicholas Payne. They also allege § 1983 claims for unreasonable seizure against the same officers. All three plaintiffs allege negligent supervision against the City of Ferguson and St. Louis County and a § 1983 claim for failure to train, supervise, and discipline against the City of Ferguson, chief Jackson, St. Louis County, and chief Belmar.

E. Tracey White and William Davis

Tracey White and her son William Davis attended a rally in Ferguson on August 13. At approximately 6:00 p.m. White and Davis walked to a McDonald's near the corner of West Florissant Avenue and Ferguson Avenue. They ordered food and waited for White's husband to pick them up. At approximately 7:00 p.m. police officers told everyone inside the restaurant that they had to leave. St. Louis County police sergeant David Ryan testified that the businesses along West Florissant Avenue were cleared due to the violence that had occurred in the days prior to August 13.

Police officers then directed the crowd of people on the street to move west on Ferguson Avenue. The police instructed the crowd that they could be picked up at the intersection of Sharondale Circle and Ferguson Avenue. When officers reached that intersection, however, they encountered a truck that was stuck in the grass by the

Appellate Case: 16-3897    Page: 6    Date Filed: 08/01/2017 Entry ID: 4563290

side of the road. Because officers did not know who was driving the truck or why it was there, they decided to clear the area around it and then move it out of the way in order to ensure the safety of the officers and bystanders.

White and Davis were instructed to continue walking west on Ferguson Avenue or to proceed north on Sharondale Circle. When White did not follow these instructions, she was arrested and charged with refusal to disperse. A police officer told Davis that he would have to leave the area even though his mother was being arrested. When Davis failed to leave, he was arrested and charged with refusal to disperse.

White and Davis allege state law claims for false arrest, intentional infliction of emotional distress, and assault and battery against St. Louis County police sergeant Ryan, St. Louis County police officers McCoy, McCann, and City of Ferguson police officer Justin Cosma. They also allege negligent supervision against the City of Ferguson and St. Louis County. They finally allege § 1983 claims for false arrest and excessive force against Ryan, McCann, McCoy, and Cosma and for failure to supervise, train, and discipline against the City of Ferguson, chief Jackson, St. Louis County, and chief Belmar.

F. DeWayne Matthews

On the evening of August 13, a crowd again gathered on West Florissant Avenue and engaged in violent behavior. Members of the crowd threw objects at the police including bottles, rocks, and a Molotov cocktail. The police ordered the crowd to disperse and deployed tear gas and smoke. Police formed a skirmish line and moved north on West Florissant in an attempt to disperse the crowd. The skirmish line included St. Louis County detectives Payne, Aaron Vinson, Derik Jackson, William Bates, and Joe Patterson.

-7-

That evening after DeWayne Anton Matthews, Jr. left a bus on West Florissant and Chambers Road, he headed south on West Florissant toward Kappel Drive. He was intending to take a right on Kappel Drive and head toward his mother's house, but officers told him to continue south on West Florissant.

As Matthews was proceeding down West Florissant Avenue he began to walk through tear gas and smoke that increased in thickness as he went. He then encountered the police skirmish line. After the officers on the skirmish line noticed Matthews, detective Patterson gave him a loud verbal command to turn around and walk the other way. When Matthews kept walking toward the police line detective Patterson yelled that he was under arrest. Matthews nevertheless continued advancing toward the police line. At this point Jackson yelled "less lethal, less lethal, less lethal." He then fired nonlethal projectiles at Matthews. Matthews later testified that he was hit by about five bean bag rounds and four rubber bullets.

Matthews testified that after he was struck in the shin with a bean bag he fell into a culvert on the side of the road. The culvert was filled with two to three feet of water. Detectives Vinson and Bates left the skirmish line to pull Matthews out of the culvert. Matthews testified that before the officers pulled him out of the culvert, they held his head underwater for three to five seconds before lifting him out of the water and slamming him face first into the pavement. Matthews testified that an officer put his knee on his back while he was lying on the pavement. Then, some five or six officers proceeded to beat him. He testified that the officers punched and kicked him while using racial slurs like "nigger" and "mop head." He testified that the beating lasted two to three minutes and that he was hit about five times by different officers. After the officers handcuffed him, they used pepper spray on him he testified.

According to the detectives' testimony, detectives Vinson and Bates were attempting to put handcuffs on Matthews while detective Payne was yelling at him to stop resisting. Detective Patterson testified that he was the officer who

-8-

administered the pepper spray, and that Jackson merely stood nearby while Matthews was being arrested. None of the officers testified that they kicked or punched Matthews or used any racial slurs. Matthews was taken to the hospital where he was seen and released; the doctor's assessment was that Matthews appeared to be in moderate pain. His x-rays and CT scan appeared normal. Matthews did not seek follow up care.

Matthews alleges state law claims for false arrest, intentional infliction of emotional distress, and assault and battery against detectives Jackson, Patterson, Bates, Payne, and Vinson. He also alleges negligent supervision against the City of Ferguson and St. Louis County. He finally alleges § 1983 claims for false arrest and excessive force against detectives Jackson, Patterson, Bates, Burns, Payne, and Vinson and for failure to train, supervise, and discipline against the City of Ferguson, chief Jackson, St. Louis County, and chief Belmar.

G. Procedural History

The district court granted the individual defendants summary judgment on all plaintiffs' claims. The court granted the individual defendants official immunity on plaintiffs' state law claims after concluding that plaintiffs had presented no evidence that defendants had acted with malice or bad faith. The individual defendants were granted qualified immunity on plaintiffs' § 1983 unlawful arrest claims for the reason that the individual defendants had arguable probable cause to make all of the arrests in question. The court also granted the individual defendants qualified immunity on plaintiffs' § 1983 excessive force claims. Finally, the court also granted defendants summary judgment on plaintiffs' § 1983 failure to train, supervise, and discipline claims because plaintiffs had failed to overcome summary judgment against any of the individual defendants.

-9-

Appellate Case: 16-3897    Page: 9    Date Filed: 08/01/2017 Entry ID: 4563290

## II. Analysis

We review a district court's "grant of summary judgment de novo and consider the facts in the light most favorable to the nonmoving party." Nichols v. Tri-Nat'l Logistics, Inc., 809 F.3d 981, 985 (8th Cir. 2016). A district court's grant of "[s]ummary judgment is only appropriate when 'there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" Id. (quoting Pinson v. 45 Dev., LLC, 758 F.3d 948, 951–52 (8th Cir. 2014)).

The district court concluded that the individual defendants were entitled to qualified immunity on plaintiffs' § 1983 claims for unlawful arrest and excessive force. To review such a ruling, we examine "(1) whether the facts shown by the plaintiff make out a violation of a constitutional or statutory right, and (2) whether that right was clearly established at the time of the defendant's alleged misconduct." Foster v. Mo. Dep't of Health & Senior Servs., 736 F.3d 759, 762 (8th Cir. 2013) (quoting Winslow v. Smith, 696 F.3d 716, 731 (8th Cir. 2012)). "If the answer to either question is no" then a defendant is entitled to qualified immunity. Doe v. Flaherty, 623 F.3d 577, 583 (8th Cir. 2010). We may take up these questions in either order. Foster, 736 F.3d at 763.

A warrantless arrest does not violate "the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" Borgman v. Kedley, 646 F.3d 518, 522–23 (8th Cir. 2011) (quoting Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005)). "An officer has probable cause to make a warrantless arrest when the totality of the circumstances at the time of the arrest 'are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense.'" Id. at 523 (quoting Fisher v. Wal-Mart Stores, Inc., 619 F.3d 811, 816 (8th Cir. 2010)). There is arguable probable cause "even where an officer mistakenly arrests a suspect

-10-

believing it is based in probable cause if the mistake is 'objectively reasonable.'" Id. (quoting Amrine v. Brooks, 522 F.3d 823, 832 (8th Cir. 2008)).

Excessive force claims under the Fourth Amendment are governed by a reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989). Analyzing "whether the force used to effect a particular seizure is reasonable under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation marks omitted). Applying this balancing test "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id.

The district court also determined that the individual defendants were entitled to official immunity from plaintiffs' state law claims. In Missouri "the official immunity doctrine protects public officials from liability for injuries arising out of their discretionary acts or omissions." Reasonover v. St. Louis Cty., 447 F.3d 569, 585 (8th Cir. 2006). Deciding to arrest someone is a discretionary act because "the officer must decide what course should be pursued based on the circumstances at hand." Blue v. Harrah's N. Kansas City, LLC, 170 S.W.3d 466, 479 (Mo. Ct. App. 2005). Official immunity is a qualified immunity, however, "and does not apply to those discretionary acts done in bad faith or with malice." Reasonover, 447 F.3d at 585 (quoting Davis v. Bd. of Educ. of St. Louis, 963 S.W.2d 679, 688 (Mo. Ct. App. 1998)). Bad faith "ordinarily contains a requirement of actual intent to cause injury." State ex rel. Twiehaus v. Adolf, 706 S.W.2d 443, 447 (Mo. 1986) (en banc). We have affirmed a district court's grant of summary judgement on official immunity grounds when a plaintiff did not present "specific evidence of bad faith." Reasonover, 447 F.3d at 585–86.

Appellate Case: 16-3897     Page: 11     Date Filed: 08/01/2017 Entry ID: 4563290

The district court granted police chiefs Belmar and Jackson, St. Louis County, and the City of Ferguson summary judgment on plaintiffs' § 1983 claims for failure to train, supervise, and discipline after concluding that plaintiffs' underlying claims against the individual defendants failed. Because plaintiffs have sued chiefs Belmar and Jackson in their official capacities, their claims are "against the governmental entity itself." Brockinton v. City of Sherwood, 503 F.3d 667, 674 (8th Cir. 2007). Since § 1983 does not allow for vicarious liability, "a plaintiff must identify a governmental 'policy or custom that caused the plaintiff's injury' to recover" under that statute. Id. (quoting Bd. of the Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)). Municipal liability will not attach unless individual liability is "found on an underlying substantive claim." Id. (quoting McCoy v. City of Monticello, 411 F.3d 920, 922 (8th Cir. 2005)).

A. Nathan Burns

Burns argues in his opening brief that "there is not a single material undisputed [sic] that would entitle the Appellees to summary judgment." Burns does not identify any facts in dispute, however, and does not raise any specific arguments with respect to any of his claims. Indeed, he only identifies one of his claims in his opening brief when he states "[i]nsofar as the arrest of Mr. Burns is concerned, there is a genuine issue as to every material fact." Because Burns has not presented any "meaningful argument" in his opening brief regarding his state law claims for intentional infliction of emotional distress, negligent supervision, and assault and battery and his § 1983 claim for excessive force, he has waived review of the district court's decision on those claims. See Chay-Velasquez v. Ashcroft, 367 F.3d 751, 756 (8th Cir. 2004). Although he arguably also waived review of his § 1983 unreasonable seizure and state law false arrest claims, we review them because they are specifically referenced in his brief.

-12-

Burns' § 1983 claim for unreasonable seizure fails because St. Louis County police officers McCann and Hill had at least arguable probable cause to arrest him for refusal to disperse. A person is guilty "of refusal to disperse if, being present at the scene of an unlawful assembly, or at the scene of a riot, he or she knowingly fails or refuses to obey the lawful command of a law enforcement officer to depart from the scene of such unlawful assembly or riot." Mo. Rev. Stat. § 574.060.1. An unlawful assembly occurs if a person "knowingly assembles with six or more other persons and agrees with such persons to violate" the law. Mo. Rev. Stat. § 574.040.1; see also State v. Mast, 713 S.W.2d 601, 604 (Mo. Ct. App. 1986). A person can join "an unlawful assembly by not disassociating himself from the group assembled and by knowingly joining or remaining with the group assembled after it has become unlawful." Mast, 713 S.W.2d at 604.

Before officers McCann and Hill arrested Burns, he was standing near a group of approximately one hundred people who were throwing objects at the police. After the crowd turned violent, the police issued multiple orders to the crowd to disperse. The officers arrested Burns while he was standing with a group of people in an area that officers had been attempting to clear. On these facts, McCann and Hill could have reasonably concluded that Burns was "cognizant of the unlawful acts being committed by the other members of the assembly," chose not to disassociate himself from the assembly, had heard the dispersal orders, and chose not to disperse. See Mast, 713 S.W.2d at 604; see also Mo. Rev. Stat. § 574.060.1. The officers thus had at least arguable probable cause to arrest Burns for refusal to disperse and are entitled to qualified immunity because they did not violate his constitutional rights.

The district court properly granted the individual defendants official immunity on Burns' state law false arrest claim because he has not presented "specific evidence of bad faith" or malice. Reasonover, 447 F.3d at 585–86. We also affirm the district court's dismissal of Burns' § 1983 claim for failure to train, supervise, and discipline

-13-

because he lacks an underlying substantive claim against the individual defendants. See Brockinton, 503 F.3d at 674.

B.  Damon Coleman and Theophilus Green

Coleman and Green first argue that the district court erred by granting the individual defendants qualified immunity on their § 1983 unreasonable seizure claims.[1]  They claim that the police did not have arguable probable cause to arrest them on the night of August 11.  We disagree.  That night, a large crowd had gathered in Ferguson and had turned violent.  The police issued multiple orders to the crowd to disperse, but Coleman and Green did not follow the orders.  On these facts, the individual defendants could have reasonably concluded that Coleman and Green were "cognizant of the unlawful acts being committed by the other members of the assembly," chose not to disassociate themselves from the assembly, had heard the dispersal orders, and chose not to disperse.  See Mast, 713 S.W.2d at 604; see also Mo. Rev. Stat. § 574.060.1.  The officers thus had at least arguable probable cause to arrest Coleman and Green for refusal to disperse and are entitled to qualified immunity on their § 1983 unreasonable seizure claims because the officers did not violate their constitutional rights.

Coleman and Green also argue that the use of rubber bullets on them prior to their arrests amounted to excessive force.  All three Maryland Heights police officers named by Coleman and Green submitted affidavits stating that they had not been carrying nonlethal firearms at the time of the relevant arrests.  Coleman and Green attempt to dispute this fact by pointing to officer McKinnon's testimony that some officers in his unit may have been armed with a nonlethal shotgun that day, but none

---

[1]Because Coleman and Green have not presented any "meaningful argument" in their opening brief regarding their state law claims they have waived review of the district court's decision on those claims.  See Chay-Velasquez, 367 F.3d at 756.

-14-

were identified. Coleman and Green's claim is thus unavailing because § 1983 does not allow for vicarious liability. Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Rather, a plaintiff must be able to prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Id.

Coleman claims that he was subjected to excessive force while he was being handcuffed. He testified that while he was lying on his stomach being handcuffed, he was kicked by a police officer, struck once in the back with a stick, and dragged on the ground. Coleman's complaint alleged that, during his arrest, defendants "hurled racial epithets at [him], while punching and kicking [him] the entire time." He alleges that defendants did this "for no reason other than sport." Green testified that he was looking away but did not observe officers use any force during Coleman's arrest. Defendants Delia, McKinnon, and DeVouton testified that Coleman was arrested without incident and without force. They testified that DeVouton was the officer who handcuffed Coleman.

Coleman's video and audio recording of the event wholly contradicts Coleman's testimony describing his arrest. The video shows several police officers approaching Coleman and Green. The officers order the two men to the ground. After arguing back, Coleman places his camera face up and lowers himself to the ground. The audio records Coleman's arrest, which takes less than one minute. The officers received radio instructions to take Coleman and Green into custody. An unidentified officer uses zip ties to handcuff Coleman. Forty five seconds after he first laid on the ground, and roughly twenty seconds after the handcuffing begins, officers help Coleman stand. Referring to the camera on the ground, Coleman says "that's mine." An officer hands the camera to Coleman. Just before it shuts off, Coleman jokingly asks an officer, "selfie?" to which the officer laughs and says, "I got you a good selfie."

-15-

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  Scott v. Harris, 550 U.S. 372, 380 (2007).  Despite the clear audio on Coleman's recording, no sounds indicate anything like the assault Coleman alleges. If he had been kicked, struck with a stick, and dragged, there would be some evidence of a scuffle.  Everything said during the arrest is recorded, and no racial epithets nor any beating can be heard.  Given this video and audio evidence, we need not accept Coleman's version of the facts.  See Ehlers v. City of Rapid City, 846 F.3d 1002, 1010 (8th Cir. 2017).  The recording makes clear that officers did not use force greater than necessary to execute an arrest when handcuffing Coleman.  See Graham, 490 U.S. at 396.  Accordingly, we affirm the district court's dismissal of Coleman's excessive force claim.

Because Green and Coleman have no remaining substantive claims against the individual defendants, we also affirm the dismissal of their § 1983 claims for failure to train, supervise, and discipline.  See Brockington, 503 F.3d at 674.

C.  Antawn Harris

Harris' only argument on appeal is that chief Belmar and St. Louis County are liable under § 1983 for failure to train, supervise, and discipline.  Harris has thus waived review of the district court's decision on his state law claims for intentional infliction of emotional distress, negligent supervision, and assault and battery and his § 1983 claims for unreasonable seizure and excessive force.  See Chay-Velasquez, 367 F.3d at 756.  Accordingly, we affirm the district court's dismissal of his claims against chief Belmar and St. Louis County because municipal liability will not attach unless individual liability is found on an underlying substantive claim.  Brockinton, 503 F.3d at 674.

-16-

D.  Kerry White, Sandy Bowers, and Kai Bowers

White and the Bowers argue that the district court erred by granting the individual defendants qualified immunity on their § 1983 unreasonable seizure claims.[2]  They claim that defendants did not have arguable probable cause to arrest them for refusal to disperse because they were not in a group of seven or more persons and had not been ordered to disperse.

On the night of August 12, crowds near West Florissant Avenue and Chambers Road became violent.  Police officers made announcements on loud speakers instructing the crowd to disperse.  The police also deployed smoke and tear gas.  The police skirmish line headed east on Chambers Road where a crowd of about 40 or 50 people was standing.  At around midnight the police line reached Chambers Road and Lorna Lane where approximately 10 to 50 people were gathered.  It was at this point that officers in the skirmish line observed a car driving toward them with White and the Bowers.  Officers then arrested the occupants of the vehicle.

On these facts, the individual defendants could have reasonably concluded that White and the Bowers were "cognizant of the unlawful acts being committed by the other members of the assembly," chose not to disassociate themselves from the assembly, had heard the dispersal orders, and chose not to disperse.  See Mast, 713 S.W.2d at 604; see also Mo. Rev. Stat. § 574.060.1.  The officers thus had at least arguable probable cause to arrest White and the Bowers for refusal to disperse and are entitled to qualified immunity.  We also affirm the district court's dismissal of White and the Bowers' § 1983 claim for failure to train, supervise, and discipline because

---

[2]Because White and Davis have not presented any "meaningful argument" in their opening brief regarding their state law claims they have waived review of the district court's decision on those claims.  See Chay-Velasquez, 367 F.3d at 756.

Appellate Case: 16-3897     Page: 17     Date Filed: 08/01/2017 Entry ID: 4563290

they lack an underlying substantive claim against the individual defendants. See Brockinton, 503 F.3d at 674.

E. Tracey White and William Davis

White and Davis argue that the district court erroneously granted the individual defendants qualified immunity on their § 1983 false arrest claims.[3] The individual defendants however had at least arguable probable cause to arrest White and Davis for interfering with the duties of a police officer. In St. Louis County, "[i]t is unlawful for any person to interfere in any manner with a police officer or other employee of the County in the performance of his official duties or to obstruct him in any manner whatsoever while performing any duty." St. Louis Cty. Rev. Ordinances tit. VII, ch. 701, § 701.110.

At the time of the arrests of White and Davis the police had been attempting to clear the intersection of Ferguson Avenue and Sharondale Circle because there was a truck stuck near the intersection. The police decided to clear the area because protestors had attacked them on previous nights from this vicinity and they had not yet ascertained whether the truck was a threat to them under these conditions. White and Davis were thus instructed to either continue walking west on Ferguson Avenue or proceed north on Sharondale Circle. When White and Davis did not comply with the officers' orders to clear the area, the officers arrested them.

_____

[3]Although White and Davis do not contest their § 1983 excessive force claims in their opening brief, they attempt to argue in their reply that they were raised in its fact section. Since they did not present any "meaningful argument" regarding excessive force in their opening brief, such claims have been waived. See Chay-Velasquez, 367 F.3d at 756. Their state law claims are similarly waived because there is no argument on them in their brief. See id.

-18-

We have previously concluded that a failure to follow an officer's orders which were grounded in officer safety created at least arguable probable cause to arrest an individual for obstructing a police officer. See Ehlers, 846 F.3d at 1009–1010 (applying South Dakota law). Here the individual defendants had at least arguable probable cause to arrest White and Davis for interfering with the duties of a police officer because they had refused to comply with orders for officer safety.

White and Davis argue that since they were charged with refusal to disperse, defendants cannot now argue that they had probable cause to arrest them for the separate crime of interfering with the duties of a police officer. An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause," however. Devenpeck v. Alford, 543 U.S. 146, 153 (2004). We thus affirm the district court's dismissal of White and Davis' § 1983 unlawful arrest claims on qualified immunity grounds because defendants did not violate their constitutional rights. We also affirm the district court's dismissal of White and Davis' § 1983 claims for failure to train, supervise, and discipline because they lack an underlying substantive claim against the individual defendants. Brockinton, 503 F.3d at 674.

F. DeWayne Matthews

Matthews challenges the district court's grant of summary judgment on his false arrest and excessive force claims.[4] As to his false arrest claim, he argues that the individual defendants did not have arguable probable cause to arrest him for refusal to disperse because he was never assembled with six or more people. On the evening

---

[4]Because Matthews has not presented any "meaningful argument" in his opening brief regarding his state law claims for false arrest, intentional infliction of emotional distress, negligent supervision, and assault and battery, he has waived review of the district court's decision on those claims. See Chay-Velasquez, 367 F.3d at 756.

Appellate Case: 16-3897    Page: 19    Date Filed: 08/01/2017 Entry ID: 4563290

of August 13 a crowd of people on West Florissant was throwing objects at the police including bottles, rocks, and a Molotov cocktail. The police then issued several orders to the crowd to disperse. Officers in the police skirmish line on West Florissant subsequently encountered Matthews headed directly toward them. Officers testified that they shouted at him to turn around and that Matthews did not comply with this command.

On these facts, the individual defendants could have reasonably concluded that Matthews was "cognizant of the unlawful acts being committed by the other members of the assembly," chose not to disassociate himself from the assembly, had heard the dispersal orders, and chose not to disperse. See Mast, 713 S.W.2d at 604; see also Mo. Rev. Stat. § 574.060.1. The officers thus had at least arguable probable cause to arrest Matthews for refusal to disperse and are entitled to qualified immunity on this claim because they did not violate his constitutional rights.

Matthews next argues that it was an excessive use of force for police officers to fire rubber bullets and bean bags at him while he was approaching the police skirmish line. At the time Matthews was shot with nonlethal projectiles, he was in the vicinity of a violent crowd of people and proceeding directly toward the police skirmish line. The officers told him to stop approaching the line, but he did not obey. Defendant Derik Jackson then fired nonlethal projectiles at him. After Matthews was initially shot, he continued to move toward the police line, causing Jackson to continue firing. Under these circumstances a reasonable officer could have concluded that Matthews had been a part of the violent crowd, that his advances toward the skirmish line posed a threat to officer safety, and that he disobeyed officer orders to stop. See Graham, 490 U.S. at 396–97. Defendant Jackson's use of force was thus reasonable under the circumstances, and he is entitled to qualified immunity on this claim.

-20-

Matthews finally argues that the district court erred by granting the individual defendants qualified immunity on his claim that the officers used excessive force while they were effectuating his arrest. Matthews testified that officers held his head underwater for three to five seconds, slammed his face onto the pavement, placed a knee on his back when he was being handcuffed, pepper sprayed him, and took turns punching and kicking him for two to three minutes while calling him racial slurs.

First, we conclude that it was not an unreasonable use of force to push Matthews to the ground and place a knee on his back. The right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham, 490 U.S. at 396. We have previously had occasion to reject an excessive force claim where an officer kneed the plaintiff in the back while he was placing the him in the patrol car, despite the fact that the plaintiff "did not resist arrest." Cavataio v. City of Bella Villa, 570 F.3d 1015, 1017, 1020 (8th Cir. 2009). The individual defendants thus are entitled to qualified immunity on Matthews' excessive force claims as they relate to them pushing him to the ground and placing a knee on his back.

Second, we conclude that the district court erred in granting defendants Vinson, Bates, Patterson, and Payne qualified immunity with regard to Matthews' claims that officers had held his head underwater for three to five seconds, pepper sprayed him, and took turns punching and kicking him for two to three minutes. We have previously concluded that police officers had used an objectively unreasonable amount of force when they allegedly kicked and punched an individual while he was handcuffed on the ground and no longer resisting. Krout v. Goemmer, 583 F.3d 557, 566 (8th Cir. 2009). We noted in that case, that it "was clearly established that the use of this type of gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable under the Fourth Amendment." Id.

-21-

Taking the evidence in the light most favorable to Matthews, the alleged facts here are almost identical to those in <u>Krout</u>.  Matthews was lying on the ground, handcuffed, and not resisting arrest while officers kicked, punched, and pepper sprayed him.  Matthews also testified that while he was lying face down in the culvert, officers approached him and held his head underwater for three to five seconds.  This is the type of gratuitous force that is objectively unreasonable under the Fourth Amendment.

The district court dismissed Matthews' excessive force claim after finding that medical evidence undermined his testimony.  As an initial matter, this is a misleading characterization of the record.  Matthews' medical records simply indicate that he told the doctor that he had not lost consciousness, had not told paramedics about the beating or drowning, and that his x rays and CT scans were normal.  None of this evidence contradicts Matthews' testimony that he had been beaten and drowned.  Nevertheless, even if the medical evidence did conflict with Matthews' testimony, that type of factual and credibility conflict is a genuine issue of material fact, and it is "the role of the jury" to resolve such conflicts.  <u>See</u> <u>Boesing v. Spiess</u>, 540 F.3d 886, 890 (8th Cir. 2008).

Defendants argue that we should affirm the grant of qualified immunity because Matthews is unable to identify the defendants who performed these acts.  Defendants are correct that "§ 1983 liability is personal."  <u>Doran v. Eckold</u>, 409 F.3d 958, 965 (8th Cir. 2005) (en banc).  To prevail on a § 1983 claim, a plaintiff must show each individual defendant's personal involvement in the alleged violation.  <u>See</u> <u>Dahl v. Weber</u>, 580 F.3d 730, 733 (8th Cir. 2009); <u>Wilson v. Northcutt</u>, 441 F.3d 586, 591 (8th Cir. 2006).  That does not mean however that a § 1983 excessive force plaintiff must be able to personally identify his assailants to avoid summary judgment.

-22-

Testimony of the officers on the scene, including that of Vinson and Bates, confirms that Vinson and Bates physically removed Matthews from the culvert. Patterson confirmed that he deployed pepper spray. Payne testified that he observed the arrest and yelled at Matthews to stop resisting. When Matthews was handcuffed, he sat up and leaned against Payne's leg. Payne helped Matthews up and brought him to the paramedics. This is sufficient evidence to identify Vinson, Bates, Patterson, and Payne as officers who personally participated in Matthews's arrest. While the officers and Matthews vehemently disagree about whether Matthews was resisting and the extent and reasonableness of the force applied, these fact disputes cannot be resolved on summary judgment. Therefore, the district court erred in granting these defendants qualified immunity.

There is no evidence that defendant Derik Jackson was personally involved in the alleged use of excessive force during the arrest. Officers testified that Jackson observed others pull Matthews from the culvert and arrest him, and that Jackson could not personally participate because he was carrying a firearm. Notably, Matthews's Opposition to the Saint Louis County Defendants' Motion for Summary Judgment and his brief on appeal only discuss Jackson's involvement in deploying a less-lethal shotgun, not the alleged assault on Matthews during his removal from the culvert and arrest. Because Matthews presents no evidence showing Jackson's personal involvement in the alleged use of excessive force during Matthews's arrest, Jackson is entitled to qualified immunity on this claim.

In an excessive force case, a police officer may be liable for breach of a duty to intervene "where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration." Krout, 583 F.3d at 565. Matthews did not assert a claim against Jackson for failure to intervene in the alleged assault at the district court or before our court, however, and therefore we do not consider it. See Chay-Velasquez, 367 F.3d at 756; Burton v. Richmond, 276 F.3d 973, 977 (8th Cir. 2002).

-23-

The district court dismissed Matthews' § 1983 failure to train, supervise, and discipline claim on the ground that municipal liability may not attach absent liability on an underlying substantive claim. Because we reverse the grant of summary judgment on Matthews' § 1983 excessive force claim, we also reverse on his failure to train, supervise, and discipline claim as it relates to his remaining excessive force claim. See Ryan v. Armstrong, 850 F.3d 419, 428 (8th Cir. 2017).

III.  Conclusion

For these reasons we affirm in part and reverse and remand in part, as described above.

_____

-24-

Michael E. Gans
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

August 01, 2017

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

     RE: 16-3897 Tracey White, et al v. Thomas Jackson, et al

Dear Sirs:

     A published opinion was filed today in the above case.

     Counsel who presented argument on behalf of the appellant was Gregory L. Lattimer, of Washington, DC.

     Counsel who presented argument on behalf of the appellees John Belmar, David Ryan, Terrence McCoy, Michael McCann, Derik Jackson, Joe Patterson, Aaron Vinson, William Bates, Nicholas Payne, Hill, Antonio Valentine, and St. Louis County was Michael Edward Hughes, of Saint Louis, MO. Also appearing on the brief for these appellees was Priscilla F. Gunn, Saint Louis, MO.

     Counsel who presented argument on behalf of the appellees, City of Ferguson, Thomas Jackson, Justin Cosmo, Matt Delia, Brandon McKinnon, and David "Ryan" DeVouton, was Robert T. Plunkert, of Saint Louis, MO. The following attorney also appeared on the brief for these appellees: Peter J. Dunne, of Saint Louis, MO.

     The judge who heard the case in the district court was Honorable Henry E. Autrey. The judgment of the district court was entered on September 30, 2016.

     If you have any questions concerning this case, please call this office.

                  Michael E. Gans
                  Clerk of Court

SRD
Enclosure(s)
cc: MO Lawyers Weekly

     District Court/Agency Case Number(s): 4:14-cv-01490-HEA

# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

Michael E. Gans
*Clerk of Court*

August 01, 2017

Mr. Gregory L. Lattimer
LAW OFFICES OF GREGORY L. LATTIMER
Suite 800
1200 G Street, N.W.
Washington, DC  20005

RE:  16-3897  Tracey White, et al v. Thomas Jackson, et al

Dear Counsel:

The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion. The opinion will be released to the public at 10:00 a.m. today. Please hold the opinion in confidence until that time.

Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. No grace period for mailing is allowed, and the date of the postmark is irrelevant for pro-se-filed petitions. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

Michael E. Gans
Clerk of Court

SRD
Enclosure(s)
cc:      Mr. Peter J. Dunne
         Mr. Reginald A. Greene
         Ms. Priscilla F. Gunn
         Mr. Michael Edward Hughes
         Mr. Gregory J. Linhares
         Mr. Ronald Alan Norwood
         Mr. Robert T. Plunkert
         Mr. Malik Z. Shabazz
         Mr. Michael A. Shuman

District Court/Agency Case Number(s):   4:14-cv-01490-HEA