IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DeWAYNE MATTHEWS, | ) |
| Plaintiff | ) ) ) |
| v. | ) ) Cause No. 14-cv-01490 - HEA |
| JON BELMAR, et al., | ) ) ) |
| Defendants. | ) |

**STATEMENT OF FACTS OF DEFENDANT JON BELMAR AND
ST. LOUIS COUNTY IN SUPPORT OF THEIR RENEWED MOTION FOR SUMMARY
JUDGMENT**

COME NOW Defendants Jon Belmar and St. Louis County and for the Statement of Uncontroverted Material Facts in Support of their Renewed Motion for Summary Judgment provide the following:

1. Defendant Jon Belmar has been the Chief of the St. Louis County Police Department since January 31, 2014. Belmar Aff. ¶ 1

2. St. Louis County has been accredited by the Commission on Accreditation of Law Enforcement Agencies ("CALEA") since 1998. Belmar Aff. ¶ 5

3. CALEA is the premier accrediting association of law enforcement agencies within and outside the United States. Belmar Aff. ¶ 9

4. Every three years the St. Louis County Police Department must go through an accreditation process which involves on-site assessment by CALEA auditors, and a review of St. Louis County's policies, procedures, practices and information. Belmar Aff. ¶ 10.

5. Prior to August, 2014, St. Louis County had been through the audit process, and was reaccredited by CALEA in December 2012. Belmar Aff. ¶ 11.

6. The Police Department went through the reaccreditation process in 2015, and once again achieved accreditation in December 2015. Belmar Aff. ¶ 12.

7. During the 2015 assessment cycle, the CALEA Commission reviewed the policies, practices and training that were in place during the Ferguson unrest. Belmar Aff. ¶ 18.

8. St. Louis County had a Use of Force Written Policy that was in place in August, 2014, which is Exhibit A. Belmar Aff. ¶ 19.

9. St. Louis County has had a Conduct and Discipline Rules and Procedures Manual in place. Belmar Aff. ¶ 24.

10. Article 14 in the Manual provides for the discipline, up to and including termination for any officer who engages in unlawful or oppressive exercise of authority.  Excessive force and unlawful arrests fall under the Article. Belmar Aff. ¶ 25.

11. The Department has a Bureau of Professional Standards that is responsible for investigating all allegations of employee misconduct, and for making recommendations on the appropriate discipline. Belmar Aff. ¶ 26.

12. The Chief of Police must approve all disciplinary recommendations. Belmar Aff. ¶27.

13. Chief Belmar is not aware of an instance where a police officer has not received significant discipline on a sustained complaint of excessive force. ¶ Belmar Aff. ¶ 29.

14. Chief Belmar has no knowledge of or reason to believe that Det. Joe Patterson, Det. Aaron Vinson, Det. William Bates, or Det. Nicholas Payne had a pattern of using excessive force. Belmar Aff. ¶ 31

15. CALEA has in excess of twenty five standards that apply to internal affairs/disciplinary policies and procedures. St. Louis County met all of them in its 2012 and 2015 reaccreditation processes. Belmar Aff. ¶ 32.

16. All St. Louis County Police Officers must be certified by the Missouri Department of Public Safety, and comply with Peace Officer Standards and Training ("POST"). Belmar Aff. ¶ 33.

17. The POST Program licenses law enforcement basic training centers, basic training instructors, approves law enforcement training curricula, and provides staff support for the Peace Officer Standards and Training (POST) Commission. Belmar Aff. ¶ 34.

18. St. Louis County and Municipal Training Academy and all of its instructors are licensed by the POST Commission. Belmar Aff. ¶ 35.

19. To be POST certified, a police officer must graduate from a Police Academy and pass the Missouri peace officer license examination. All officers are also required to take 48 hours of POST approved continuing education credits every thirty six months. Belmar Aff. ¶ 36.

20. Officers are trained in the Academy on the St. Louis County Use of Force Policy, and that they may use no more force than is reasonably necessary to effectuate an arrest, or other legitimate law enforcement purpose. Belmar Aff. ¶ 37.

21. All County Police Officers without legitimate extenuating circumstances, were required to undergo Civil Disturbance Riot Training, in the spring of 2014 by an instructor who was trained by the United States Department of Homeland Security. Belmar Aff. ¶ 38.

22. The topics covered were police response to civil disturbances and riotous situations, including skirmish lines and how to reduce the use of force. Belmar Aff. ¶ 40.

23. Civil Disturbance and Riot Training has also been given in the St. Louis County and Municipal Academy for new recruits over the past seven years. Belmar Aff. ¶ 41.

24. St. Louis County has a chain of command for the supervision of officers. Belmar Aff. ¶ 42.

25. CALEA has standards that apply to supervision, and in 2012 and 2015, St. Louis County met all the standards. Belmar Aff. ¶ 43.

26. In order to ensure that St. Louis County Police Officers are properly supervised, supervisors are regularly evaluated. Belmar ¶ 44.

27. Each St. Louis County supervisor receives a performance evaluation every three months during his or her probationary period, and is evaluated twice a year thereafter. Belmar Aff. ¶ 45.

28. There are nine categories that supervisors are rated on, over and above the evaluation of non-supervisors. Belmar Aff. ¶ 46.

29. Chief Belmar is confident that there is not a widespread pattern of unconstitutional conduct within the St. Louis County Police Department because of the hiring process, the policies in place, the training, the supervision, the discipline, and the CALEA certification. Belmar Aff. ¶ 48.

30. During the unrest in Ferguson in August 2014, all County police officers were always under the direction, control and supervision of the St. Louis County Police Department. Belmar Aff. ¶ 58.

31. Chief Belmar remained present in the Ferguson area to supervise the police activities for as long as his physical stamina permitted during the heightened protesting and criminal activity in August, 2014. Belmar Aff. 63.

32. There were St. Louis County commanders and supervisors on the ground supervising at all times between August 10 even before criminal activity began to escalate, and August 26 in Ferguson. Belmar Aff. ¶ 66.

33. Chief Belmar made sure that all police officers who reported for duty in the Ferguson area between August 10 and August 13 were supervised. Belmar Aff. ¶ 67.

34. The procedures for making sure that excessive force was not used, first was by deploying as much supervision on the ground as possible. Also, Chief Belmar continued to require the preparation of use of force reports in accordance with the Use of Force Policy. Belmar Aff. ¶ 71.

35. Chief Belmar never gave any indication that it was permissible for any police officer to use more force than was reasonably necessary to effectuate an arrest or for a law enforcement purpose. Belmar Aff. ¶ 73.

36. Chief Belmar had no notice that the training or supervision of the police officers under my supervision on August 11-13 was inadequate. Belmar Aff. ¶ 74.

37. I had no personal involvement in any interactions that Dwayne Anton Matthews, Jr., may have had with any law enforcement officials in August, 2014. Belmar Aff. 75.

38. A use of force report was prepared in accordance with St Louis County Policy regarding the force used on Dwayne Matthews on August 13, 2014. Belmar Aff. ¶ 76, Exhibit B.

PETER J. KRANE  
COUNTY COUNSELOR

__/s/ Priscilla F. Gunn_____  
Michael E. Hughes #23360MO  
Associate County Counselor  
Mhughes2@stlouisco.com  
Priscilla F. Gunn #29729MO  
Associate County Counselor  
Pgunn@stlouisco.com  
41 S. Central, Ninth Floor  
Clayton, MO 63105  
(314) 615-7042  
(314) 615-3732 (fax)

**<u>Certificate of Service</u>**

A copy of this pleading was delivered to all counsel of record by the Court's electronic filing system this __ day of September, 2018.